IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> UNITED PARCEL SERVICE, INC., <br><br> Defendant. | CIVIL ACTION NO. 15-4141 <br><br> <u>JURY TRIAL DEMANDED</u> |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of religion, and to provide appropriate relief to Bilal Abdullah, Muhammad Farhan and a class of similarly aggrieved applicants and employees of Defendant who have been adversely affected by such practices. As alleged with greater particularity in paragraphs 14-21 below, Defendant United Parcel Service, Inc. ("UPS") has discriminated nationwide against applicants and employees whose religion conflicts with the company's Uniform & Appearance Policy ("appearance policy"), in violation of Title VII. This discrimination includes the unlawful failure to provide religious accommodations to UPS's appearance policy, failure to hire, failure to promote, and the segregation of those individuals whose religious beliefs conflict with the appearance policy into a particular subset of positions.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed in numerous locations, including within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant United Parcel Service, Inc., a Delaware corporation, has continuously been doing business in the State of New York and has continuously had at least 15 employees. Defendant operates throughout the United States.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Bilal Abdullah and Muhammad Farhan filed charges with the Commission alleging violations of Title VII by Defendant. In addition, more than thirty days prior to the institution of this lawsuit, a charge was

filed with the Commission by Stuart J. Ishimaru, a member thereof, alleging violations of Title VII by Defendant UPS.

7. On June 27, 2012, the Commission issued to Defendant a Letter of Determination on all three charges finding reasonable cause to believe that Title VII was violated, and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission, and on August 25, 2014 issued to Defendant a Notice of Failure of Conciliation.

10. All conditions precedent to the initiation of this lawsuit have been fulfilled.

11. Bilal Abdullah and Muhammad Farhan both observe the Muslim faith and, as part of their religious observance, wear a beard .

12. Defendant is the nation's largest package delivery company, operating in every state in the country. It employs over 300,000 people nationwide, including drivers, driver helpers and package handlers.

13. Defendant maintains a Uniform & Appearance Policy that is applicable to all employees in positions that require customer contact (including driver and driver helper) and to all employees with supervisory responsibility. The appearance policy prohibits covered male employees from wearing facial hair below the lip (e.g., beards) or from growing their hair below collar length. The appearance policy does not apply to "back" of the facility positions which do not involve customer contact.

14. Since at least 2004, Defendant has engaged in unlawful employment practices at its facilities across the United States, in violation of Sections 701(j) and 703 of Title VII, 42 U.S.C. § 2000e(j) and e(2). Specifically, Defendant has refused to accommodate qualified individuals whose religion conflicts with Defendant's appearance policy where the requested accommodation would not pose an undue hardship to Defendant.

15. The unlawful practices alleged in paragraph 14 above include but are not limited to the following:

 a) Defendant has failed to inform applicants and employees of its policy through which individuals may seek a religious accommodation to the appearance policy.

 b) Defendant has denied the existence and availability of religious accommodations to its appearance policy when such accommodations have been requested by applicants and employees.

 c) Defendant has unreasonably delayed action on employee requests for religious accommodation, including delays of several years, forcing employees to choose between violating their religious beliefs or violating Defendant's appearance policy with the attendant risk of discipline or dismissal.

 d) For example, a driver in San Francisco sought an accommodation to the appearance policy permitting him to wear a beard, consistent with his observance and practice of Islam. While awaiting UPS's evaluation of his request, he often shaved his beard, against his religious beliefs, so that he could work. When he chose not to shave, UPS sent him home without pay. Two years after his initial

      request, UPS granted his accommodation, but instructed him that he would be required to reapply if, at any time, he was assigned a new supervisor.

e) Similarly, in Brooklyn, NY, a Muslim employee sought an accommodation to permit him to wear a beard while working as a customer service representative for Defendant. His first supervisor told him that no such accommodations existed and that if he did not shave his beard, he would be fired. Several years later, when Defendant finally informed the employee that he could avail himself of the company's accommodation request process, it refused to grant the accommodation without first receiving certification from his iman that wearing a beard was part of the employee's religious observance. It took Defendant an additional nine months to grant the accommodation.

f) As another example, in Harrisburg, Pennsylvania an employee of Defendant asked that he be permitted to wear a beard as part of his observance of his Christian faith. After three years of making verbal requests, Defendant finally provided the worker with the form to make a written request. Before his request was acted on, the employee's supervisor asked him why, in light of his religious observance, he "had even bothered to come to UPS" to work.

g) Also, at Defendant's location in Fort Lauderdale, Florida, a part-time load supervisor and practicing Rastafarian requested a religious accommodation to permit him to wear dreadlocks and refrain from cutting his hair, as his religious practice required. His manager ignored his request, told the employee he "didn't want any employees looking like women on his management team," and repeatedly asked the employee when he was going to cut his hair. When the

