**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Plaintiff,

          v.

UNITED PARCEL SERVICE, INC.,

                    Defendants.

Civil Action No. CV 15-4141

**DOCUMENT**
**ELECTRONICALLY FILED**

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

---

*Wendy Johnson Lario*
GREENBERG TRAURIG
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932

*Attorneys for Defendant*
*United Parcel Service, Inc.*

Return date:

Oral Argument Requested

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ............................................................................................1

I.     Background ........................................................................................................1

II.    Bilal Abdullah EEOC Charge .........................................................................2

     A.     Facts ........................................................................................................2

     B.     EEOC Charge .........................................................................................3

III.    Muhammad Farhan EEOC Charge ..................................................................6

     A.     Facts ........................................................................................................6

     B.     EEOC Charge .........................................................................................7

IV.    EEOC Commissioner's Charge .......................................................................8

     A.     EEOC Charge .........................................................................................8

     B.     Investigation ...........................................................................................9

V.     EEOC's Consolidated Determination in the Abdullah, Farhan and Commissioner's Charges, and the Conciliation Process Delays ...........................................11

VI.    Prejudice to UPS ...........................................................................................13

LEGAL ARGUMENT ................................................................................................14

I.     MOTION TO DISMISS STANDARD............................................................14

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE EEOC FAILED TO MAKE PROMPT DETERMINATIONS.....................................17

III.   THE COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF LACHES ......................................................................................................20

     A.     The EEOC's Seven Plus Year Delays Are Unreasonable ....................21

     B.     UPS's Ability To Defend This Action Is Prejudiced By The EEOC's Unreasonable Delay ............................................................................23

IV.    THE EEOC'S CLAIMS BASED ON ACTS ALLEGEDLY OCCURRING
        PRIOR TO THE STATUTE OF LIMITATIONS ARE TIME-BARRED.......................26

CONCLUSION....................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*EEOC v. Alioto Fish Co.,*
623 F.2d 86 (9th Cir. 1980) ....................................................................20, 21, 24

*EEOC v. American Machine & Foundry, Inc.,*
13 FEP Cases 1634 (M.D.Pa.1976) .....................................................................20

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................15

*Bastien v. Samuels,*
No. 14–CV–1561 (JFB)(AKT), 2014 WL 5306016 (E.D.N.Y. Oct. 15, 2014) .....................15

*Bejaoui v. City of New York,*
2015 WL 1529633 (E.D.N.Y. Mar. 31, 2015)........................................................16

*Bell Atl. Corp v. Twombly,*
550 U.S. 544 (2007)...............................................................................................15

*E.E.O.C. v. Bloomberg L.P.,*
751 F. Supp. 2d 628 (S.D.N.Y. 2010)...................................................................26

*E.E.O.C. v. Bloomberg L.P.,*
967 F.Supp.2d 802 (S.D.N.Y. 2013).....................................................................17

*Bowen-Hooks v. City of New York,*
13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014) .....................................................26, 28

*EEOC v. Bray Lumber,*
478 F.Supp. 993 (M.D.Ga.1979) ..........................................................................20

*EEOC v. C.W. Transport,*
658 F. Supp. 1278 (W.D. Wis. 1987) ....................................................................24

*EEOC v. Dresser Industries, Inc.,*
668 F.2d 1199 (11th Cir.1982) ..........................................................20, 21, 23, 24

*Elmenayer v. ABF Freight Sys., Inc.,*
318 F.3d 130 (2d Cir.2003)....................................................................................28

*Global Network Commc'ns, Inc. v. City of N.Y.,*
458 F.3d 150 (2d Cir.2006)..............................................................................16, 27

*Harriman v. IRS,*
  233 F.Supp.2d 451 (E.D.N.Y.2002) ...........................................15

*Ikelionwu v. United States,*
  150 F.3d 233 (2d Cir. 1998)........................................................20

*Kramer v. Time Warner Inc.,*
  937 F.2d 767 (2d Cir.1991).........................................................16

*EEOC v. Liberty Loan Corp.,*
  584 F.2d 853 (8th Cir.1978) ..................................................20, 21

*Lingenfelter v. Keystone Consolidated Industries, Inc.,*
  691 F.2d 339 (7th Cir.1982) .......................................................24

*EEOC v. Martin Processing, Inc.,*
  533 F.Supp. 227 (W.D.Va.1982) .............................................20, 24

*EEOC v. Massey-Ferguson, Inc.,*
  622 F.2d 271 (7th Cir.1980) .......................................................21

*Medlin v. Trull,*
  2006 WL 435941 (W.D.N.C. Feb. 21, 2006) ...............................24

*National Railroad Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002)...............................................................28, 29

*E.E.O.C. v. Overnite Transp. Co.,*
  No. 2:02CV591, 2006 WL 2594479 (S.D.Ohio July 5, 2006) ...........21

*Patterson v. Infinity Broadcasting Corp.,*
  2007 WL 1726586 (W.D.N.C. Jun. 13, 2007)................................24

*E.E.O.C. v. PBM Graphics Inc.,*
  877 F. Supp. 2d 334 (M.D.N.C. 2012) .........................................21

*Perez v. Danbury Hosp.,*
  347 F.3d 419 (2d Cir.2003)..........................................................20

*E.E.O.C. v. Peterson, Howell & Heather, Inc.,*
  702 F.Supp. 1213 (D.Md.1989)...............................................21, 24

*Pietri v. N.Y.S. Office of Court Admin.,*
  936 F. Supp. 2d 120 (E.D.N.Y. 2013) ......................................26, 28

*E.E.O.C. v. Propak Logistics, Inc.,*
  746 F.3d 145 (4th Cir. 2014) ..................................................21, 22

*Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund,*
   761 F.3d 277 (2d Cir. 2014)..................................................................................14

*Smith v. Caterpillar, Inc.,*
   338 F.3d 730 (7th Cir. 2003) ..............................................................................23

*Ugactz v. United Parcel Serv., Inc.,*
   2013 WL 1232355 (E.D.N.Y. Mar. 26, 2013) .....................................................28

*Vasconcellos v. City of N.Y.,*
   No. 12–CV–8445 (CM), 2014 WL 4961441 (S.D.N.Y. Oct.2, 2014)....................15

*Weiss v. Inc. Vill. of Sag Harbor,*
   762 F.Supp.2d 560 (E.D.N.Y.2011) ....................................................................17

*White v. Daniel,*
   909 F.2d 99 (4th Cir. 1990) .................................................................................23

## **Statutes**

42 U.S.C.A. § 2000e-5 ...............................................................................................17

## **Regulations**

29 C.F.R. 1601.12 .......................................................................................................9

## **Rules**

Fed.R.Civ.P. 12(d) ....................................................................................................16

Fed. R. Evid. 201 .......................................................................................................17

## **Other Authorities**

UPS Worldwide Facts, http://www.ups.com/content/us/en/about/facts/worldwide.html
   (Aug. 11, 2015) ....................................................................................................9

## PRELIMINARY STATEMENT

This Title VII lawsuit filed by the Equal Employment Opportunity Commission ("EEOC") alleges that defendant, United Parcel Service, Inc. ("UPS"), failed to accommodate applicants and employees who sought religious exceptions to its Uniform and Personal Appearance Guidelines.  The Complaint seeks monetary damages and injunctive relief on behalf of a class of applicants and employees, as well as two individual claimants.  UPS denies that it failed to accommodate the individuals or the class members and seeks to dismiss the Complaint based on laches and the EEOC's failure to comply with its Title VII obligation to make a prompt determination of the underlying charges of discrimination.  UPS also seeks, in the alternative, to limit the Complaint to allegations that fall within the 300-day statute of limitations.

