# EXHIBIT 11

DAY PITNEY LLP
(MAIL TO) P.O. BOX 1945, MORRISTOWN, N.J. 07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, N.J. 07932-0950
(973) 966-6300

ATTORNEYS FOR Respondent
United Parcel Service, Inc.

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

| | |
|---|---|
| BILAL ABDULLAH, | : |
| Charging Party, | : |
| v. | : SUBPOENA NO. NY-A7-023 |
| UNITED PARCEL SERVICE, INC. | : CHARGE NO.: 165-2006-00422 |
| Respondent. | : |

**PETITION TO REVOKE OR MODIFY SUBPOENA**

Respondent United Parcel Service, Inc. ("UPS") hereby submits this Petition to Revoke or Modify the July 25, 2007 subpoena of the Equal Employment Opportunity Commission ("EEOC")

1550598A02080607

pursuant to Section 1601.16 of the EEOC's procedural regulations. In accordance with those regulations, a copy of the subpoena is attached hereto as Exhibit A.

Counsel for UPS in the captioned matter received the July 25, 2007 subpoena on July 30, 2007. Pursuant to the EEOC regulations, this Petition seeking to Revoke or Modify the Subpoena is timely submitted within five business days (excluding weekends).

As an initial matter, UPS objects to the EEOC's service of this supboena upon Michael Askew, Chief Executive Officer of UPS, on the ground that the EEOC knew that UPS was represented by counsel in this matter and had repeatedly communicated with counsel for UPS prior to issuance of the subpoena. In light of that knowledge, direct service of process upon the CEO of the corporation was improper, unreasonable, and harassing.

UPS also objects to the information requests set forth in the subpoena and seeks to revoke same on the ground that they are overly broad and unduly burdensome, and neither relevant to the subject matter of this Charge nor reasonably calculated to lead to the discovery of relevant or admissible information. *See EEOC v. University of New Mexico*, 504 F.2d 1296 (10th Cir. 1978).

CHARGE

This Charge of discrimination was filed on January 13, 2006 by a single job applicant, Bilal Abdullah, who alleged that he was not hired at the Rochester, New York facility on account of his religion (Muslim). *See* Charge attached as Exhibit B. The Charge relates only to Mr. Abdullah's application for a seasonal drivers helper position. *Id.* Mr. Abdullah alleges that he "attended an orientation at <u>one of Respondent's locations</u>." *Id.* (emphasis supplied). At the orientation, Mr. Abdullah allegedly indicated that he could not be clean shaven because of his religion. *Id.* Then, he was "logged [ ] out of Respondent's computer system." *Id.* As a result, Mr. Abdullah assumed

2

he "would not be hired." *Id.* In other words, Mr. Abdullah assumed that he was rejected because of his religion.

The Complainant does not allege any direct evidence of failure to accommodate or religious discrimination. Nor is there any allegation of failure to accommodate or religious discrimination against any other applicant or employee or class of applicants or employees. This is an individual claim of failure to accommodate at one location on one day in November 2005. It is not a charge alleging a pattern or practice of discrimination or a hostile work environment. In the latter cases, the pervasiveness of the conduct is at issue. In this type of case, it is not.

### UPS AND ITS APPEARANCE AND ACCOMMODATION POLICIES

UPS employs over 350,000 people in the U.S. Its Uniform and Personal Appearance Guidelines apply to certain job positions, including the drivers helper job position to which Mr. Abdullah applied. UPS also has a religious accommodation process that is implemented on a case-by-case basis by the Human Resources professionals at each UPS facility. There is no central database that records or maintains requests for religious accommodation.

There is one job applicant code that is used when an applicant refuses to meet the UPS appearance guidelines. However, that code does not reflect why the individual refused to meet the appearance guidelines. In most instances, individuals refuse to comply with the grooming requirements of the appearance guidelines because the job position is only for 4-6 weeks. Nevertheless, the reason for the refusal is neither requested nor recorded by UPS.

In terms of discipline, promotion, termination, and other employment actions taken by UPS, there is no reason code related to the appearance guidelines. Indeed, there is nothing that UPS records or maintains that would reflect whether a termination or other employment action was based, in whole or in part, on the appearance guidelines.

All of this has been fully explained to the EEOC in UPS's responses to document requests (see Exhibits C, D, and E). In addition, during this investigation, the EEOC interviewed Human Resources employees about Mr. Abdullah's application, the Uniform and Personal Appearance Guidelines, and the religious accommodation process.

### EEOC REQUESTS

Despite the limited nature of the Charge, the information requests contained in the subpoena, repeated herein for ease of reference, repeat the same requests that have been made time and again in this investigation. The EEOC seeks nationwide discovery regarding all applicants who were rejected for refusal to meet the UPS Uniform and Personal Appearance Guidelines; all employees who were transferred, disciplined or terminated based refusal to meet the UPS Uniform and Personal Appearance Guidelines; and all employees who requested a religious accommodation. The information requests cover a period of more than three years. These requests are so unreasonable, unrelated to the Charge, and overly broad and unduly burdensome that they must be revoked in their entirety for the reasons set forth below.