5

employee contacted Defendant's human resources department, he was questioned as to why he practiced the Rastafarian religion at all since he is not Jamaican.

h) The manager of another Christian employee in Harrisburg, after receiving the employee's request for an accommodation to wear a beard in compliance with his faith, telephoned the employee's minister to inquire as to whether the worker attended church regularly, whether his belief was sincere, and whether the Bible mandated a particular length of beard.

i) Also, on Long Island, a Rastafarian employee requested an accommodation to wear a beard, after being promoted to driver. Defendant rejected his request because the employee did not identify a location or institution where the employee worshiped. Upon information and belief, the employee eventually provided the requested "documentation from his spiritual adviser" that satisfied Defendant and his request was granted, two years after he first sought the accommodation.

16. Since at least 2004, Defendant has engaged in unlawful employment practices at facilities across the United States, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2. Specifically, Defendant has refused to hire individuals whose religion conflicts with Defendant's appearance policy.

17. These unlawful practices described in paragraph 16 above include but are not limited to the following:

a) Defendant has refused to hire qualified employees because of their religion.

b) Defendant has refused to hire qualified employees for the positions for which they applied, and are qualified to perform, because of religion and has instead directed

those individuals into positions that are not subject to Defendant's appearance policy.

c) Defendant has refused to hire qualified employees whose religion conflicts with Defendant's appearance policy and has not permitted those individuals to seek an accommodation to the appearance policy.

d) Charging Party Bilal Abdullah applied for a position as a driver helper with Defendant in Rochester, NY in November 2005. When Defendant's hiring official told Abdullah he would have to shave to be considered for the driver helper position, Abdullah, who is Muslim, explained that he wears a beard as part of his religious observance. UPS's hiring official replied that "God would understand" if he shaved his beard to get a job. Defendant told Abdullah that he could apply for a package handler position, which did not require customer contact. Defendant did not hire Abdullah for either position.

e) As another example, in 2007, an applicant for a driver helper position at the UPS facility in Lancaster, Massachusetts informed Defendant that he wore a beard as part of his Muslim religious observance and inquired as to whether or not the company would grant him an exception, on that basis, to the appearance policy. The applicant was told that Defendant granted absolutely no exceptions for beards. When the applicant inquired about the possibility of applying for another position, he was told to shave his beard and cut his hair if he wanted to work for Defendant.

f) Also, in 2007, a Native American applicant for a receiving position at UPS in Stockton, California, after explaining that he wore his hair long as part of his

religious observance and offering to wear it under his shirt or in a hair net, was told, "No hair cut, no job."

18. Since at least 2004, Defendant has engaged in unlawful employment practices at facilities across the United States, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2. Specifically, Defendant has refused to promote, or in the alternative, failed to hire or transfer to a different position, individuals whose religion conflicts with Defendant's appearance policy.

19. The unlawful practices described in paragraph 18 above include but are not limited to the following:

   a) Defendant has refused to promote qualified employees because of their religion.

   b) Defendant refused to promote qualified employees whose religion conflicts with Defendant's appearance policy and has not permitted those individuals to seek an accommodation to the appearance policy.

   c) Defendant has told qualified employees whose religion conflicts with Defendant's appearance policy that they will not be promoted unless they comply with the appearance policy.

   d) Charging Party Muhammad Farhan worked for Defendant as a package handler in Dallas, Texas. In April 2007, upon reporting to his first day of driver training in anticipation of a promotion to the driver position, Farhan was told by Defendant that he would not be permitted to work as a driver because of his beard. Farhan, who is Muslim, explained that he wore his beard as a religious observance and asked that he be provided an accommodation. Defendant's agent, Farhan's supervisor, stated that no such exception to the policy would be made. Farhan then asked at least four other UPS supervisors, including Human Resources

personnel, for the form so that he could request a religious accommodation, and was repeatedly told that the supervisors were not aware of any such form. Only after Farhan filed a charge of discrimination with EEOC, and two months after his initial request, did UPS provide him with a form through which he could make a written request for a religious accommodation. In the intervening time, Farhan lost the opportunity to train for a promotion for which he was qualified and lost wages.

e) As a further example, Defendant's managers in Portland, Oregon in 2007 repeatedly told a Muslim part-time loader that he had completed all the preparation to be promoted to a supervisory position, and that his life would be better and easier as a manager. But they also told him that he could not apply for the position until he shaved his beard. These managers repeatedly pressured him to shave his beard and apply for the promotion.

f) In Harrington, Delaware, a Muslim preloader applied for a driver helper position in 2007, and was denied. It was not until November 2009 that he was provided with the form to request an accommodation permitting him to wear his beard.

g) In Plainsfield, Illinois, in approximately July 2004, a Muslim Information Technology Department employee was forced to shave by Defendant's management. Seven months after his first request for accommodation and only after three requests were made, Defendant permitted him to wear a beard limited to ¼ inch in length. When he applied for a promotion to a management position, Defendant required him to agree in writing that he understood that if he wanted a future promotion within the Information Technology Department, he would have

to shave and that if he was to maintain facial hair, it could limit his opportunities for positions involving customer contact or management.