## STATEMENT OF FACTS

### I.    Background

This lawsuit stems from three separate EEOC charges of discrimination; one that was brought by the EEOC Commissioner and two that were brought by individuals Bilal Abdullah and Muhammad Farhan.  *See* Certification of Wendy Johnson Lario ("Lario Cert."), Exhibit 1 (Abdullah charge); Exhibit 2 (Farhan charge); Exhibit 3 (Commissioner charge).   All three charges center around UPS's Uniform and Personal Appearance Guidelines ("Appearance Guidelines").  Mr. Abdullah filed the first charge, alleging that UPS failed to hire him because he refused to shave his beard due to his religion, even though his provision of a false social security number was the reason why he was rejected from consideration for a seasonal driver helper position in Rochester, New York.  Mr. Farhan filed the second charge, alleging that UPS failed to accommodate his requests for religious accommodations, even though UPS in fact granted both of this Texas employee's requests for accommodation.  The Commissioner's class claims

assert generally that UPS failed to grant religious accommodations to its Appearance Guidelines for applicants and employees, but after years of investigation, no denials of accommodation requests have been identified.

The following facts are derived from information mentioned in the Complaint, incorporated by reference in the Complaint, or integral to the Complaint, including the underlying charges themselves, and the letters exchanged by the parties during the charge investigations and conciliation process. The EEOC has actual notice of all the information supporting this motion and has, in fact, relied upon these documents in framing the Complaint.

**II.    <u>Bilal Abdullah EEOC Charge</u>**

A.    <u>Facts</u>

Bilal Abdullah applied for a seasonal driver helper position on or about November 23, 2005 in Rochester, New York. Seasonal driver helpers work on an on-call basis for approximately four to six weeks from mid-November through year end. In 2005, in Rochester, New York, seasonal driver helpers were generally working between three and 35 hours per week at $9.00 per hour. *See* Jennifer Hilliard Declaration, ¶ 16, dated May 5, 2006, filed and served on the EEOC in connection with the Abdullah Charge ("Hilliard Decl.").

At the November 23, 2005 intake interview of Mr. Abdullah, Ola Ryan, a UPS Safety Specialist, interviewed Mr. Abdullah and informed him that all seasonal driver helpers were covered by the UPS Appearance Guidelines. Beards and long hair are prohibited by the Appearance Guidelines. *See* Ola Ryan Declaration, ¶ 3, dated May 3, 2006, filed and served on the EEOC in connection with the Abdullah Charge ("Ryan Decl."). Mr. Abdullah indicated that he may have a problem with the Appearance Guidelines given his religion. Ms. Ryan did not reject Mr. Abdullah or stop the application or interview process. Instead, she completed the

interview and submitted Mr. Abdullah's name for further processing and consideration. *Id.* at ¶¶ 4-7.

Following the initial intake interview, UPS performed a background check on Mr. Abdullah and received the results on November 25, 2005. The results revealed that the social security number provided by Mr. Abdullah was not that of Bilal Abdullah, but the number associated with a female. The false social security number rendered Mr. Abdullah ineligible for employment. All applicants who are identified as "ineligible" based on their background checks are proscribed from further consideration. Mr. Abdullah was not further considered for any position at UPS due to the "ineligible" determination triggered by the false social security number. *See* Hilliard Decl.¶ 10.

On November 28, 2005, UPS held an orientation session for its new seasonal employees. Mr. Abdullah arrived for this session and Human Resources representative Mark Novosel reviewed the Automated Employment screen and informed Mr. Abdullah that he was ineligible for employment and could not participate in the orientation. *See* Mark Novosel Declaration, ¶ 5, dated May 3, 2006, filed and served on the EEOC in connection with the Abdullah Charge ("Novosel Decl."). Mr. Novosel was not aware of any religious concern expressed by Mr. Abdullah and at no time did Mr. Abdullah disclose his religion or otherwise raise any concerns about his religion to Mr. Novosel. *Id.* at ¶¶ 6, 8-10.

In sum, Mr. Abdullah was not hired because he provided a false social security number on his employment application.

B.      EEOC Charge

Mr. Abdullah filed a charge of discrimination with the EEOC's Buffalo Office on January 13, 2006. *See* Lario Cert., Exhibit 1. The EEOC held a fact-finding meeting on March

16, 2006 and later served UPS with a Request for Information ("RFI") on March 22, 2006.  *See* Lario Cert., Exhibit 4.  UPS responded to the RFI on May 5, 2006, providing information relevant to Mr. Abdullah and the Rochester, New York facility where Mr. Abdullah applied for employment.  *See* Lario Cert., Exhibit 5.  Over three months later, the EEOC objected to UPS's responses and demanded nationwide discovery.  *See* Lario Cert., Exhibit 6.  UPS responded within two weeks to the EEOC with additional clarification, but continued its objections to nationwide discovery.  *See* Lario Cert., Exhibit 7.  There were no further communications from the EEOC for the next seven months. Finally, on March 2, 2007, the EEOC issued a new RFI, seeking nationwide discovery from January 1, 2004 to date regarding all applicants who were not hired due to the Appearance Guidelines; all applicants who were assigned to "inside" positions: and all employees who were disciplined, terminated, transferred or not promoted due to the Appearance Guidelines.  *See* Lario Cert., Exhibit 8.  UPS responded and objected to this second RFI on March 16, 2007.[1]  *See* Lario Cert., Exhibit 9.

On July 25, 2007, four months after UPS's response, the EEOC issued a subpoena to UPS, seeking the same information in its previous RFIs on a nationwide basis from January 1, 2004 to date.  *See* Lario Cert., Exhibit 10.  Within two weeks, UPS moved to revoke or modify the subpoena's geographic scope to the Rochester facility.  *See* Lario Cert., Exhibit 11.  A month later, on September 4, 2007, the EEOC denied UPS's petition to revoke the subpoena and, on November 21, 2007, the EEOC filed an Order to Show Cause ("OTSC") in the Western District of New York to enforce its subpoena.  *See* Lario Cert., Exhibit 12.  UPS opposed the OTSC.  *See* Lario Cert., ¶16. On September 3, 2008, the Honorable William Skretny issued a Decision and

---

[1]  On April 27, 2007, a charge of discrimination was oddly filed in the EEOC's Buffalo Office by UPS employee Muhammad Farhan, who worked in Texas.  *See* Section III below.  The Buffalo Office was not Mr. Farhan's Local or even District or State EEOC Office, but rather a Local Office thousands of miles away in which Mr. Abdullah's charge happened to be processed.  The Farhan charge was seemingly an EEOC response to, and attempt to work around, UPS's proper objections to nationwide discovery sought in the Abdullah investigation.