1. Identify all persons nationwide who applied for employment with Respondent UPS from January 1, 2004 and were coded as "Refusal to meet appearance standards after request and explanation."

2. Produce all documents relating to, and including, the applications of those persons identified above.

3. Produce all "Request for Religious Accommodation" forms submitted by an Respondent employee since January 1, 2004, seeking an accommodation regarding Respondent's appearance guidelines, and all documents relating to those forms, such as, but not limited to, any documents responding to, any documents responding to, granting, or denying such requests.

4. Identify all employees nationwide from January 1, 2004, to the present, who were coded as applying for a position and were given an "inside position" due to the UPS Uniform and Personal Appearance Guidelines.

5. Identify all employees nationwide from January 1, 2004, to the present, who at any time during their employment filed a grievance regarding discipline, termination, changed job position, or promotion due to the UPS Uniform and Personal Appearance Guidelines. For each individual, please note which job action (discipline, termination, changed job position, promotion) occurred due to the UPS Uniform and Personal Appearance Guidelines.

### OBJECTIONS

Respondent objects to the information requests on the grounds that they are overly broad, unduly burdensome, and neither relevant to the subject matter of this Charge nor reasonably calculated to lead to the discovery of relevant or admissible information.

The EEOC's ability to seek judicial relief in the name of the public interest is not limitless. Rather, the EEOC's claims and discovery must be reasonably related to the underlying charge. *See EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 (7th Cir. 1996); *Kresefky v. Panasonic Communications & Systems Co.*, 169 F.R.D. 54, 64-65 (D.N.J. 1996) (a "vague possibility that loose and sweeping discovery might turn up something suggesting [discrimination]" does not show the particularized need or relevance necessary to obtain discovery beyond the "natural focus of the inquiry"); *EEOC v. Quad/Graphics*, 63 F.3d 642 (7th Cir. 1995) (EEOC is entitled to access only to evidence relevant to the charge under investigation). The EEOC must issue subpoenas that are fair and feasible in identifying records or materials sought and not so broadly stated as to constitute a fishing expedition. *See EEOC v. University of New Mexico*, 504 F.2d 1296 (10th Cir. 1974).

In Title VII cases, the scope of discovery is "not without limits. . .Discovery should be tailored to the issues involved in the particular case." *Kresefky, supra,* 169 F.R.D. at 64-65, citing *Robbins v. Camden City Board of Educ.,* 105 F.R.D. 49, 55 (D.N.J. 1985). The "most natural focus is upon the source of the complained of discrimination – the employing unit or work unit." *Earley v. Champion Int'l Corp.,* 907 F.2nd 1077, 1084 (11th Cir. 1990); *Kresefky, supra,* 169 F.R.D. at 66 (citing *Earley*); *Robbins, supra,* 105 F.R.D. at 59 (discovery must be tied to the allegations of plaintiff's complaint); *see also, EEOC v. Packard Electric Division,* 569 F.2d 315 (5th Cir. 1978); *McClain v. Mack Trucks,* 85 F.R.D. 53 (D.D. Pa. 1979). In order to inquire beyond the work location at issue in the litigation, a party must show a more particularized need and relevance. *McClain, supra,* 85 F.R.D. at 62.

The EEOC has not done that. The EEOC's demand for nationwide discovery is not related to Mr. Abdullah's individual charge of failure to accommodate. Indeed, in a case where the complainant himself is just assuming that he was rejected because of his religion, the EEOC's demands are nothing more than a fishing expedition and an attempt to harass UPS. In a case where the respondent employs over 350,000 and has even more applicants, such demands are so burdensome that it is virtually impossible to respond.

More importantly, the UPS accommodation process is implemented and conducted on a case-by-case basis by the Human Resources managers at the facility where the request is made. Neither the requests, nor the treatment of requests, are tracked or recorded in any centralized computer system or database. Thus, the only accommodation requests that are relevant in this matter are those that were handled by the Human Resources employees at the Rochester facility, where Mr. Abdullah applied for employment. Accommodation requests and their treatment at other facilities, districts and regions have absolutely no bearing on Abdullah's case. Those

6

requests are handled by different Human Resources staff and are not probative of the ultimate issue in this case - whether UPS failed to accommodate Mr. Abdullah's religion.

Moreover, UPS has disclosed information about the applicants who applied for employment at the Rochester facility and were coded as having refused to comply with the appearance guidelines.

CONCLUSION

For the foregoing reasons, UPS respectfully requests that the Director grant UPS's Petition to Revoke the EEOC's July 25, 2007 Subpoena.

DAY PITNEY LLP
Attorneys for Respondent
United Parcel Service, Inc.

By: _____
WENDY JOHNSON LARIO
A Member of the Firm

DATED: August 6, 2007.

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of Respondent's Petition to Revoke or Modify the EEOC Subpoena was served via facsimile and UPS overnight delivery upon David Ging, EEOC, 6 Fountain Plaza, Suite 350, Buffalo, NY 14202.

_____
KRISTY L. GRAZIOSO

DATED: August 6, 2007.