20. Since at least 2004, Defendant has engaged in unlawful employment practices at facilities across the United States, in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-2. Specifically, Defendant has segregated individuals on the basis of their religion, by placing individuals whose religious beliefs conflict with the appearance policy into different job positions in its facilities based on the appearance policy and Defendant's refusal to accommodate religious practices. It has segregated those individuals by keeping them in "back"-of-the-facility positions, which involve no customer contact.

21. The unlawful practices described in paragraph 20 above include but are not limited to the following:

   a) A Rastafarian package handler in Long Island sought a driver position in 2006 but was required to request an accommodation based on his religious practices. He was segregated into a back of the facility position during the two years it took for UPS to grant his accommodation request.

   b) A Rastafarian package sorter in Hodgkins, Illinois applied for a promotion to a supervisor position and requested an accommodation to wear long hair because of his religious practice. UPS refused the accommodation request and denied him the supervisor position, instead segregating him to the back of the facility as a sorter.

   c) A Rastafarian package sorter in Tampa, Florida applied in 2004 to be a driver and requested an accommodation so that he could wear a beard in accordance with his religious practice. He was first told there were no exceptions to the

appearance policy for his beard and long hair, if he wished to be a driver. After three years and repeated accommodation requests, UPS granted him limited accommodations and allowed him to obtain work as a driver.

d) Charging Party Bilal Abdullah applied for a position as a driver helper and was asked to apply instead for a package handler position in the back of the Rochester hub because his religious requirement of wearing his beard conflicted with Defendant's appearance policy.

22. The effect of the practices complained of in paragraphs 14-21 above has been to deprive applicants and employees whose religion conflicts with Defendant's appearance policy, including Bilal Abdullah and Muhammad Farhan, of equal employment opportunities and otherwise adversely affect the terms and conditions of their work, including their ability to be hired and promoted, because of their religion.

23. The unlawful employment practices complained of in paragraphs 14-21 above were and are intentional.

24. The unlawful employment practices complained of in 14-21 above were done with malice or with reckless indifference to the federally protected rights of Abdullah, Farhan and other applicants and employees whose religion conflicted with Defendant's appearance policy.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in employment practices that discriminate on the basis of religion.

  B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities regardless of religion, and which eradicate the effects of its past and present unlawful employment practices.

  C. Order Defendant to make whole Abdullah, Farhan and all applicants and employees who have been discriminated against because their religion conflicts with Defendant's appearance policy by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to rightful-place hiring, reinstatement, and/or promotion of Abdullah, Farhan and all applicants and employees who have been discriminated against because their religion conflicts with Defendant's appearance policy.

  D. Order Defendant to make whole Abdullah, Farhan and all applicants and employees who have been discriminated against because their religion conflicts with Defendant's appearance policy by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 14-21 above in amounts to be determined at trial.

  E. Order Defendant to make whole Abdullah, Farhan and all applicants and employees who have been discriminated against because their religion conflicts with Defendant's appearance policy by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 14-21 above, including but not limited to, emotional pain, suffering, humiliation, and inconvenience, in amounts to be determined at trial.

  F. Order Defendant to pay Abdullah, Farhan and all applicants and employees who have been discriminated against because their religion conflicts with Defendant's appearance

policy punitive damages for its malicious and reckless conduct described in paragraphs 14-21 above, in amounts to be determined at trial.

    G.    Grant such further relief as the Court deems necessary and proper in the public interest.

    H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: July 15, 2015
    New York, New York

    Respectfully submitted,

    David P. Lopez
    General Counsel

    Gwendolyn Y. Reams
    Associate General Counsel

    U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
    131 M Street, NE
    Washington, DC 20507

    /s/Robert D. Rose_____
    Regional Attorney

    /s/Nora Curtin_____
    Supervisory Trial Attorney

    EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

    New York District Office
    33 Whitehall Street, 5th Floor
    New York, New York 10004
    (212) 336-3747

/s/Elizabeth Fox-Solomon
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

Buffalo Local Office
6 Fountain Plaza, Suite 350
Buffalo, New York 14202
(716) 551-3393