4

Order denying the EEOC's motion to enforce its subpoena, finding that a "nationwide search for information is not reasonable in light of the specific charges being investigated."[2]  *See* Lario Cert., Exhibit 13.

The EEOC appealed Judge Skretny's Decision and, two years after the EEOC issued its Order to Show Cause, on November 19, 2009, the Second Circuit reversed on the ground that Judge Skretny applied a restrictive standard of relevance.  *See* Lario Cert., ¶18.

Thereafter, on April 22, 2010, UPS produced nationwide discovery for the time period January 2004 through September 2009 of all applicants who were not hired because they refused to comply with the Appearance Guidelines, and all employees who requested a religious accommodation related to the Appearance Guidelines. *See* Lario Cert., ¶27. Supplemental information regarding the social security numbers and addresses of the applicants and employees was produced to the EEOC in August and November 2010. *See* Lario Cert., ¶¶ 29, 30. By November 2010, all discovery was completed. *See* Section IV below for a more comprehensive description of the nationwide discovery produced by UPS following the Second Circuit's decision.

After producing all requested discovery, UPS waited sixteen months for a response or any kind of communication from the EEOC, but heard nothing. On March 14, 2012, UPS sent a letter to the EEOC requesting that the Commission make a final determination and issue a right to sue because of the lengthy period of inactivity.  *See* Lario Cert., Exhibit 25.  "We are far beyond one hundred and twenty days from the filing of the charge [the deadline for a determination provided in 42 U.S.C. §2000e-5(b)].  Indeed, we are far beyond one hundred and twenty days from the last production of discovery.  This is a case where the EEOC has conducted

---

[2]  Interestingly, three months after the EEOC lost its quest to obtain nationwide discovery in the Western District of New York, it filed the Commissioner's charge asserting nationwide allegations of religious discrimination and failure to accommodate.  *See* Section IV below.

a thorough and extensive investigation.  The time has come for the charge process to end.  UPS respectfully requests that the EEOC make its determination so that all parties can move on." *Id.*

A determination was not issued until June 29, 2012, three months after UPS's letter and 6.5 years after the filing of the charge.  *See* Section IV below for a more detailed description of the determination.  This lawsuit was filed 9.5 years after the filing of the charge.

### III.   Muhammad Farhan EEOC Charge

A.     Facts

Muhammad Farhan remains a UPS employee in Dallas, Texas.   In March 2007, Mr. Farhan was a part-time package handler.   The Appearance Guidelines do not apply to package handlers.  At that time, however, Mr. Farhan placed his name on the Dallas bid list for a full-time package car driver position, which falls within the Appearance Guidelines.  Based on Mr. Farhan's seniority, he was placed in a driver job in April 2007.  When Mr. Farhan presented to work as a driver, he had a beard and was asked to shave it.  Mr. Farhan refused to shave and he filed a grievance on April 9, 2007.  *See* Thomas Roberson Declaration, ¶ 4-5, dated December 21, 2007, filed and served on the EEOC in connection with the Abdullah charge ("Roberson Decl.").

In early June 2007, Mr. Farhan approached Employee Relations Manager Tom Roberson and told Mr. Roberson that he could not shave his beard for religious reasons.  Mr. Roberson immediately started the religious accommodation request protocol, providing Mr. Farhan with the Request for Variance form.  On June 5, 2007, Mr. Farhan provided Mr. Roberson with his completed Request for Variance form.  On June 21, 2007, Mr. Farhan's request to wear a beard as a religious accommodation was granted.  He was allowed to drive with a beard.  *See* Roberson Decl. ¶ 6.

Mr. Farhan then placed his name back on the bid list for a package car driver position. In July 2007, he was placed back into a driver job. Mr. Farhan, however, was out of work on short-term disability from August 15, 2007 through October 15, 2007. When Mr. Farhan returned from disability, he did not place his name back on the bid list for the package car driver position. As a result, Mr. Farhan rejected the package car driver position and returned to his part-time package handler position. *See* Roberson Decl. ¶ 9.

Mr. Farhan requested another religious accommodation on or about October 1, 2007. While Mr. Farhan was out on disability, he submitted a religious Request for Variance form for an extended leave of absence to visit Mecca. Mr. Farhan's absence was scheduled for January 21, 2008 through May 30, 2008. The request for the extended leave of absence was granted on November 7, 2007. Mr. Farhan did not file any corporate concerns and never advised anyone in UPS management or Human Resources that he filed an EEOC charge. *See* Roberson Decl. ¶ 10-11.

B.   EEOC Charge.

Mr. Farhan filed his charge of discrimination with the EEOC on April 27, 2007. *See* Lario Cert., Exhibit 2. Although Mr. Farhan lived and worked in Texas, the charge was inexplicably filed in Buffalo, New York. *Id.* No RFIs were ever issued by the EEOC in connection with this charge. A determination was not issued until June 29, 2012, five years after the filing of the charge. *See* Section IV below for a more detailed description of the determination. This lawsuit was filed eight years after the filing of the charge.

## IV.   EEOC Commissioner's Charge

A.   EEOC Charge

On December 4, 2008, the EEOC issued a Commissioner's charge against UPS for alleged violations of Title VII of the Civil Rights Act of 1964 based on religious discrimination related to the UPS Appearance Guidelines. *See* Lario Cert., Exhibit 3. The charge identified the aggrieved parties as applicants for, and employees in, "customer contact positions" whom UPS allegedly denied reasonable religious accommodations or were otherwise adversely affected by application of the Appearance Guidelines. *Id.* The EEOC defined "customer contact positions" as "including but not limited to drivers of delivery trucks, driver helpers, supervisors, administrators, office workers, executives, managers." *Id.*

The Commission alleged that UPS: (1) required applicants and employees to conform to the Appearance Guidelines despite notice of sincerely held religious conflicts; (2) failed to provide reasonable accommodations to its Appearance Guidelines for applicants and employees who notified UPS of sincerely held religious conflicts; (3) failed to hire, promote or transfer applicants and employees into "customer contact positions" despite notice of sincerely held religious conflicts with the Appearance Guidelines; (4) demoted employees out of "customer contact positions" after they notified UPS of sincerely held religious conflicts with the Appearance Guidelines; (5) took disciplinary action against employees who failed to comply with the Appearance Guidelines due to sincerely held religious beliefs; and (6) limited, segregated or classified applicants and employees with sincerely held religious beliefs in a way that would deprive or tend to deprive them of employment opportunities or adversely affect their status as employees. *Id.*

UPS objected to the charge on the grounds that it improperly alleged violations of Title VII well-outside the statute of limitations and failed to provide UPS with a clear and concise statement of the facts as required by 29 *C.F.R.* 1601.12.  *See* Lario Cert., Exhibit 14.  UPS also requested that the EEOC produce "information available to the Commission" and any "relevant data" it allegedly analyzed prior to issuing the charge. *Id.*  There was no response to these objections or UPS's request for information supporting the charge.

B.    Investigation.

On January 23, 2009, a month after the EEOC issued the Commissioner's charge, it sent UPS a Request for Electronic Information ("E-RFI"). *See* Lario Cert., Exhibit 15.  The E-RFI demanded all computerized files regarding current or former employees from January 1, 2006 through January 23, 2009.  This request had no descriptive limitations, no geographic limitations, and "includ[ed] employees working throughout the United States." *Id.*  During that time period, UPS employed over 350,000 people in the U.S.[3]  *See* Craig Owen Declaration, ¶ 5, dated December 27, 2007, filed and served on the EEOC in connection with the Abdullah matter ("Owen Decl.").  The E-RFI also requested "data on personnel activities" "since (date)."[4] *See* Lario Cert., Exhibit 15.  There were no geographic, temporal, or descriptive limitations associated with this request either.

On February 5, 2009, UPS objected to the EEOC's E-RFI on the grounds that the requests were overbroad, unduly burdensome, vague, ambiguous, harassing, and not relevant to the charge under investigation.  *See* Lario Cert., Exhibit 16.

On March 26, 2009, the EEOC responded to UPS's objections and demanded that UPS produce all the information requested.  *See* Lario Cert., Exhibit 17.  On September 14, 2009, the

---

[3] As of August 2015, UPS employed nearly 354,000 staff in the Unites States and 81,000 internationally.  *See* UPS Worldwide Facts, http://www.ups.com/content/us/en/about/facts/worldwide.html (Aug. 11, 2015).
[4] The EEOC failed to include a particular date for this request.

EEOC sent a renewed request for responses to its E-RFI.  *See* Lario Cert., Exhibit 18. On September 21, 2009, UPS notified the Commission's Buffalo Office that it would be meeting with the EEOC in the New York City District Office regarding similar demands in the Abdullah matter.  *See* Lario Cert., Exhibit 19.  During a meeting at the EEOC's New York City Office on November 17, 2009, UPS and the EEOC reached an agreement on the scope of the E-RFI.  *See* Lario Cert., ¶ 25.  On February 1, 2010, following the Second Circuit's reversal of the ruling regarding the EEOC subpoena issued in the Abdullah matter, UPS served the EEOC with its response to the EEOC's E-RFI.  *See* Lario Cert., Exhibit 20.

Thereafter, on April 22, 2010, UPS produced nationwide discovery of (a) all applicants who were not hired between January 2004 and September 2009 for failure or refusal to comply with the Appearance Guidelines, as well as (b) all employees who sought religious accommodations related to the Appearance Guidelines from January 2004 to September 2009. *See* Lario Cert., Exhibit 21. On July 2, 2010, the EEOC requested supplemental information (social security numbers, telephone numbers, and last known home addresses) for the applicants and for the employees who requested religious accommodations.  *See* Lario Cert., Exhibit 22. UPS provided the supplemental information for the applicants on August 3, 2010.  *See* Lario Cert., Exhibit 23.  And, on November 11, 2010, UPS produced the supplemental information regarding the employees who requested religious accommodations.  *See* Lario Cert., Exhibit 24. There were no further RFIs, objections, requests for additional information, or responses after UPS submitted this November 11, 2010 response.  In sum, the investigation of Abdullah, Farhan and the Commissioner's charges ended in November 2010.  Lario Cert., ¶ 30.

As with Abdullah, sixteen months went by without any determination or communication from the EEOC. On March 14, 2012, UPS sent a letter to the EEOC requesting that the

Commission make a final determination and issue a right to sue because of the lengthy period of inactivity.  *See* Lario Cert., Exhibit 25.  It took another three months, or until June 29, 2012, before the EEOC issued its determination.  *See* Section V below.  In sum, it took 3.5 years between the filing of the charge and the issuance of the EEOC's determination.  This lawsuit was filed 6.5 years after the charge was filed.

**V.     EEOC's Consolidated Determination in the Abdullah, Farhan and Commissioner's Charges, and the Conciliation Process Delays**

On June 29, 2012, the EEOC issued a consolidated written determination in connection with the Abdullah, Farhan and Commissioner's charges.  *See* Lario Cert., Exhibit 21.  This determination was issued more than 19 months after the investigation in all matters concluded.  The EEOC found "reason to believe that violations [of Title VII] have occurred." *Id.*   In conjunction with the determination, the EEOC also issued a written conciliation proposal on June 29, 2012.  *See* Lario Cert., ¶33, Exhibit 27.

UPS was willing to conciliate.  *See* Lario Cert., Exhibit 28.  On January 7, 2013, nearly six months after UPS's initial letter, UPS received a phone call from the Commission.  *See* Lario Cert., Exhibit 29.

On January 22, 2013, UPS sent a confidential letter with proposals to the EEOC requests for Abdullah and Farhan.  *Id.*  On March 8, 2013, the EEOC responded to UPS's January 22, 2013 letter. *See* Lario Cert., Exhibit 30. UPS agreed to an in-person meeting with the EEOC in Buffalo.  *See* Lario Cert., Exhibit 31.

On April 16, 2013, UPS counsel and the EEOC met in Buffalo for an in-person conciliation discussion. *See* Lario Cert., ¶ 39. The EEOC agreed to respond by April 24, 2013. *Id.*

On May 10, 2013, the Commission sent a letter with revised requests for Mr. Abdullah and Mr. Farhan.  *See* Lario Cert., Exhibit 32.  On May 22, 2013, UPS responded to the revised requests for Mr. Abdullah and Mr. Farhan.  *See* Lario Cert., Exhibit 33.

Nearly three months later, on August 14, 2013, the Commission responded to UPS's May 22, 2013 letter.  *See* Lario Cert., Exhibit 34.  On September 27, 2013, UPS sent a confidential response to the Commission's August 14, 2013 letter.  *See* Lario Cert., Exhibit 35.

After a five month gap, the Commission responded to UPS's September 27, 2013 letter on February 27, 2014. *See* Lario Cert., Exhibit 36.   On April 4, 2014, UPS returned a confidential counter-proposal.  *See* Lario Cert., Exhibit 37.

In response to UPS's revised settlement proposals, the EEOC sent a letter on June 6, 2014, responding to the counter-offer. *See* Lario Cert., Exhibit 38.   UPS sent a response on June 23, 2014 indicating that it wished to continue with the conciliation process.  *See* Lario Cert., Exhibit 39.

On July 7, 2014, the EEOC responded to UPS's June 23, 2014 correspondence.  *See* Lario Cert., Exhibit 40.   UPS sent a response on July 17, 2014, continuing the conciliation process.  *See* Lario Cert., Exhibit 41.  On July 29, 2014, the EEOC responded to UPS. *See* Lario Cert., Exhibit 42. On August 5, 2014, UPS responded to the EEOC's July 29, 2014 letter.  *See* Lario Cert., Exhibit 43.

The Commission declared a failure of conciliation on August 13, 2014, nearly six years after the Commissioner's charge was filed, seven years after the Farhan charge was filed, and eight years after the Abdullah charge was filed.  *See* Lario Cert., Exhibit 44.  The conciliation process spanned more than two years, but suffered from several gaps of three to six months at a

time with no responses from the EEOC.  It then took almost a year after the EEOC announced a failure of conciliation for this lawsuit to be filed on July 15, 2015.

**VI.**     <u>**Prejudice to UPS**</u>

The EEOC took 19 months to issue a determination <u>after completing its investigation</u> of the underlying charges.  During the conciliation process, it took six months for the EEOC to respond to UPS's initial request for information in January 2013; another three months for the EEOC to respond in August 2013; another five months for the EEOC to respond in February 2014; and 11 months between the EEOC's declaration of conciliation failure and the filing of this Complaint.  In sum, the EEOC created over 3.5 years of delays with no explanation or justification.

In order to defend itself against the EEOC claims in this lawsuit, UPS must rely upon the memories of interviewers, managers and Human Resources professionals who were involved in hiring and processing applications for religious accommodations.  UPS generally interviews over 200,000 people a year and it hires more than 75,000 people each year.  *See* Certification of Tamara L. Caldwell, ¶ 4, dated October 2, 2015 ("Caldwell Cert.").  During UPS's peak season alone, the Company hires between 57,000 and more than 77,000 seasonal hires.  (Craig Owen Decl., ¶ 5; Caldwell Cert., ¶ 5).  UPS interviewers generally hold hundreds of interviews each peak season. (Novosel Decl., ¶ 2; Ryan Decl., ¶ 2).

During this litigation, UPS will need witnesses to recall specific individual interviews or accommodation requests that date back six to eleven years.  Given the amount of time that has passed, memories will certainly have faded.  Given the sheer volume of people UPS interviews and hires, recollection of individual cases and hiring decisions will be impractical.  Given the limited interaction during a job interview, especially with individuals who are not ultimately

hired, it will be virtually impossible for someone to remember the specifics of any given interview six years ago, much less seven, eight or more years ago. And, given the passage of time, many potential witnesses are no longer employed by UPS.

Indeed, Ola Ryan and Mark Novosel, the UPS employees who were involved in interviewing and meeting with Mr. Abdullah in connection with his application for a driver helper position, are no longer employed by UPS. Caldwell Cert. at ¶ 6. In addition, Tom Roberson, the Human Resources manager who processed Mr. Farhan's religious accommodation requests, is no longer employed by UPS. *Id*. at ¶ 6.

About 40% of the managers involved in addressing the religious accommodation requests of the 51 employees who went through the UPS accommodation process between January 2004 and September 2009 (as disclosed during the EEOC investigation), are no longer employed by UPS, and many have not been employed for many years. *Id*. at ¶ 7. Most of those who are still employed by UPS are no longer in the same jobs or locations they were in during the time period at issue. Perhaps most problematic are the witnesses who UPS will now be unable to locate and bring forward.

In sum, the EEOC has materially and severely impacted UPS's ability to defend against most of the allegations in the Complaint. UPS has been unduly prejudiced by the prolonged and unjustified delays in the charge process instigated by the EEOC, and the EEOC's decision to move forward with a lawsuit against UPS in July 2015.

## LEGAL ARGUMENT

### I. MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 284 (2d Cir. 2014). Those factual allegations,

14

however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

This plausibility standard requires drawing a distinction between merely alleging entitlement to relief, which is insufficient, and showing such an entitlement with alleged facts, which is what the courts require. *Id.* Where the facts alleged do not permit the court to infer more than "the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – 'that the pleader is entitled to relief.'" *Id.* at 679.

An affirmative defense, such as an "argument that the statute of limitations bars a claim[,] is properly raised in a motion to dismiss under Rule 12(b)(6)." *Vasconcellos v. City of N.Y.,* No. 12–CV–8445 (CM), 2014 WL 4961441, at *2 (S.D.N.Y. Oct.2, 2014) (citing *Adams v. Crystal City Marriott Hotel,* No. 02–CV–10258 (PKL), 2004 WL 744489, at *2–3 (S.D.N.Y. Apr.6, 2004); *Harriman v. IRS,* 233 F.Supp.2d 451, 455 (E.D.N.Y.2002)); *see also Bastien v. Samuels,* No. 14–CV–1561 (JFB)(AKT), 2014 WL 5306016, at *3 (E.D.N.Y. Oct. 15, 2014) ("Although the statute of limitations is an affirmative defense, it 'may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) without resort to summary judgment procedure, if the defense appears on the face of the complaint." (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74 (2d Cir.1998), *appeal filed,* No. 14–4326 (2d Cir. Nov. 12, 2014)).

If, on a motion under *Rule* 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under *Rule* 56 and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. *See Fed.R.Civ.P.* 12(d). However, where the matters outside the pleading are referenced in the Complaint or are integral to the claims, the motion may be treated as a motion to dismiss.

"This conversion [to summary judgment] requirement notwithstanding, in certain circumstances a court 'may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6).'" *Bejaoui v. City of New York*, 2015 WL 1529633, at *4-5 (E.D.N.Y. Mar. 31, 2015), (quoting *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007)). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, 'even if not attached or incorporated by reference,' extrinsic materials may be considered by the court if they are 'integral to the complaint' or appropriate subjects for judicial notice." *Id.; see also Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156 (2d Cir.2006) (citing *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991)) (integral to the complaint); *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773–74 (2d Cir.1991) (judicial notice).

"Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, however, the necessity of translating a *Rule* 12(b)(6) motion into one under *Rule* 56 is largely dissipated. The purpose of this exception is to prevent plaintiffs from generating complaints invulnerable to *Rule* 12(b)(6) simply by clever drafting." *Bejaoui*, at *4-5.

Extrinsic materials may also be considered, without converting the motion into one for summary judgment, if the extrinsic materials constitute "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Weiss v. Inc. Vill. of Sag Harbor,* 762 F.Supp.2d 560, 567 (E.D.N.Y.2011) (internal quotation marks omitted). Under *Rule* 201, a court may take judicial notice of "a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Fed.R.Evid.* 201.

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE EEOC FAILED TO MAKE PROMPT DETERMINATIONS

The EEOC must "make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C.A. § 2000e-5.  Once the EEOC makes a determination as to reasonable cause, it must provide notice to the employer of the charges in which it found reasonable cause and which it seeks to conciliate. *E.E.O.C. v. Bloomberg L.P.*, 967 F.Supp.2d 802, 811 (S.D.N.Y. 2013) (citing *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F.Supp.2d 227, 236 (E.D.N.Y. 2007) ("the EEOC has to provide sufficient notice to the employer of the nature of the charges against it so as to set the stage for fruitful conciliation discussions")). However, "notice of the particulars of the investigation is not required, and the scope of the EEOC's initial investigation does not limit the scope of the lawsuit alleging Title VII violations it may later bring." *Id.* at 810. "The EEOC may bring any claims reasonably related to the charge it investigated." *Id.* (*citing EEOC v. Golden Lender Fin. Corp.*, No. 99 Civ. 8591, 2000 WL 381426, at *4 (S.D.N.Y. Apr. 13, 2000)).

Here, the EEOC failed to make a prompt determination pursuant to 42 *U.S.C.A.* § 2000e-5.  According to the statute, the EEOC should, so far as practicable, make a determination within

four months or 120 days of filing the charge. Here, the EEOC failed to issue a determination within 120 days of filing the all three of the charges. The EEOC also failed to issue a determination within 120 days of obtaining all the information it requested from UPS during its investigation of the charges.

The EEOC filed its Commissioner's charge on December 4, 2008. It issued its reasonable cause determination on June 29, 2012.  It took three and a half years, or 1032 days, for the EEOC to render its determination. The EEOC not only failed to comply with Title VII, it took 10 times longer than the statute recommends to make a determination.  From the November 11, 2010 date of UPS's last production of information to the EEOC, the Commission still took almost two years, or 595 days, to issue a determination. Moreover, the EEOC failed to provide UPS with any updates regarding the status of the investigation or the reasons for its delay. Indeed, concerned about the passage of time, UPS reached out to the EEOC in March 2012 inquiring as to the cause of the delay and it still took another 90 days before the EEOC issued its determination, and at no time did the EEOC explain why it was not practicable to issue a timely determination. With such a prolonged delay beyond the statutorily recommended 120 day period, UPS was unsure whether a determination would even be issued. Ultimately, however, the delay benefited the EEOC and made it virtually impossible for UPS to defend against the claims that would subsequently be included in this lawsuit.

The EEOC determinations related to the Abdullah and Farhan charges are even more egregious. Mr. Farhan filed his charge on April 27, 2007 and Mr. Abdullah filed his charge on January 13, 2006. The reasonable cause determinations on these individual charges were issued by the EEOC on June 29, 2012, the same day as the determination in the Commissioner's charge. As a result, it took over five years, or 1,890 days, for the EEOC to issue its determination on the

Farhan charge and it took over six years, or 2,358 days, for the EEOC to issue its determination on the Abdullah charge.

The EEOC will likely contend that it was justified in taking this lengthy period of time to process the determinations because it was appealing the Western District of New York's ruling on nationwide discovery in the Abdullah matter.  That excuse, however, does not address or justify the fact that it still took the EEOC almost two years to issue a determination after all of the discovery was provided in November 2010.  And, even when we consider the time period during which the EEOC was appealing the Western District's ruling on nationwide discovery, that only impacted the Commissioner's charge for 10 months (from January 23, 2009 when the EEOC issued its first RFI until November 2009 when the Second Circuit issued its decision on nationwide discovery) and the Abdullah and Farhan matters for two years (from the start of the OTSC process in November 2007 to the conclusion of the appeal in November 2009). So, even setting aside this time period, the EEOC still took two years and nine months to issue its determination in the Commissioner's Charge; over three years to process the Farhan charge; and over four years to process the Abdullah charge.

Clearly, the EEOC failed to make a prompt determination on all three charges. Although the Commissioner's charge asserted class claims, it did not involve thousands of potential class members. To the contrary, there were only 51 employee accommodation requests during the 2004-09 period that the EEOC was considering during its investigation. And, there were approximately 300 applicants during that same time period who were rejected for failing or refusing to comply with the UPS Appearance Guidelines. A prompt determination should not have taken two years after production of that discovery, but it did. The agency's delays were substantial and never explained or justified.

19

With respect to the Abdullah and Farhan charges, the time to process these individual, single-complainant allegations was completely unwarranted and disproportionate to the nature of their claims. The EEOC failed to assess these charges individually and, instead, joined them with the Commissioner's charge in an apparent attempt to bolster all three of the charges. The result, of course, was a completely unreasonable delay in processing the Farhan and Abdullah charges. As a result, the EEOC failed to comply with Title VII's mandate to make a prompt reasonable cause determination as to all three charges, and the Court should dismiss the Complaint for its failure to comply with this pre-suit statutory obligation.

## III.   THE COMPLAINT SHOULD BE DISMISSED BASED ON THE DOCTRINE OF LACHES

Laches "is an equitable defense that bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998). In order to bar a claim due to laches, the defendant must show: "(1) an unreasonable delay by the plaintiff in bringing suit; and (2) prejudice to the defendant" as a result of the delay. *Perez v. Danbury Hosp.,* 347 F.3d 419, 426 (2d Cir.2003). Where a defendant has been successful in establishing a laches defense, courts have exercised their traditional equitable powers in Title VII actions to dismiss entire cases, *see EEOC v. Dresser Industries, Inc.,* 668 F.2d 1199 (11th Cir.1982); *EEOC v. Alioto Fish Co.,* 623 F.2d 86 (9th Cir. 1980); *EEOC v. Liberty Loan Corp.,* 584 F.2d 853 (8th Cir.1978); *EEOC v. Martin Processing, Inc.,* 533 F.Supp. 227 (W.D.Va.1982); *EEOC v. Bray Lumber,* 478 F.Supp. 993 (M.D.Ga.1979), or restrict the damages available to the plaintiff, *see EEOC v. American Machine & Foundry, Inc.,* 13 FEP Cases 1634 (M.D.Pa.1976).

As discussed below, the EEOC's unreasonable seven, eight and nine year delays to file suit have plainly prejudiced UPS. As a result, the Complaint should be dismissed.

A.      The EEOC's Seven Plus Year Delays Are Unreasonable

Nine and a half years passed between the filing of the Abdullah charge and the commencement of this lawsuit. Eight years passed between the filing of the Farhan charge and the commencement of this lawsuit. And, nearly seven years passed between the filing of the Commissioner's charge and the commencement of this lawsuit. Although no court has found a particular period of delay to be unreasonable *per se,* there can be no question that these delays are all unreasonable.  *See E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 149-50 (4th Cir. 2014) (holding six year delay unreasonable); *EEOC v. Dresser Indus., Inc.,* 668 F.2d 1199, 1202 (11th Cir.1982) (holding a delay of five years and eight months unreasonable); *EEOC v. Alioto Fish Co.,* 623 F.2d 86, 88 (9th Cir. 1980) (holding a delay of five years and two months unreasonable); *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 277-278 (7th Cir.1980) (holding a delay of four years and nine months unreasonable); *E.E.O.C. v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 364-65 (M.D.N.C. 2012) ("Although no court has found a particular period of delay to be unreasonable *per se,* there is no question that the nearly six years between the filing of the charge and the commencement of this lawsuit is lengthy); *E.E.O.C. v. Overnite Transp. Co.,* No. 2:02CV591, 2006 WL 2594479, at *6 (S.D.Ohio July 5, 2006) (holding that a five-year, six-month delay between a charge and lawsuit was unreasonable, even in a "complex case"); *E.E.O.C. v. Liberty Loan Corp.,* 584 F.2d 853, 857–58 (8th Cir.1978) (affirming the district court's determination that a four-year, four-month delay was unreasonable); *E.E.O.C. v. Peterson, Howell & Heather, Inc.,* 702 F.Supp. 1213, 1221–22 (D.Md.1989) (finding a sixty-three month delay to be unreasonable as a matter of law and holding that even "fairly consistent"

21

activity by the EEOC during a lengthy investigation is not sufficient to avoid laches "if the nature and quality of [the EEOC's investigative] activity are such as to not justify the delay".) .

Even when we set aside the time period during which the EEOC was appealing the nationwide discovery OTSC, it took seven and a half years for the Abdullah charge to reach this litigation; six years for the Farhan charge to reach this litigation; and almost six years (five years, ten months) for the Commissioner's charge to reach this litigation.

Here, the EEOC unreasonably delayed this matter at every turn, including during its investigation, its determination, its purported attempt at conciliation, and its filing of this lawsuit. *See E.E.O.C. v. Propak Logistics, Inc.*, at 149 (the EEOC's delay in initiating the lawsuit was unreasonable because "there were significant periods when the EEOC took little or no action toward completing the investigation.").

For example, the investigation of the Abdullah, Farhan and Commissioner's charges ended in November 2010.  However, sixteen months went by without any determination or communication from the EEOC.  On March 14, 2012, UPS sent a letter to the EEOC requesting that the Commission make a final determination and issue a right to sue because of the lengthy period of inactivity. It took another three months before the EEOC issued its determination on June 29, 2012.  The determination was issued more than 19 months (almost two years) after the investigation in all matters concluded.  The EEOC also violated its own obligations under Title VII to make a prompt determination by exceeding the statutory 120 day period for making a reasonable cause determination by 912 days (Commissioner's charge), 1,770 days (Farhan charge), and 2,238 days (Abdullah charge). These delays are excessive and unjustified.

Following its determination, the EEOC's delays and inactivity continued throughout the conciliation process.  The conciliation process spanned more than two years, and suffered from

several gaps of three to six months at a time with no responses from the EEOC.  For example, immediately after receiving the June 29, 2012 conciliation proposal, UPS sent a letter to the EEOC on July 18, 2012.  On January 7, 2013, nearly <u>six months</u> after its last correspondence, UPS finally received a phone call from the Commission.

The Commission delayed again another <u>three months</u> before responding in August 2013 and it took another <u>five months</u> for the EEOC to respond in February 2014. The Commission recommended failure of conciliation on August 13, 2014, nearly six years after the Commissioner's charge was filed, seven years after the Farhan charge was filed, and eight years after the Abdullah charge was field.  It then took <u>eleven months</u> after the EEOC announced a failure of conciliation for this lawsuit to be filed. In sum, there were over <u>3.5 years of delays</u> caused by the EEOC with no explanation or justification.

The EEOC's repeated and inexcusable delays have dragged this matter on far longer than necessary and should be considered unreasonable as a matter of law.

      B.    <u>UPS's Ability To Defend This Action Is Prejudiced By The EEOC's Unreasonable Delay</u>

The defense of laches requires a showing that the defendant was prejudiced by the delay. "[T]he greater the delay, the less prejudice required to show laches." *White v. Daniel*, 909 F.2d 99 (4th Cir. 1990); *Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003).  The "'classic elements' of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records." *Dresser Industries, Inc.*, 668 F.2d at 1203.  Employers "'should not be held responsible for the intervening deaths, retirements, voluntary and involuntary terminations, which normally occur with the passage of time.'" *Dresser*, 668, F.2d 1199 (quoting *Boone v. Mechanical Specialties*, 609 F.2d 956, 959 (9th Cir. 1979)).

Courts have taken judicial notice that memories inevitably dim with the passage of time. *See, e.g., EEOC v. C.W. Transport,* 658 F. Supp. 1278, 1293 (W.D. Wis. 1987) ("Courts have consistently relied on faded memories of events long past to find the prejudicial element of laches."); *Medlin v. Trull*, 2006 WL 435941 (W.D.N.C. Feb. 21, 2006) (dismissing action where relevant events took place three and a half years prior; loss of memory presumed); *EEOC v. Alioto Fish Co*., 623 F.2d 86, 89 (9th Cir. 1980); *EEOC v. Martin Processing, Inc*., 533 F. Supp. 227, 230-232 (W.D. Va. 1982); *EEOC v. Peterson, Howell & Heather, Inc.,* 702 F. Supp. 1213, 1223 (D. Md. 1989) (defendants did in fact establish prejudice because "of those witnesses who remain [employed by defendant], their memories of specific employment decisions have inevitably dimmed with the passage of time,") (citing *Pande v. Johns Hopkins Univ*., 598 F. Supp. 1084, 1088 (D. Md. 1984)); *Patterson v. Infinity Broadcasting Corp*., 2007 WL 1726586, at *2 (W.D.N.C. Jun. 13, 2007).

Prejudice is not restricted to a defendant's ability to succeed on the merits. Where a defendant faces unfairly accentuated monetary damages directly attributable to a plaintiff's unreasonable delays, that defendant suffers an even more palpable prejudice than the difficulty of defending itself at trial. *See Lingenfelter v. Keystone Consolidated Industries, Inc.,* 691 F.2d 339, 342 n. 2 (7th Cir.1982) ("[l]aches applies to protect a defendant not only from diminished likelihood of success on the merits at trial, but also from unfairly accentuated damages occasioned only by a plaintiff's unreasonable delays"). Increased back pay liability has long been treated by courts as a factor to consider in evaluating prejudice to the defendant. *See Dresser Industries, Inc.,* 668 F.2d at 1204 n. 13; *EEOC v. Alioto Fish Co.,* 623 F.2d 86, 89 (9th Cir. 1980).

Here, the statute of limitations on the class claims goes back to February 2008 (*see* Point IV), which is almost eight years ago.  Since UPS interviewers typically conduct hundreds of interviews during each peak season alone, that means they have interviewed over a thousand people during the time at issue in this case. Recalling certain applicants during certain interviews will be unfeasible. Added to that is the sheer volume of interviews, which serves to further dim the already faded memories of any witness who would be asked to testify about UPS's hiring activities seven years ago.

And, we know that for Mr. Abdullah and Mr. Farhan, whose allegations date back even further, the employees who were involved in the events surrounding their claims are all long since gone from UPS. In addition, almost half of the employees who addressed the class employee requests for accommodation during this time period are no longer employed by UPS. A large portion of the remaining UPS employees involved with the class employee rquests for accommodation have changed positions and/or locations, and are doing something completely different than they had been doing back in 2004-09. Therefore, locating witnesses in this case will be difficult, if not impossible, and many may be outside the jurisdiction of this Court's subpoena power. The costs involved in locating witnesses that are outside UPS's control, alone, will be extensive. The additional costs involved in bringing witnesses to this jurisdiction will be confounding. Ultimately, however, many witnesses may not be found.

Given this combination of factors - the lapse in memory, the volume of interviews, and the loss of employees who were involved in the hiring and accommodation decisions - the Company is left in the hopeless position of having no reliable witness recalling what actually occurred in connection with the hiring decisions or requests for accommodation at issue in this lawsuit.

The EEOC put itself in a superior position by waiting and accumulating delays of over 2.5 years during the charge process and waiting another year after conciliation failure before filing this lawsuit. The EEOC also put itself in a superior position by artificially inflating the back pay exposure for UPS.  The EEOC should not benefit from this conduct. Had the EEOC handled these charges with any diligence, UPS would not be so severely prejudiced in defending this lawsuit.  However, it did not act with any diligence and, as a result, UPS cannot adequately defend itself. Since the EEOC's own conduct has led to this situation and created undue prejudice to UPS's ability to defend against most of the allegations in the Complaint, the Complaint should be dismissed pursuant to the doctrine of laches.

## IV.   THE CLAIMS BASED ON ACTS ALLEGEDLY OCCURRING PRIOR TO THE STATUTE OF LIMITATIONS ARE TIME-BARRED

"A plaintiff seeking to bring claims pursuant to Title VII must file a complaint with the EEOC or equivalent state agency within 300 days of the challenged conduct." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014) citing 42 U.S.C. § 2000e–5(e)(1); see also *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 133-34 (E.D.N.Y. 2013) ("Before bringing a federal claim under Title VII, a plaintiff must first file a complaint with the EEOC or equivalent state agency… The three hundred day period serves as a statute of limitations, and claims regarding acts that occurred more than three hundred days prior to the employee's filing a charge of discrimination with the EEOC are thus time-barred."). "The EEOC may not…seek relief for individuals who were not subject to an unlawful employment practice some time during the 300 days preceding the filing of the triggering charge." *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 646 (S.D.N.Y. 2010) ("The EEOC does not dispute that the 300–day charge filing period applies to its section 706 claims").

Here, the EEOC is bringing Title VII claims on behalf of a class of UPS applicants and employees. The Commissioner's charge supporting those allegations was filed on December 4, 2008.  Lario Cert., Exhibit 3. As a result, any claims in this lawsuit based on class allegations prior to February 8, 2008, 300 days prior to the filing of the Commissioner's charge, are time-barred and must be dismissed as a matter of law. The only exceptions to this time bar relate to the two individual claimants who separately filed their own EEOC charges.

Bilal Abdullah is not named as a plaintiff in this case, but allegations regarding his application for a driver helper position with UPS are included in the Complaint.  Mr. Abdullah filed his EEOC charge on January 13, 2006. Lario Cert., Exhibit 1.[5]  As a result, the statute of limitations for Mr. Abdullah's claims would date back to March 19, 2005, 300 days prior to the filing of Mr. Abdullah's charge of discrimination. Any claims for Mr. Abdullah prior to that date are time-barred as a matter of law.

Muhammad Farhan is not named as a plaintiff in this case either, but allegations regarding his requests for accommodation are included in the Complaint.  Mr. Farhan filed his EEOC charge on April 27, 2007. Lario Cert., Exhibit 2.[6]   As a result, the statute of limitations for Mr. Farhan's claims would date back to June 29, 2006, 300 days prior to the filing of Mr. Farhan's charge of discrimination. Any claims prior to that date are time-barred as a matter of law.

---

[5]  The filing date of Mr. Abdullah's EEOC charge is not specifically mentioned in the Complaint, but a "complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156 (2d Cir.2006) (citing *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

[6]  The filing date of Mr. Farhan's EEOC charge is not specifically mentioned in the Complaint, but a "complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *See Global Network Commc'ns, Inc. v. City of N.Y.,* 458 F.3d 150, 156 (2d Cir.2006) (citing *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991).

27

In the event the EEOC attempts to evade the 300 day limitations period by making a "continuing violation" argument, that doctrine does not apply here. "The continuing violation exception to the limitations period for Title VII complaints permits courts to consider claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination, where one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 204 (E.D.N.Y. 2014).

"However, the continuing violations doctrine does not apply to discrete acts of discrimination, 'even if they are related to acts alleged in timely filed charges.'" *Id.* (quoting *Ugactz v. United Parcel Serv., Inc.,* 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013). Actions that are "discrete" and "easy to identify," such as "termination, failure to promote, denial of transfer, or refusal to hire ... constitute[ ] a separate actionable 'unlawful employment practice,' " and cannot form the basis of a continuous and ongoing discriminatory practice that entitles a plaintiff to the continuing violation exception. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 134-35 (E.D.N.Y. 2013) ("Such discrete acts, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."). Failure to accommodate claims are not continuing violations. *Ugactz v. United Parcel Serv., Inc.*, 2013 WL 1232355, at *5 (E.D.N.Y. Mar. 26, 2013); see also *Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 134–35 (2d Cir.2003) ("[A]n employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days.").

28

This case involves allegations of failure to accommodate, failure to promote or transfer, and failure to hire. (Complaint, Nature of Action, ¶ 14-19). The Complaint also alleges "segregation" of individuals into jobs inside UPS facilities, and offers as examples employees who sought accommodations and were allegedly placed or retained in positions as sorters and loaders (*ie.*, failure to accommodate and/or failure to transfer or promote). (Complaint, ¶ 20-21). These are not claims that by "[t]heir very nature involve repeated conduct." *Morgan*, 536 U.S. at 115. To the contrary, they are precisely the type of paradigmatic "discrete acts" that are not covered by the continuing violations doctrine.

Accordingly, any class claims pertaining to UPS applicants and employees which occurred prior to February 8, 2008 are time-barred. Any claims involving Mr. Abdullah which occurred prior to March 19, 2005 are time-barred and any claims involving Mr. Farhan which occurred prior to June 29, 2006 are time-barred.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice as a matter of law and judgment entered on behalf of defendant United Parcel Service, Inc.

GREENBERG TRAURIG, LLP
Attorneys for Defendant
United Parcel Service, Inc.,


By: *s/Wendy Johnson Lario*
WENDY JOHNSON LARIO
A Member of the Firm

Dated:  October 30, 2015.

29