UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

-against-

UNITED PARCEL SERVICE, INC.,

Defendant.
-------------------------------------------------------X

REPORT AND <u>RECOMMENDATION</u>
15 CV 4141(MKB)

**POLLAK**, United States Magistrate Judge:

On July 15, 2015, the Equal Employment Opportunity Commission ("EEOC") commenced this action against the defendant United Parcel Service, Inc. ("UPS"), alleging that UPS had violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by discriminating against the charging parties, Muhammad Farhan and Bilal Abdullah, as well as a nationwide class of similarly situated individuals, by requiring them to conform to an appearance policy prohibiting male employees in certain positions from having beards or growing their hair longer than collar length. Following defendant's filing of an Answer, the EEOC moved on September 16, 2016, seeking to strike certain of UPS's Affirmative Defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

On August 31, 2016, the EEOC's motion to strike was referred to the undersigned to prepare a Report and Recommendation. For the reasons set forth below, the Court respectfully recommends that the EEOC's motion be granted in part and denied in part.

FACTUAL BACKGROUND

On January 19, 2006, Bilal Abdullah, a Muslim, filed a charge of discrimination with the Buffalo Local Office of the EEOC, alleging that UPS failed to hire him because of his religion and failed to accommodate his sincerely-held religious beliefs by requiring him to conform to UPS's appearance policy. (Pl.'s Mem.[1] at 1; see E.E.O.C. v. United Parcel Service, Inc., 587 F.3d 136, 138 (2d Cir. 2009)). UPS was provided with a copy of Bilal's charge on January 27, 2006 and thereafter, the EEOC commenced an investigation into the allegations. (Pl.'s Mem. at 1).

According to the EEOC, the UPS appearance policy applies to all male supervisory and managerial employees, as well as employees in customer service positions; it does not apply to back-of-the-facility positions that do not require customer contact. (Compl.[2] ¶ 13; see also E.E.O.C. v. United Parcel Service, Inc., 587 F.3d at 137-38). According to the Complaint, UPS refused to provide religious accommodations to job applicants and employees or unreasonably delayed their requests, failed to hire, promote or transfer them into positions covered by the appearance policy and segregated them into non-supervisory positions or positions without customer contact. (Compl. ¶¶ 18-19). In addition to Mr. Bilal, and charging party Muhammad Farhan, the class represented in this action includes all similarly-aggrieved applicants and employees from diverse faiths, including Muslims, Rastafarians, Native Americans, Christians, Sikhs, and Orthodox Jews ("Claimants"). (Pl.'s Mem. at 1).

---

[1]Citations to "Pl.'s Mem." refer to Plaintiff's Memorandum of Law in Support of its Motion to Strike Certain Affirmative Defenses, dated September 16, 2016.

[2]Citations to "Compl." refer to the complaint filed by the EEOC on July 15, 2015.

In March 2006, the EEOC issued its first Request for Information to UPS, including requests for nationwide information with respect to applicants who had been denied employment and employees who had requested a religious accommodation from the appearance policy. (Id. at 1-2). Also in March 2006, the EEOC held a preliminary fact-finding conference with UPS supervisors about Mr. Abdullah's claims. (Id. at 2). According to the EEOC, UPS refused to provide the requested information. (Id.)

On April 26, 2007, Farhan, a Muslim employee of UPS, also filed a charge of discrimination with the EEOC, alleging that UPS "had a pattern or practice of refusing to accommodate the religious observances, practices and beliefs of its employees." (Id. at 2; E.E.O.C. v. United Parcel Service, Inc., 587 F.3d at 138). The EEOC provided defendant UPS with a notice and copy of the Farhan Charge on May 3, 2007. (Pl.'s Mem. at 2)

On July 25, 2007, the EEOC issued an administrative subpoena in connection with the Abdullah and Farhan charges, seeking the nationwide information that the defendant had previously refused to provide. (Id.) Again, UPS refused to cooperate and refused to comply, instead petitioning the EEOC to revoke or modify the administrative subpoena. (Id.) On August 24, 2007, the EEOC denied the defendant's petition and ordered UPS to provide the information within 10 days. (Id.) Again, UPS failed to comply. (Id.) On November 20, 2007, the EEOC commenced proceedings before the district court in the Western District of New York to enforce compliance with the administrative subpoena. (Id.; E.E.O.C. v. United Parcel Service, Inc., 587 F.3d at 138). When the district court denied the application on September 3, 2008, the EEOC appealed to the Second Circuit. (Pl.'s Mem. at 2).

On December 4, 2008, pending a determination on the appeal, the EEOC issued a

Commissioner's Charge, alleging inter alia that UPS "has violated and continues to violate Title VII. . . . by unlawfully discriminating against applicants and employees based on religion through its application of its 'Uniform and Personal Appearance Guidelines.'" (Id.) The charge was served on defendant on December 15, 2008. (Id.)

On November 19, 2009, the Second Circuit reversed the district court's Order, finding that UPS's objections to the subpoena were "without merit" and that the lower court had applied a standard of relevance that was "too restrictive." (Id. at 3 (citing EEOC v. United Parcel Serv., 587 F.3d 136, 137, 140 (2d Cir. 2009)). The Court of Appeals held that the district court's determination was "clearly erroneous" to the extent that the court found "that information about how religious exemptions to the UPS Appearance Guidelines are handled nationwide was not relevant to the charges being investigated by the EEOC in this case." EEOC v. United Parcel Serv. Inc., 587 F.3d at 140.

Although the Circuit court's ruling was clear, UPS continued to delay in producing the information sought in the 2007 subpoena. (Pl.'s Mem. at 3). According to the EEOC, it was not until November 2010 – a year after the Second Circuit's decision – that the EEOC finally received the information it had been seeking. (Id.)

On June 29, 2012, after a 19-month investigation, the EEOC issued a Letter of Determination, determining that UPS had discriminated against Charging Party Abdullah "by failing to accommodate and failing to hire him on the basis of his religion;" that UPS had discriminated against Charging Party Farhan "by harassing, failing to accommodate, failing to promote and demoting him on the basis of his religion;" and that UPS had "violate[d] Title VII by engaging in a nationwide pattern of discriminatory actions and failure to grant

accommodations of religious practice." (Id.) The Letter of Determination further outlined proposed terms of conciliation and "invite[d] UPS to join with [the EEOC] in an effort toward a just resolution of this matter." (Id.)

According to the EEOC, the parties spent the next two years communicating in an effort to resolve the case without the need for litigation. (Id. at 3-4). The EEOC represents that it met in person with the defendant and exchanged at least 17 letters, amounting to over 50 pages of correspondence, in an effort to conciliate the matter. (Id. at 4; Lario Cert.,[3] Exs. 27-43). Ultimately, on August 25, 2014, conciliation failed. (Pl.'s Mem. at 2; Lario Cert., Ex. 44).

On July 25, 2015, the EEOC commenced the instant action. UPS moved to dismiss on October 2, 2015, arguing that: 1) the EEOC had failed to make a prompt determination of the three charges of discrimination; 2) the EEOC failed to conciliate in good faith; and 3) laches. In its motion to dismiss, defendant sought to limit the action by dismissing any claims based on acts occurring prior to February 8, 2008, which is 300 days prior to the Commissioner's Charge.

On July 19, 2016, the district judge held a hearing on defendant's motion to dismiss and converted defendant's motion to dismiss into a motion for summary judgment. The district judge denied the motion with respect to the arguments of unreasonable delay and laches, but granted defendant's motion to limit the claims based on the 300-day filing requirement. The Court reserved decision as to when the 300-day period for class claims was to commence. In addition, defendant UPS decided not to pursue its failure to conciliate argument following the pre-motion conference with the district court; thus, that issue was not included as part of the motion to

[3]Citations to "Lario Cert." refer to the Certification of Wendy Johnson Lario in Support of Defendant's Motion to Dismiss, dated October 30, 2015.

dismiss.

On August 2, 2016, defendant filed its Answer, asserting 30 Affirmative Defenses. By Order dated August 31, 2016, the district court referred the EEOC's request for a pre-motion conference to strike several of the defendant's Affirmative Defenses, along with the anticipated motion, to the undersigned for a Report and Recommendation. This Court directed the EEOC to file its motion and its papers were filed with the court on September 16, 2016; UPS filed its opposition papers on October 7, 2016, and a reply was filed by plaintiff on October 17, 2016.

Based on a review of the parties' filings, the Court respectfully recommends that the EEOC's motion to strike UPS's affirmative defenses be granted in part and denied in part.

## DISCUSSION

I. Motion to Strike - Standards

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A party moving to strike a defense from a pleading must do so "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). In this case, UPS filed an answer to the Complaint on August 2, 2016, and on August 23, 2016, within the 21-day period provided for in the Rule, the EEOC filed a letter requesting a pre-motion conference to allow it to file a motion to strike several of UPS's affirmative defenses.

Motions to strike are generally disfavored and will not be granted "unless it can be shown that no evidence in support of the allegation would be admissible." Anderson v. Davis

Polk & Wardwell LLP, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)); see also State of N.Y. v. UPS, Inc., 160 F. Supp. 3d 629, 637 (S.D.N.Y. 2016); Panzella v. County of Nassau, No. 13 CV 5640, 2015 WL 224967, at *2 (E.D.N.Y. Jan. 15, 2015) (citing Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co., 657 F. Supp. 136, 143 (E.D.N.Y. 1987) (holding that "[m]otions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute")). Motions to strike are disfavored because they are "'often used as delaying tactics, and because of the limited importance of pleadings in federal practice.'" Securities & Exchange Comm'n v. Sands, 902 F. Supp. 1149, 1165–66 (C.D. Cal. 1995), aff'd sub nom. Securities & Exchange Comm'n v. First Pac. Bancorp, 142 F.3d 1186 (9th Cir. 1998). The Second Circuit has urged "courts. . .not [to] tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d at 893. In considering whether a defense is immaterial for the purposes of a motion to strike, "[a]n allegation is 'impertinent' or 'immaterial' when it is neither responsive nor relevant to the issues involved in the action." Anderson v. Davis Polk & Wardwell LLP, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012).

To be successful, a party seeking to strike an affirmative defense must establish that: "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense." Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 132 (E.D.N.Y. 2015) (citing Bernstein v. Mount Arat Cemetery Inc., No. 11 CV 0068, 2012 WL 3887228, at *9 (E.D.N.Y. Sept. 7, 2012)); see also State of N.Y. v. UPS, Inc., 160 F. Supp. 3d at 637. In

considering the first and second prongs of the test, courts "'must apply the same legal standard as that applicable to a motion to dismiss under Rule 12(b)(6).'" State of N.Y. v. UPS, Inc., 160 F. Supp. 3d at 637 (quoting United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 131 (S.D.N.Y. 2015)). Thus, in construing an affirmative defense, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the defendant. Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). If the defense raises disputed issues of law or fact, then the motion to strike should be denied. Index Fund v. Hagopian, 107 F.R.D.95, 100 (S.D.N.Y. June 16, 2011). "This is particularly so, when. . .there has been no significant discovery." William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984).

In addition, affirmative defenses have been held to a lower pleading standard than the Twombly/Iqbal plausibility standard.[4] In Sibley v. Choice Hotels Int'l, Inc., the court rejected the plaintiff's argument that in pleading an affirmative defense the defendant must meet the Twombly/Iqbal plausibility standard, holding that the "pleading of affirmative defenses is governed by Rule 8(c), and that rule only requires a defendant to 'affirmatively state' an affirmative defense." 304 F.R.D. 125, 132 (E.D.N.Y. 2015); see also Erickson Beamon Ltd. v. CMG Worldwide, Inc., No. 12 CV 5105, 2014 WL 3950897, at *3 (S.D.N.Y. Aug. 13, 2014) (quoting Hon Hai Precision Indus. Co., Ltd. v. Wi-LAN, Inc., No. 12 CV 7900, 2013 WL 2322675, at *9 (S.D.N.Y. May 28, 2013) (holding that the Twombly pleading standard does not apply to affirmative defenses, but that the lower pleading standard of Rule 8 governs)).

---

[4]In Ashcroft v. Iqbal, 556 U.S. 662 and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court set out new pleading standards requiring that a federal complaint must allege facts with sufficient specificity to state a claim for relief that is plausible on its face.

The court in Erickson Beamon explained that "from an equitable perspective, it would be unfair to 'hold[ ] the defendant to the same pleading standard as the plaintiff, when the defendant has only a limited time to respond after service of the complaint while plaintiff has until the expiration of the statute of limitations.'" 2014 WL 3950897, at *3 (quoting Tardif v. City of N.Y., 302 F.R.D. 31, 32-34 (S.D.N.Y. 2014)). Moreover, as the court in Sibley noted, motions to strike affirmative defenses "do not usually expedite litigation," and unlike plaintiffs who "'may largely ignore an answer without formal legal consequence,'. . .a defendant must assert affirmative defenses in the answer or run the risk of waiving them." Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. at 133 (quoting Serby v. First Alert, Inc., 934 F. Supp. 2d at 505, 516 (E.D.N.Y. 2013)).

Under Rule 8(c) of the Federal Rules of Civil Procedure, a defendant need only "state" the affirmative defenses it intends to raise. Fed. R. Civ. P. 8(c). In Serby v. First Alert, Inc., 934 F. Supp. 2d at 516, the court held that "Rule 8(c) governs the pleading of affirmative defenses," and that under the Rule, "[t]here is no requirement. . . that a defendant plead any facts at all." (Id.) (internal citations omitted).

In determining whether a plaintiff would be prejudiced by the inclusion of any particular defense, "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d 421, 428 (S.D.N.Y. 2010). A plaintiff may also be prejudiced by the inclusion of a defense that would fail as a matter of law, since including the defense would increase the duration and the associated costs of the litigation process. Id.; see also Estee Lauder, Inc. v. Fragrance Counter, Inc., 189 F.R.D. 269, 272 (S.D.N.Y. 1999) (quoting FDIC v. Eckert Seamans Cherin & Mellott, 754

F.Supp. 22, 23 (E.D.N.Y. 1990) (holding that when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim")).

II. Analysis

The EEOC moves to strike seven of defendant's Affirmative Defenses: 1) the Fourth Defense, alleging that the EEOC failed to conciliate in good faith;[5] 2) the Fifth Defense, alleging waiver and estoppel; 3) the Sixth Defense, alleging that the EEOC's right to litigate the case is barred by the doctrines of laches and unclean hands; 4) the Twelfth Defense, alleging that the EEOC's claims are barred by the statute of limitations; 5) the Fifteenth Defense, alleging that the EEOC failed to exhaust Title VII's administrative procedures before bringing suit; 6) the Twenty-Second Defense, seeking to limit the scope of the litigation to the claims of the charging parties; and 7) the Twenty-Third Defense, alleging a failure on the part of the EEOC to make a prompt determination of the charge before bringing the complaint against UPS. The EEOC asserts that each of these defenses is insufficient as a matter of law and if they are not struck, the action will be unnecessarily delayed and cause prejudice to the EEOC by requiring it to undergo unnecessary and burdensome discovery on unavailable or insupportable defenses. (Pl.'s Mem. at

[5] As noted, on October 19, 2015, UPS submitted a letter to the court, indicating that, in moving to dismiss the EEOC's Complaint, it would not be pursuing its argument that the EEOC failed to conciliate. (UPS Letter, dated Oct. 19, 2015, at 1). However, when UPS later filed its Answer on August 2, 2016, it included the affirmative defense that the EEOC's claims are barred because the EEOC failed to pursue conciliation in good faith. (Ans. at 6). Moreover, in its memorandum filed in opposition to the EEOC's motion to strike the Fourth Affirmative Defense, UPS continues to argue that the EEOC acted in bad faith during the conciliation process. (See UPS Brief in Opposition to Plaintiff's Motion to Strike Certain Affirmative Defenses, filed on October 7, 2016 ("Def.'s Mem.") at 17).

5). UPS argues that there is a strong presumption disfavoring motions to strike, particularly when discovery remains outstanding and particularly here when all class members have not yet been identified. (Def.'s Mem. at 7).

The Court analyzes the motion to strike each affirmative defense individually.

1) Fourth Affirmative Defense: Failure to Conciliate in Good Faith

The EEOC seeks to strike UPS's Fourth Affirmative Defense that the EEOC's claims are barred because the EEOC failed to pursue conciliation in good faith as to Bilal Abdullah, Muhammad Farhan, and other potential claimants. (Ans. at 6). UPS argues that the failure to conciliate defense, along with UPS's other affirmative defenses relating to the EEOC's pre-suit requirements, are important because UPS alleges that the EEOC engaged in conduct prior to the lawsuit that "repeatedly thwarted its obligations and evidenced bad faith." (Def.'s Mem. at 17). UPS also argues that the EEOC did not fully comply with its duty to conciliate the claims of all members of the class, and specifically, that the EEOC did not "investigate, issue a determination or conciliate as to any claimant whose claims arose after September 2009." (Id. at 18). The EEOC argues that although the EEOC is required to engage in conciliation prior to filing a Title VII action, whether it acted in good faith in pursuing conciliation is not subject to judicial review. (Pl.'s Mem. at 7).

Under Title VII, the EEOC is required to discharge a number of administrative duties before it may pursue an enforcement action. 42 U.S.C. § 2000e-5(b). These administrative duties include: "(1) receiv[ing] a formal charge of discrimination against the employer; (2) provid[ing] notice of the charge to the employer; (3) investigat[ing] the charge; (4) mak[ing] and

giv[ing] notice of its determination that there was reasonable cause to believe that a violation of Title VII occurred; and (5) mak[ing] a good faith effort to conciliate the charges." EEOC v. Sterling Jewelers Inc., 801 F.3d 96, 100 (2d Cir. 2015) (citing 42 U.S.C. § 2000e-5(b)); see Mach Mining, LLC v. E.E.O.C., 135 S. Ct. 1645, 1653 (2015). If the Commission receives a charge from an aggrieved party, and the Commission finds "reasonable cause' to think the charge has merit, after investigation and notice to the employer, then the EEOC has a duty to attempt conciliation of a discrimination charge prior to filing a lawsuit. Mach Mining, LLC v. E.E.O.C., 135 S. Ct. at 1649. If the Commission determines after investigation that there is reasonable cause to believe that a charge is true, the Commission "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5; Arizona ex rel. Horne v. Geo Group, Inc., 816 F.3d 1189, 1198 (9th Cir. 2016) (stating: "If. . . the Commission finds reasonable cause, it must first 'endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion'") (internal citations omitted). A claim against an employer may only go forward if the Commission is "unable to secure from the respondent a conciliation agreement acceptable to the Commission." Mach Mining, LLC v. E.E.O.C., 135 S. Ct. at 1649-50 (quoting 42 U.S.C. § 2000e-5(f)(1)).

In Mach Mining, LLC v. E.E.O.C., the Supreme Court held that judicial review of the EEOC's conciliation activities is limited: "[t]he appropriate scope of review enforces the statute's requirements as just described – in brief, that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice – but goes no further. Such limited review respects the expansive discretion that Title VII gives to the EEOC over the conciliation process,

while still ensuring that the Commission follows the law." 135 S. Ct. at 1653. While judicial review is appropriate to "ensure[] that the Commission complies with the statute,. . . .that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them." Id.; see also Arizona ex rel. Horne v. Geo Group, Inc., 816 F.3d 1199 (quoting Mach Mining, LLC v. E.E.O.C., 135 S.Ct. at 1655-56).

The Court in Mach Mining also distinguished the conciliation process set forth in the National Labor Relations Act, which emphasizes good-faith dealings, from the conciliation process outlined in Title VII, which focuses on the substantive results, rather than on the process of conciliation. Id. at 1654. The Court held that "Title VII ultimately cares about substantive results, while eschewing any reciprocal duties of good-faith negotiation. Its conciliation provision explicitly serves a substantive mission: to "eliminate" unlawful discrimination from the workplace." (Id.) The Court stated that a "sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts have failed will usually suffice to show that it has met the conciliation requirement." Id. at 1656.

Recently, the Second Circuit in E.E.O.C. v. Sterling Jewelers Inc., discussed the EEOC's pre-suit administrative obligations, noting that, among these obligations, the EEOC has the duty to "make a good faith effort to conciliate the charges." 801 F.3d 96, 100 (2d Cir. 2015), cert. denied, 137 S. Ct. 47 (2016). However, the Second Circuit reiterated that, in providing guidance on the scope of judicial review of the EEOC's administrative obligations, the Supreme Court in Mach Mining made it clear that such judicial review is "narrow." Id. at 101; see also Equal Opportunity Employment Comm'n v. United Health Programs of Am., Inc., No. 14 CV 3673,

2016 WL 6477050, at *16 (E.D.N.Y. Sept. 30, 2016) (denying defendant's motion to dismiss the EEOC's claim based on the EEOC's alleged failure to comply with three administrative obligations: investigation, the reasonable cause determination, and conciliation, and citing Mach Mining's holding that judicial review of conciliation discussions should be narrow).

Defendant's Fourth Affirmative Defense states: "Plaintiff's claims are barred because it failed to pursue conciliation in good faith as to Bilal Abdullah, Muhammad Farhan and any Claimant subsequently identified." (Ans. at 6). In response, the EEOC points to 17 letters exchanged between the parties and an in-person meeting that was held to discuss conciliation and settlement opportunities as sufficient evidence that the EEOC exercised its duty to conciliate the charge that was before them. (Pl.'s Reply[6] at 3). Among the letters referenced by the EEOC is a letter dated June 29, 2012 from the EEOC to UPS, proposing remedies to resolve the charges (Lario Cert., Ex. 27); and a subsequent letter from UPS to the EEOC, dated July 18, 2012, responding to the suggestions for reaching a conciliation. (Id., Ex. 28).[7] Additional letters discussing efforts at conciliation were exchanged on January 22, 2013, March 8, 2013, and March 27, 2013 (id., Exs. 29, 30, 31(scheduling the "in-person meeting and discussion regarding conciliation"); and there were follow-up letters to the meeting which took place on April 16, 2013, in which additional proposals were considered to conciliate the matter. (Id., Exs. 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43). These discussions of conciliation continued for a period of

---

[6]Citations to "Pl.'s Reply" refer to EEOC's Reply Memorandum of Law in Further Support of its Motion to Strike Certain Affirmative Defenses, filed on October 17, 2016.

[7]The copies of the letters that were submitted to the Court in connection with defendant's motion to dismiss were redacted to eliminate any substantive discussion of conciliation proposals that may have been under consideration.

over two years, until August 13, 2014, when the EEOC declared conciliation to be a failure. (Id., Ex. 44). This seems to more than satisfy the minimal requirement that the EEOC represent that it has performed the obligation to conciliate but that its efforts have failed. Mach Mining, LLC v. E.E.O.C., 135 S. Ct. at 1655-56.

Indeed, during the July 19, 2016 proceedings before the district court in this action, UPS acknowledged that the Commission had reached out to UPS to try to resolve the issues alleged in the EEOC charge before filing suit. (7/19/16 Tr.[8] at 5). During the hearing, UPS was asked by the court: "Are you saying [the EEOC] didn't reach out to UPS and try to resolve these issues?" (Tr. at 5), to which UPS's counsel responded, "[N]o." (Id.) Thus, UPS did not dispute the fact that the EEOC attempted to engage UPS in conciliation. Instead, UPS' counsel argued that the conciliation process was "so protracted and so unreasonable" that it violated the EEOC's obligation under Title VII to conciliate in good faith. (Id.)

In response to these arguments, the district court correctly noted that the "scope of review is limited to did they [conciliate]" and that the court "cannot and should not be making a good faith determination." (Id. at 8-9, 24, 26). Nonetheless, in now opposing the EEOC's motion to strike the Fourth Affirmative Defense, UPS continues to argue that the "EEOC's bad faith effort and extensive, unnecessary delays severely prejudiced UPS." (Def.'s Mem. at 17). In addition, while UPS concedes that Mach Mining narrowed the scope of judicial review as to the EEOC's duty to conciliate, UPS contends that Mach Mining does not prevent defendant from asserting a failure to conciliate defense where "the EEOC wholly failed to exercise its duty to conciliate."

[8]Citations to "Tr." refer to pages in the transcript of proceedings before the district court on July 19, 2016.

(Id.) Specifically, UPS now argues that "the EEOC did not investigate, issue a determination or conciliate as to any claimant whose claims arose after September 2009." (Def.'s Mem. at 18).

Courts following the holding in Mach Mining have rejected arguments similar to those made by UPS here, striking an affirmative defense based on the lack of good faith of the EEOC in its conciliation efforts. See, e.g., EEOC v. Rosebud Restaurants, Inc., No. 13 CV 6656, 2015 U.S. Dist. LEXIS 138342, at *2 (N.D. Ill. Oct. 7, 2015) (striking affirmative defense that the EEOC had failed to conciliate in good faith as "insufficient as a matter of law"); see also EEOC v. Dimensions Healthcare SYS., No. 15 CV 2341, 2016 U.S. Dist. LEXIS 70126, at *17 n. 6 (D. Md. May 27, 2016) (noting that the Supreme Court had "explicitly rejected imposing a good faith negotiation requirement on the EEOC").

Moreover, to the extent that defendant is now raising an argument different from the one raised before the district court – namely, that the EEOC must engage in conciliation efforts with respect to each claimant before suit may be brought – UPS has cited no cases decided after Mach Mining to support this proposition. The only authority cited by defendants in support of their argument is an Eighth Circuit decision that was rendered prior to the issuance of the Supreme Court's decision in Mach Mining. (Def.'s Mem. at 17 (citing EEOC v. CRST Van Expedited Inc., 872 F. Supp. 657, 674 (8th Cir. 2012))). Apart from the question of whether this decision is still good law in light of Mach Mining to the extent that the CRST Van court examined the investigation and efforts at conciliation undertaken by the EEOC, the case is clearly distinguishable from the case at hand. See EEOC v. United Health Programs of America, Inc., No. 14 CV 3673, 2016 WL 6477050, at *16 (E.D.N.Y. Sept. 30, 2016) (distinguishing CRST Van on the grounds that "the EEOC's attempt . . .to add 67 claimants to an EEOC action filed

two years earlier and naming a single individual is a far cry from the situation presented in this action, where the EEOC's investigation undisputedly encompassed seven of the ten claimants and the additional three claimants' allegations arise out of the same alleged course of conduct, in the same office, by the same individuals and during a time period already covered by the charge in the initial complaint"). Among other things, the CRST Van case was filed on behalf of a single individual, not a nationwide class as in this action, and the district court found that the EEOC had made no effort before filing the complaint to investigate or conciliate on behalf of any of the 67 individuals that the EEOC sought to add after two years of discovery.

By contrast, in the instant case, it is undisputed that the EEOC's Commissioner Charge, dated December 4, 2008, stated clearly that "[t]he charge will cover all applicants for employment with and all employees of United Parcel Service, Inc. ("UPS") and its companies and divisions, including but not limited to UPS Freight, UPS Air Cargo, and the UPS Store, located in the United States." (Lario Cert., Ex. 3). The Charge further states that "[t]he persons aggrieved include all applicants for and employees in customer contact positions . . .who have been denied reasonable religious accommodation by UPS or otherwise adversely affected by UPS's actions in its application of its Uniform and Personal Appearance Guidelines, and those who will in the future be adversely affected by the unlawful practices." (Id.) Thus, at the time the efforts at conciliation were ongoing between June 2012 and August 2014, it was clear from the 2008 Charge that the EEOC was seeking relief in this case on behalf of a nationwide class of applicants and employees both in the past or who would "in the future" be adversely affected by the discriminatory policies.

Under similar circumstances, the Ninth Circuit found that the EEOC had sufficiently

conciliated its class claims against the employer. Arizona v. Geo Group, Inc., 816 F.3d at 1200. The Ninth Circuit went on to explicitly reject the argument that the EEOC was required to conciliate on behalf of all class members during the investigation: "we reject the district court's premise that the EEOC . . . must identify and conciliate on behalf of each individual aggrieved employee during the investigation process prior to filing a lawsuit seeking recovery on behalf of a class. . . .We hold that the EEOC . . . satisf[ies its] pre-suit conciliation requirements to bring a class action if they attempt to conciliate on behalf of an identified class of individuals prior to bringing suit. " Id. The Court explained its rationale by stating that "[i]f the EEOC. . . were required to pursue individual conciliation on behalf of every aggrieved employee, they would be effectively barred from seeking relief on behalf of any unnamed class members they had yet to identify when they filed their suit. . . .In light of the broad enforcement authority of the EEOC. . ., it would be illogical to limit their ability to seek class wide relief to something narrower than the abilities of private litigants." Id.

Although the Second Circuit has not directly ruled on the issue of whether the EEOC must conciliate the claims of every class member before it brings suit, the Circuit in E.E.O.C. v. Sterling Jewelers Inc., examined the argument that where the EEOC brought Title VII claims against a nationwide class, the EEOC would need to demonstrate that it investigated the claims nationwide. 801 F.3d at 102. The court held that "the EEOC need not, however, describe in detail every step it took or the evidence it uncovered. As with the conciliation process, an affidavit from the EEOC, stating that it performed its investigative obligations and outlining the steps taken to investigate the charges, will usually suffice." Id. (distinguishing the case from EEOC v. CRST Van Expedited, Inc. by noting that "in CRST, the Eighth Circuit held that the

EEOC did not fulfill its investigative obligation because 'the EEOC did not investigate the specific allegations of any of the 67 allegedly aggrieved persons . . . until after the Complaint was filed'") (internal citations omitted).

Courts in this district have held that the EEOC was not required to investigate the claims of every claimant where the claims of the additional claimants were "effectively identical" to those of the pre-existing claimants. Indeed, this Court, in a recent opinion in EEOC v. United Health Programs of America, Inc., addressed the claim that the EEOC failed to investigate and conciliate the claims of certain specific employees, concluding that the EEOC is "not precluded from identifying new claimants" after the action was filed so long as their claims are effectively identical to the claims of the pre-existing claimants. 2016 WL 6477050, at *16; see also EEOC v. Bass Pro Outdoor World, LLC, 1 F. Supp. 3d 647, 664 (S.D. Tex. 2014) (holding that "the EEOC is not obligated to provide the identities of all § 706 class members"); EEOC v. Evans Fruit Co., Inc., 872 F. Supp. 2d 1107, 1111 (E.D. Wash. 2012) (holding that the court was "not persuaded. . .that the EEOC must specifically identify, investigate and conciliate each alleged victim of discrimination before filing suit").

Even before the holding in Mach Mining, the majority of circuit courts have held that the EEOC is not required to prove that it made individual attempts to conciliate on behalf of each potential claimant in a class action. See, e.g., EEOC v. Bruno's Rest., 13 F.3d 285, 289 (9th Cir. 1993); EEPC v. Rhone-Poulenc, Inc., 876 F.2d 16 (3d Cir. 1989); see also Serrano v. Cintas Corp., 699 F.3d 884 (6th Cir. 2012); EEOC v. Keco Indus., Inc., 748 F.2d 1097 (6th Cir. 1984); EEOC v. Am. Nat'l Bank, 652 F.2d 1176 (4th Cir. 1981). These requirements are not affected by whether the EEOC brings a claim under § 2000e-5 (a Section 706 claim) or under § 2000e-6

(a Section 707 pattern and practice claim).

Here, the EEOC issued its reasonable cause determination that UPS had committed Title VII violations after a 19-month nationwide investigation and after two years of attempting to resolve the claims without litigation. (Pl.'s Mem. at 3-4). Moreover, the claims of the additional claimants relate to "same alleged course of conduct" – namely, UPS's refusal to accommodate the religious observances and practices of employees from diverse faiths, including Muslims, Rastafarians, Native Americans, Christians, Sikhs, and Orthodox Jews. (Id. at 1). UPS did not raise the issue of EEOC's failure to conciliate the claims of every member of the class during the July 19th hearing before the district court, and in its response to the EEOC's motion to strike, does not even suggest, much less explain, how the claims of the additional claimants differ from the claims of the charging parties. See Equal Opportunity Employment Comm'n v. United Health Programs of Am., Inc., 2016 WL 6477050, at *17. There is nothing in UPS's papers to suggest that significant changes have been made to UPS's policy regarding its Uniform and Personal Appearance Guidelines or in its response to requests for accommodation since September 2009 that would warrant requiring the EEOC to conduct a further investigation or engage in renewed conciliation efforts.

Apart from the legal insufficiency of the asserted defense that the EEOC had failed to conciliate in good faith in light of the holding in Mach Mining, the EEOC argues that it will suffer prejudice if the affirmative defense is allowed to proceed. Not only would pursuit of the defense cause prejudice to the EEOC, to the claimants, and to the public because it would require an inquiry into every claim brought by every member of the nationwide class, prolonging discovery indefinitely and radically increasing the costs of the litigation, but it would also be in

contravention of the provision in Title VII that prohibits the use of anything said or done during the conciliation process to be used as evidence in the subsequent proceeding. See E.E.O.C. v. Mach Mining, 135 S. Ct. at 1655; 42 U.S.C. § 2000e-5(b). The EEOC argues that there is significant risk of prejudice in litigating this affirmative defense because any determination of whether the EEOC failed to conciliate in good faith would require disclosure and analysis of what the parties said and did and what was discussed and proposed during the conciliation process. (Pl.'s Mem. at 9). The Commission argues that such disclosure is prohibited by statute and would undermine the candor of conciliation proceedings. (Id.) (citing Mach Mining LLC v. E.E.O.C. 135 S. Ct. at 1655 (holding that [plaintiff's] brand of review would also flout Title VII's protection of the confidentiality of conciliation efforts. The statute, recall, provides that '[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned'– both the employer and the complainant. § 2000e–5(b)")); see also EEOC v. Philip Servs. Corp., 635 F.3d 164, 166 (5th Cir. 2011); E.E.O.C. v. Morgan Stanley & Co., 132 F. Supp. 2d 146, 156 (S.D.N.Y. 2000) (citing Equal Employment Opportunity Comm'n v. Associated Dry Goods Corp., 449 U.S. 590, 601 (1981) (holding that "limited disclosure enhances the Commission's ability to carry out its statutory responsibility to resolve charges through informal conciliation and negotiation")).

Having considered UPS's arguments in support of this affirmative defense, the Court finds that in order to pursue this affirmative defense, the parties would have to conduct discovery and the court would have to review the substance of the conciliation proceedings to determine whether the EEOC has acted in good faith and attempted to conciliate the claims of each and

every class member, thereby engaging in the very type of substantive review of agency action that Mach Mining clearly prohibits. See Mach Mining LLC v. E.E.O.C., 135 S. Ct. at 1655. Accordingly, the Court finds that since UPS does not dispute that the EEOC engaged UPS in the process of conciliation and that the EEOC exchanged multiple communications with UPS and met with UPS to discuss a potential resolution before bringing suit, the EEOC has satisfied its pre-suit obligation to conciliate. Considering the limited nature of judicial review of the scope of the EEOC's duty to conciliate, and the potential prejudice to the Commission in litigating this issue further, the Court respectfully recommends that the EEOC's motion to strike UPS's Fourth Affirmative Defense be granted.

2) Fifth Affirmative Defense: Waiver and Estoppel

The EEOC argues that UPS's Fifth Affirmative Defense, raising the defense that the Complaint is barred in whole or in part by the doctrine of waiver and estoppel sets forth equitable defenses that cannot be asserted against a government plaintiff acting in the public interest. (Pl.'s Mem. at 10 (citing Ans. at 7)). UPS disagrees, arguing that "neither the EEOC, nor any government agency for that matter, enjoys absolute immunity from the equitable defenses of laches, estoppel, waiver and unclean hands. (Def.'s Mem. at 13) (citing S.E.C. v. PacketPort.com, No. 05 CV 1747, 2006 WL 2798804, at *4 (D. Conn. Sept. 27, 2006)).

The common law doctrine of waiver has been described as the "intentional surrender of a legal right by act or omission." City of N.Y. v. Fedex Ground Package Sys., Inc., 314 F.R.D. 348, 356 (S.D.N.Y. 2016); S.E.C. v. PacketPort.com, 2006 WL 2798804, at *4 (holding that waiver is the "relinquishment of a known right").

The defense of equitable estoppel "applies when a party misrepresents or conceals material facts and knows or should know that another party will act as a result." Id. In asserting a defense of estoppel, the defendant must demonstrate that "1) the party to be estopped [made] a misrepresentation of fact to the other party with reason to believe that the other party [would] rely upon it; 2) and the other party reasonably relie[d] upon it; 3) to her detriment." Kosakow v. New Rochelle Radiology Assoc., 274 F. 3d 706, 725 (2d Cir. 2001); see also S.E.C. v. PacketPort.com, 2006 WL 2798804, at *4. The Second Circuit has held that generally, absent severe circumstances, the defense of equitable estoppel cannot be asserted against the government. Rojas-Reyes v. Immigration & Naturalization Serv., 235 F.3d 115, 126 (2d Cir. 2000). See also United States v. Walerko Tool & Engineering Corp., 784 F. Supp. 1385, 1389 (N.D. Ind. 1992) (holding that to pursue an estoppel defense against the government, the defendant must establish both reasonable reliance on the government's conduct to its detriment and "affirmative misconduct" by the government"). The defendant must also show that the harm it suffered "outweighs the pressing public interest in the enforcement of congressionally mandated public policy." Portman v. United States, 674 F.2d 1155, 1167 (7th Cir. 1982).

In moving to strike the defenses of waiver and estoppel, the EEOC relies on the long line of authority that holds that general principles of equity should not be applied to the United States or an agency of the government "to frustrate the purpose of its laws or to thwart public policy." Pan Am Petroleum & Transp. v. United States, 273 U.S. 456, 506 (1927); see also City of New York v. FedEx Ground Package Sys., 314 F.R.D. at 357-58. The EEOC argues that here the public purpose advanced by enforcement suits such as this has been recognized by numerous courts and the fact that the EEOC may also seek monetary damages on behalf of the individual

victims does not alter the public purpose in preventing employment discrimination. (Pl.'s Reply at 5 (citing General Tel. Co. v. EEOC, 446 U.S. 318, 326 (1980)); EEOC v. Federal Express Corp., 268 F. Supp. 2d 192, 201 (E.D.N.Y. 2003) (holding that the EEOC is "charged with enforcing the public interest in eradicating employment discrimination"); see also EEOC v. Kimberly-Clark Corp., 511 F.2d 1352, 1359 (6th Cir. 1975) (holding that the EEOC "represents the public interest when it sues to enforce Title VII, not solely the interests of the private charging parties"). The EEOC contends that "equitable defenses cannot foreclose a government suit 'to enforce a public right or protect a public interest.'" (Pl.'s Reply at 4 (quoting Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917)); State of New York v. United Parcel Service, Inc., 160 F. Supp. 3d at 647 (noting that affirmative defenses of waiver, estoppel, laches, and unclean hands were "unavailable as a matter of law" if the government entity was "acting in a law enforcement capacity").

Courts in this district and elsewhere have declined to strike waiver and estoppel defenses on the grounds that the viability of these defenses against a government agent is an open and unresolved question of law. See Resolution Trust Corp. v. Gregor, No. 94 CV 2578, 1995 WL 931093, *3 (E.D.N.Y. Sept. 29, 1995) (holding that "[a]s for estoppel/waiver, the unsettled nature of this question has been underscored by the Supreme Court itself" and denying plaintiff's motion to strike the affirmative defenses of estoppel and waiver); State of N.Y. v. United Parcel Serv., Inc., 160 F. Supp. 3d 629, 635 (S.D.N.Y. 2016) (declining to strike an affirmative defense, holding that where the defense asserted, "among other theories, equitable estoppel, waiver, laches and in pari delicto," the State of New York was "not immune from such theories under all fact patterns as a matter of law — though there may be limits to usage based on the development of

the record. It is an open question as to whether, when pursuing certain claims such as a RICO claim, a governmental entity is immune from the impact on third parties (if any) of decisions it has made"). Courts in other districts have similarly declined to strike an estoppel defense against a government entity. In S.E.C. v. PacketPort.com, the district court denied the SEC's motion to strike the affirmative defense of estoppel on the grounds that it would be premature in advance of a summary judgment motion. 2006 WL 2798804, at *4. The court also declined to strike the defendants' waiver defense due to a factual dispute concerning whether the defendants' actions delayed the SEC from prosecuting the action. Id.

In opposing the motion to strike, UPS argues that it is premature to dismiss these equitable defenses because "[t]he facts supporting these defenses simply have not yet been developed because there has been no discovery whatsoever, including claimant-specific discovery. As a result, we cannot yet predict whether these defenses are applicable to the EEOC or any of the claimants." (Def.'s Opp. at 12).

Since the trend in this district is to only require affirmative defenses to be asserted in accordance with Rule 8(c) without the need to state any factual basis whatsoever for the defense, it is impossible to analyze the viability of UPS's waiver and estoppel defenses. As currently pleaded, these are essentially boilerplate defenses that provide no notice to the EEOC as to how the defenses could possibly apply to the EEOC's claims. UPS has not provided any factual basis for determining what the "misrepresentation" was that the EEOC allegedly made, much less the "affirmative misconduct" by the EEOC that some courts have held is necessary for the pursuit of a defense of estoppel. See, e.g., United States v. Walerko Tool & Engineering Corp., 784 F. Supp. at 1389; see also Rojas-Reyes v. I.N.S., 235 F.3d at 126 (holding that "estoppel will only

be applied upon a showing of 'affirmative misconduct' by the government"). Nor has UPS indicated how it could have possibly been injured as a result of its reliance on a misrepresentation made by the EEOC. Instead, the Fifth Affirmative Defense merely states: "The Complaint is barred in whole or in part by the doctrine of waiver and/or estoppel." (Ans., Fifth Aff. Def.). Nor has UPS provided any indication in its pleadings as to what the "known right" was that the EEOC allegedly relinquished sufficient to establish a defense of waiver. UPS's argument in its papers is that the EEOC may have waived a known right based on mere speculation that UPS may learn through discovery "that a potential claimant signed a full and complete release waiving all of his claims against UPS." (Def.'s Mem. at 15).

Despite the minimal pleading requirements for affirmative defenses, see, e.g., Scott v. WorldStarHipHop, Inc., No. 10 CV 9538, 2012 WL 5835232, at *3 (S.D.N.Y. Nov. 14, 2012) (declining to strike defendant's affirmative defenses, including an estoppel defense, and holding that "Rule 8(c)(1), Fed. R. Civ. P., which governs pleading affirmative defenses, only requires a party to "state" the defense. Based on the different pleading standards articulated in the Federal Rules, it is not obvious that the Supreme Court in Twombly and Iqbal intended to heighten pleading standards for affirmative defenses as well"), some courts in this circuit have granted motions to strike the affirmative defenses of waiver and estoppel where defendants lacked any factual basis for these defenses and provided little or no notice to the plaintiffs of the context for the defenses. See Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc., No. 16 CV 2767, 2016 WL 6906583, at *7 (S.D.N.Y. Nov. 21, 2016) (holding that "[d]efendants lack any factual basis for these defenses. Plaintiffs have no notice of which rights under the Transaction Documents they have purportedly waived . . . . Given Defendants' admitted facts, the defenses of waiver and

laches are insufficiently pleaded"); Shaub & Williams, L.L.P. v. Augme Techs., Inc., No. 13 CV. 1101, 2014 WL 625390, at *9 (S.D.N.Y. Feb. 14, 2014) (striking the waiver defense and holding that "Defendant's amended Tenth Affirmative Defense does not sufficiently plead waiver, as Defendant has not alleged any fact supporting the assertion that Plaintiff at any point intentionally renounced, by actions or words, a previously held right to the balance of billed fees"). In Coach, Inc. v. Kmart Corps., 756 F. Supp. 2d at 428, the court held that: "[t]he pleadings, however, lack any facts supporting a waiver defense. It is at best unclear how a waiver defense would apply here. There is no indication that Plaintiffs have intentionally relinquished any rights. Thus, there is no question of fact or law that might allow a waiver defense to succeed, and the defense is therefore insufficient as a matter of law." See also S.E.C. v. McCaskey, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999) (striking defendants' estoppel defense and holding that "the defendants have offered nothing to suggest they detrimentally relied on any misrepresentation by [plaintiff], let alone that such reliance resulted in prejudice to their case of a constitutional magnitude. Thus, the defense has no basis in fact. Likewise, there is no question of law which might allow defendants' estoppel defense to succeed").

Other cases, however, have permitted such defenses to proceed at least through discovery. See, e.g., Cohen v. Elephant Wireless, Inc., No. 03 CV 4058, 2004 WL 1872421, at *5 (S.D.N.Y. Aug. 19, 2004) (holding that, "[d]uring discovery, it is conceivable that defendant could gather evidence showing that plaintiffs represented that they would not enforce the contract unless and until defendant acquired the necessary financing for its public offering. The defense of waiver and/or estoppel is not clearly insufficient as a matter of law and therefore survive plaintiff's motion to strike"); see also Figueroa v. RSquared NY, Inc., No. 14 CV 4390, 2015 WL 3936256,

at *3 (E.D.N.Y. June 26, 2015) (holding that "the Defendants were not required to furnish any factual support for their defenses. The Court finds that these are essentially boilerplate defenses, plead in short and plain terms and bolstered by the denial of the Plaintiff's factual allegations in the Answer, and do give the Plaintiff sufficient notice as to how these defenses apply to the Plaintiff's claims").

Although it is difficult to imagine what possible basis UPS may have in urging estoppel or waiver against the EEOC that would provide a defense to this action, given that there has been no discovery to date in the case, it is impossible to state definitively at this time that there are no set of facts that could be proven that would provide a viable defense under either theory of waiver or estoppel. Accordingly, the Court respectfully recommends that the EEOC's motion to dismiss the Fifth Affirmative Defense be denied at this time, but subject to renewal if UPS is unable to provide notice as to what the basis for these affirmative defenses might be.[9]

3) Sixth Affirmative Defense: Laches and Unclean Hands

The EEOC also seeks to strike UPS's Sixth Affirmative Defense of laches and unclean hands on the grounds that the defense is generally not available against a government plaintiff acting in the public interest. (Pl.'s Mem. at 13). As with the defense of waiver and estoppel,

---

[9]Although the majority of case law in this district seems to indicate that there is no requirement that a defendant be required to plead any factual basis whatsoever in support of boilerplate defenses such as those raised in this case which bear no resemblance to the issues, this Court notes that here, this vague, unrestrained pleading standard has resulted in the pleading of 30 affirmative defenses, with no factual basis. This will surely require extensive discovery just to determine if the affirmative defenses have any validity at all, and UPS has virtually admitted that with respect to some of these defenses, they have no idea if there is a basis for them. (See Def.'s Mem. at 16 (admitting that it needs discovery in order to determine if it has suffered prejudice as a result of the EEOC's conduct)).

UPS argues that there is no per se rule that government actors are not subject to the defense of laches or unclean hands. (Def.'s Mem. at 15).

The defense of "unclean hands" is generally considered an "alternate designation of a traditional theory of estoppel." Martin v. Nationsbank of Ga., N.A., No. 92 CV 1474, 1993 WL 345606, * (N.D. Ga. Apr. 6, 1993) (citing cases). As with the defense of equitable estoppel, some courts have held that the doctrine of unclean hands may not be invoked against a government agency acting in the public interest." SEC v. Sands, 902 F. Supp. 1149, 1166 (C.D. Ca. 1995). Others have held that if the government's conduct is so outrageous or so egregious that the "'resulting prejudice to defendant rises to constitutional level,'" then it may preclude equitable relief and dismissal of the defense is inappropriate. Id. (quoting SEC v. Musella, 38 Fed. R. Serv. 2d 426, 428 (S.D.N.Y. 1983)).

To prevail on a doctrine of laches, a defendant must show that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West, 2 F. App'x 162, 164 (2d Cir. 2001). Traditionally, the government has not been subjected to the defense of laches. Cayuga Indian Nation of N.Y. v. Pataki, 413 F.3d 266, 278 (2d Cir. 2005) (citing United States v. Summerlin, 310 U.S. 414, 416 (1940)). "As a general rule, laches or neglect of duty on the part of officers of the government is no defense to a suit by it to enforce a public right or protect a public interest." State of N.Y. v. United Parcel Serv., Inc., 160 F. Supp. 3d at 640 (quoting Utah Power & Light Co. v. United States, 243 U.S. 389, 409 (1917)). However, the Supreme Court's more recent decisions "'refuse to shut the door completely to the invocation of laches or estoppel (similar doctrines) in government suits.'" Id. (quoting United

States v. Administrative Enterprises, Inc., 46 F.3d 670, 672-73 (7th Cir. 1995)); see also Resolution Trust Corp. v. Gregor, 1995 WL 931093, *3. Thus, in Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 373 (1977), the Supreme Court held that if justice requires, laches "can also be exercised when the EEOC is the plaintiff." Thus, as with the doctrines of waiver and estoppel, "the question of the application of laches against the government remains for the most part unsettled." Resolution Trust Corp. v. Gregor, 1995 WL 931093, at *4.

In pleading their Sixth Affirmative Defense, UPS again does not provide any factual basis for its defense of laches and unclean hands, merely stating: "The Complaint is barred in whole or in part by the doctrine of laches and unclean hands." (Ans. at 7). However, during the July 19, 2016 hearing proceedings before the district court, the court explored these issues with defendant. With reference to the first requirement necessary to prove laches – namely, that the EEOC knew of defendant's misconduct – the record reflected that the EEOC could not have reasonably known of the full extent of defendant's misconduct prior to November of 2010, which is when UPS finally produced the long-awaited discovery requested by the EEOC. Therefore, the district court held that November 2010 should be the beginning of the period for determining whether there inexcusable delay or laches on the part of the EEOC. (7/19/16 Tr. at 68).

As to the second element, UPS argued that the time between the close of discovery in November 2010 and the EEOC determination to bring charges in June 2012 constituted inexcusable delay. However, UPS has not indicated that this time is drastically beyond the time typical in this district for the EEOC to file suit after an initial charge is brought. See E.E.O.C. v. Incorporated Vill. of Valley Stream, 535 F. Supp. 2d 323, 327 (E.D.N.Y. 2008) (holding that, where the EEOC brought the present action approximately a year after the initial charge was

filed, "the record presented does not establish circumstances warranting dismissal for inordinate delay and resulting prejudice" and declining to dismiss the action based on laches). Moreover, during the July 19th hearing, the court found that there was insufficient evidence at this stage of the litigation to determine if the time delay of two and a half years was unreasonable. (Tr. at 69).

As to the third element, UPS argued during the hearing before the district court that as a result of the EEOC's alleged delay, witnesses' memories have faded, UPS has faced difficulty locating witnesses, and the volume of applications since the relevant events will make it difficult to defend the case. (Id. at 70). However, the court held that UPS had not provided sufficient evidence to support its allegations that the EEOC's delay caused specific prejudice to its ability to defend the case. (Id.) In its Memorandum in Opposition to the Motion to Strike, UPS does not offer any additional evidence of what prejudice it faces as a result of the EEOC's alleged delay in bringing charges. However, UPS now asserts that it needs discovery on this defense in order to provide evidence of the prejudice caused by the EEOC's conduct. (Def.'s Mem. at 16). In any event, it appears that there continues to be insufficient evidence at this stage to determine whether unclean hands and laches defense are viable defenses. See 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust Co., No. 15 CV 4516, 2016 WL 5372804, at *11 (E.D.N.Y. Sept. 26, 2016) (denying plaintiff's motion to strike defendant's unclean hands defense on the grounds that a plausible inference could be made that plaintiff acted with unclean hands); City of N.Y. v. FedEx Ground Package Sys., Inc., No. 13 CV 9173, 2017 WL 633445, at *4 (S.D.N.Y. Feb. 14, 2017) (denying plaintiff's motion to strike the unclean hands defense because it concerned unresolved issues of fact, namely, what the plaintiff knew and did not know before bringing suit); TufAmerica, Inc. v. Codigo Music LLC, 162 F. Supp. 3d 295, 329 (S.D.N.Y. 2016) (declining to

strike the unclean hands defense on the grounds that there remained triable issues of fact as to whether plaintiff had engaged in fraudulent conduct).

Thus, because there is no per se rule against assertions of the defense of laches and unclean hands against the EEOC, no discovery has been conducted since the September hearing, and disputed issues remain as to UPS's claims of prejudice due to the delay engendered by the EEOC's investigation and the alleged bad faith associated with the delay, the Court respectfully recommends that the motion to strike the Sixth Affirmative Defense be denied as premature.

4) Twelfth Affirmative Defense: Statute of Limitations

The EEOC argues that it is not bound by a statute of limitations in this matter because no statute of limitations exists for a Title VII action brought by the Commission. (Pl.'s Mem. at 18). UPS argues that no bright line rule exists regarding the imposition of a statute of limitations defense to actions brought by the EEOC. (Def.'s Mem. at 19). Indeed, defendant argues that many courts have applied a 300 day statute of limitations to EEOC claims. (Id.) (citing EEOC v. U.S. Steel Corp., No. 10 CV 1284, 2012 WL 3017869, at *5 (W.D. Pa. July 23, 2012); EEOC v. Freeman, No. 09 CV 2573, 2010 WL 1728847 (D. Md. April 27, 2010) (holding that "[t]he plain language of Section 706(e)(1) . . . precludes the EEOC from seeking relief for individuals who were not subjected to an unlawful employment practice during the 300 days before the filing of the triggering charge")).

During the July 19, 2016 hearing, the district court held that Title VII's 300-day charge filing period that applies to private plaintiffs also applies to the EEOC when it brings a claim on

behalf of multiple individuals, holding that the EEOC cannot bring a claim on multiple charges that accrued more than 300 days prior to the filing of the triggering charge. (7/19/16 Tr. at 71-2). The court stated that for an expanded investigation, the triggering date would be the date that the EEOC provided notice to the employer that the investigation had expanded, which could be one of two possible dates: March 22, 2006, which was the date the EEOC requested information on UPS's national accommodation policies, or April 25, 2007, which was the date of the filing of Farhan's charge with the EEOC specifying UPS's pattern and practice of allegedly discriminatory practices. (Id.) The court also stated that to make the determination as to which date was the appropriate triggering date, the court would need to examine the EEOC's March 22, 2006 request for information to see if it provided sufficient notice to UPS to make the company aware of the broader investigation into its nationwide discriminatory practices. (Id. at 73).

Here, the EEOC has brought the present action under Section 706 of Title VII and in past cases, has not disputed that the 300-day charge filing period applies to its section 706 claims. E.E.O.C. v. Bloomberg L.P., 751 F. Supp. 2d 628, 649 (S.D.N.Y. 2010), decision clarified on reconsideration (Dec. 2, 2010). The EEOC argues that during the July 19, 2016 hearing, the court did not find UPS's statute of limitations argument meritorious but instead, "limited the temporal scope of this action by ruling that the EEOC cannot seek damages for individuals who were discriminated against more than 300 days prior to the filing of the initial charge of discrimination." (Pl.'s Reply at 6). However, courts in this circuit have treated the 300-day filing period as a statute of limitations that, although does not limit the EEOC's ability to bring a suit, restricts the scope of the charges that can be brought by the EEOC. See E.E.O.C. v.

Bloomberg L.P., 751 F. Supp. 2d at 646 (applying section 706 of Title VII's 300-day charge-filing requirement to a pattern or practice claim brought by the EEOC under Section 707 of Title VII); E.E.O.C. v. Carolls Corp., No. 98 CV 1772, 2011 WL 817516, at *4 (N.D.N.Y. Mar. 2, 2011) (holding that, "when the EEOC brings a suit in its own name under § 706 on behalf of a group of aggrieved persons, Title VII's statute of limitations, 42 U.S.C. § 2000e–5(e)(1) applies").

The EEOC argues that even if the 300-day filing period applied to this action, the job segregation and hostile work environment claims raised constitute a continuing violation and therefore, only one act would have to fall within the charge-filing period in order for the claims to be timely. (Pl.'s Opp.[10] at 40-41). UPS argues that the continuing violations doctrine does not apply here because the challenged conduct constitute discrete acts of discrimination. (Def.'s Mot. at 28).

Many courts have found such a decision as to whether a plaintiff's claims constitute a continuing violation an issue that should be determined by a trier of fact. See id. (holding that "[w]hile the trier would be entitled to reject plaintiff's account, that is what trials are for. There are genuine issues of fact material to determination of defendant's statute of limitations argument"); see also Lambert v. Genesee Hosp., 10 F.3d at 53 (noting that the trial court had allowed the claims to proceed to trial to give the plaintiffs a chance to prove the existence of a continuing violation).

As the court in Goodwine v. City of N.Y. recently noted, "the statute of limitations is an

[10]Citations to "Pl.'s Opp." refer to EEOC's Opposition to the Motion to Dismiss, filed on January 11, 2016.

affirmative defense for which a defendant bears the burden of proof." 2016 WL 3017398 at *4. "[I]t is well established that 'a pre-answer motion to dismiss [based on such a defense] may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run.'" Id. (quoting Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014)); see also Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F/3d 406, 425 (2d Cir. 2008). Therefore, the Court finds that there is "little or nothing gained at this stage of the litigation by deciding what the relevant cut off dates are for Plaintiff's federal claims." Goodwine v. City of N.Y., 2016 WL 3017398 at *4.

At this time, because the district court has previously addressed this question and found that factual issues remain as to when UPS received sufficient notice of the EEOC investigation for the purposes of triggering the 300-day filing limit, the Court respectfully recommends that EEOC's motion to strike UPS's statute of limitations defense be denied.

5) Fifteenth Affirmative Defense: Failure to Exhaust Administrative Procedures

UPS's Fifteenth Affirmative Defense asserts that the EEOC failed to exhaust the administrative procedures that are prerequisites to bringing a suit. (Ans. at 8). The EEOC moves to strike this defense on the grounds that UPS has failed to comply with Fed. R. Civ. P. Rule 9(c) in that UPS has not alleged with particularity which administrative procedures the Commission has allegedly failed to satisfy. (Pl.'s Mem. at 19).

Rule 9(c) of the Federal Rules of Civil Procedure provides that "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." Fed.

R. Civ. P. 9(c). Courts in this district have held that an affirmative defense that merely asserts that the EEOC has failed to satisfy its pre-suit requirements without additional factual allegations is not sufficient to survive a motion to strike. See E.E.O.C. v. Kelley Drye & Warren, LLP, No. 10 CV 655, 2011 WL 3163443, at *4 (S.D.N.Y. July 25, 2011) (holding that the defendant "has neither plead nor proffered any facts indicating that the EEOC has failed to comply with any of the administrative prerequisites to commencement of an enforcement suit . . . . For these reasons, the EEOC's motion to strike Defendant's tenth and eleventh affirmative defenses as lacking legal sufficiency will be granted").

In pleading this affirmative defense, UPS has failed to specify which administrative procedures, beyond the duty to conciliate, the EEOC has allegedly failed to complete before filing suit. As detailed supra at pages 11-12, Title VII sets forth the EEOC's administrative duties, all of which appear to have been satisfied in this case. The EEOC's compliance with the first obligation, "receiv[ing] a formal charge of discrimination," and the second obligation, "provid[ing] notice of the charge to the employer," 42 U.S.C. § 2000e-5(b), do not appear to be in dispute. UPS has not argued that the EEOC failed to provide UPS with copies of the January 2006 charge filed by Abdullah or the April 2007 charge filed by Farhan. (Pl.'s Mem. at 1, 2). Nor is there any dispute that UPS was provided with the December 2008 Commissioner's Charge. (Id.) The EEOC has provided the Court with copies of the January 29, 2012 letter indicating that it believed that there was reasonable cause to believe that UPS had violated Title VII and providing notice that the EEOC was alleging a nationwide pattern or practice of religious discrimination by UPS, thus satisfying the EEOC's fourth obligation under the statute. (Lario

Certif., Ex. 26). The only other administrative duties required as prerequisites to suit are the duty to investigate and the duty to conciliate. 42 U.S.C. 2000e-5(b).

UPS contends that the EEOC engaged in conduct that "repeatedly thwarted its obligations and evidenced bad faith" in completing its pre-suit administrative requirements. (Def.'s Mem. at 17). UPS acknowledges that while "Mach Mining narrows judicial review of the EEOC's duty to conciliate," UPS contends that "Mach Mining involved only the EEOC's conciliation duty, not its other pre-suit obligations." (Id. at 18).

However, in EEOC v. Sterling Jewelers Inc., the Second Circuit extended the holding in Mach Mining LLC v. EEOC, to the EEOC's pre-suit investigative obligations, applying the same narrow scope of judicial review that Mach Mining prescribed with respect to an alleged failure by the EEOC to conciliate. 801 F.3d at 101. The court held that "Mach Mining did not address the EEOC's obligation to investigate, but we conclude that judicial review of an EEOC investigation is similarly limited: The sole question for judicial review is whether the EEOC conducted an investigation." Id.; see also Equal Employment Opportunity Comm'n v. AZ Metro Distributors, LLC, No. 15 CV 5370, 2016 WL 4768796, at *2 (E.D.N.Y. Sept. 13, 2016) (holding that "as has been noted before in this litigation, judicial review of the EEOC's prerequisites to filing suit is strictly 'limited,' such that 'courts may not review the sufficiency of an investigation—only whether an investigation occurred'") (internal citations omitted); Equal Opportunity Employment Comm'n v. United Health Programs of Am., Inc., 2016 WL 6477050, at *16 (finding that judicial review of the EEOC's obligation to investigate and conciliate is narrow).

Thus, to the extent that UPS appears to be challenging the EEOC's good faith in

conducting its pre-suit investigation (Def.'s Mem. at 17 (asserting that the EEOC "repeatedly thwarted its obligations and evidenced bad faith")), this court's review appears to be limited by the Circuit's holding in Sterling Jewelers to whether the EEOC conducted an investigation, not whether it conducted it in good faith. EEOC v. Sterling Jewelers Inc., 801 F.3d at 102 (holding that the EEOC need only demonstrate that it investigated the claims of the class nationwide, but need not "describe in detail every step it took or the evidence it uncovered); see Equal Employment Opportunity Comm'n v. Blinded Veterans Ass'n, 128 F. Supp. 3d 33, 46 (D.D.C. 2015) (holding that "As [defendant] has failed to identify any judicially cognizable deficiencies in the EEOC's investigation, there is no basis to conclude that the EEOC has failed to satisfy its pre-suit obligations"). UPS does not dispute that an investigation occurred, and in fact has complained that the investigation went on too long, arguing that the EEOC is subject to the defense of failure to make a prompt determination. (Def.'s Mem. at 17-19).

To the extent that UPS relies on the decision in CRST Van and is raising the same arguments that it raised in connection with its failure to conciliate defense – namely, that the EEOC is required to investigate each and every claimant's situation before a charge can be brought – courts have rejected similar claims and this Court finds that such a defense would contravene the rationale set out in Mach Mining and Sterling Jewelers.[11] See EEOC v. United

[11] UPS also alleges that "Plaintiff's claims are also barred to the extent that any Claimant filed an EEOC charge and received a no probable cause finding and/or a settlement." (Ans. at 8). Insofar as UPS argues that this defense preserves their ability to move to dismiss any potential claims that the EEOC could later raise that are not within the scope of the underlying charge – namely, religious discrimination based on UPS's Appearance Guidelines (Def.'s Mem. at 17) – the EEOC is not limited the underlying charges and therefore, allowing UPS to raise this affirmative defense would not impact UPS's ability to contest any additional charges the EEOC may bring following its nationwide investigation. See discussion infra in Section 6.

Health Programs of America, Inc., No. 14 CV 3673, 2016 WL 6477050, at *16.

Based on the limited nature of judicial review of the Commission's pre-suit obligations, particularly its obligation to investigate charges filed before the EEOC, UPS's failure to plead its Fifteenth Affirmative Defense with particularity, and the EEOC's argument that it would be prejudiced by the time and expense of litigating the defense (Pl.'s Mem. at 21), the Court respectfully recommends that plaintiff's motion to strike UPS's Fifteenth Affirmative Defense be granted.

6) Twenty-Second Affirmative Defense: Limitation to Claims by Charging Parties

In its Twenty-Second Affirmative Defense, UPS argues that the EEOC may not recover any damages or pursue any claim on behalf of a claimant based on conduct outside the scope of the underlying charge. (Ans. at 9). UPS argues that this defense would allow UPS to move to dismiss a potential claimant who had claims other than religious discrimination. (Def.'s Mem. at 17). The EEOC contends that the Court should strike UPS's Twenty-Second Affirmative Defense because, as a matter of law, the EEOC's enforcement actions are not limited to the claims presented by the charging parties. (Pl.'s Mem. at 21) (citing General Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 331 (1980)).

Courts both within and outside this district have given the EEOC wide latitude to add additional victims and additional claims discovered during the course of an investigation into its initial complaint. See General Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n,

446 U.S. at 331 (holding that "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable"); EEOC v. Caterpillar, Inc., 409 F.3d 831, 832–33 (7th Cir. 2005) (holding that "[t]he charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to the suit"); see also Equal Opportunity Employment Comm'n v. United Health Programs of Am., Inc., 2016 WL 6477050, at *16 (holding that "at least under the circumstances present in the instant case, the EEOC was not precluded from identifying new claimants (whose claims were effectively identical to the claims of the pre-existing claimants) after filing this action"); Equal Employment Opportunity Commission v. Thomas Dodge Corp. of N.Y., 524 F. Supp. 2d at 236 (holding that the doctrine that the EEOC can add additional violations to a suit following an investigation also applies to allow the EEOC to add additional victims who are also uncovered during the investigation).

The EEOC claims that to the extent that UPS is allowed to pursue this affirmative defense, the focus of the litigation will shift from whether UPS has engaged in religious discrimination to determining the identification of the claimants who raise claims within the "contours of the charges filed by Abdullah, Farhan, and the Commission" as opposed to those who may raise other claims. (Pl.'s Mem. at 22). The EEOC argues that it will be prejudiced if this affirmative defense is not struck because allowing UPS to raise the defense would create a "two-step action" in which the parties would have to first litigate the question of whether the EEOC had a "reasonable basis for its initial finding" before proceeding to litigate the merits of the case. (Pl.'s Reply at 9 (citing Sterling Jewelers, 801 F. 3d at 101)). The EEOC argues that

this process would lengthen and complicate discovery and divert the EEOC's resources from furthering the purpose of Title VII. (Id.)

In response, UPS argues that to limit the claims to those of the charging parties would not shift the focus of the litigation because "the EEOC cannot litigate claims that it failed to investigate, issue a determination on, or conciliate." (Def.'s Mem. at 11 n.3). UPS's argument in favor of limiting the claims the EEOC may bring on the grounds that the EEOC cannot litigate claims that it failed to investigate has already been rejected by the courts. (See discussion supra at page 19). Moreover, the EEOC's reasonable cause determination provided UPS with notice of its broad investigation into the company's nationwide practice of religious discrimination and specified the general nature of the charge as the denial of religious accommodations based on UPS's Uniform and Personal Appearance Guidelines. (Lario Certif., Ex. 26); Gen. Tel. Co. v. EEOC, 446 U.S. at 331 (holding that "the original charge is sufficient to support the action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act").

Given that the EEOC is permitted to add both claimants and charges to a complaint after suit has been filed based on an investigation conducted during the process of litigation, and in light of the EEOC's representation that it will suffer prejudice if the focus of discovery is aimed at limiting claims, the Court respectfully recommends that the EEOC's motion to strike the Twenty-Second Affirmative Defense be granted.

7) Twenty-Third Affirmative Defense: Failure to Make a Prompt Determination

The EEOC argues that the Court should strike UPS's Twenty-Third Affirmative Defense, which alleges that the EEOC failed to make a prompt determination of the EEOC charge.[12] UPS argues that although the district court noted during the July 19th hearing that there was no requirement that the EEOC complete its investigation during a particular period of time, this did not mean that the EEOC had unlimited time to conduct its investigation. (Def.'s Mem. at 19).

Pursuant to Title VII, "[t]he Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge." 42 U.S.C.A. § 2000e-5. Courts in this circuit have routinely deferred to the EEOC's authority to issue a determination on a charge only after it has determined that the investigation and attempts at conciliation have been sufficiently completed, even when the EEOC has issued letters of determination beyond the period specified in Title VII. See E.E.O.C. v. Sterling Jewelers Inc., 801 F.3d at 99 (declining to review the sufficiency of the EEOC's investigation where it received individual charges between 2005 and 2007, but only issued its letter of determination finding reasonable cause in 2008); Equal Opportunity Employment Comm'n v. United Health Programs of Am., Inc., 2016 WL 6477050, at *5 (declining to grant defendant's motion for summary judgment on the issue of whether the EEOC satisfied its reasonable cause determination requirement where the EEOC issued its letter of determination on March 13, 2014,

[12] This defense is virtually identical to the laches defense advanced by UPS.

more than a year after the last claimant filed a charge with the EEOC, on July 27, 2012). In EEOC v. Sterling Jewelers, Inc., the Second Circuit declined to decide as a matter of law that the EEOC had not satisfied its pre-suit requirement to make a reasonable cause determination due to the "expansive discretion that Title VII gives to the EEOC." Sterling Jewelers, 801 F. 3d at 101.

Two separate charges were filed with the EEOC, on different dates: first by Bilal Abdullah on January 19, 2006 and thereafter by Muhammad Farhan on April 26, 2007. (Pl.'s Mem. at 2-3). Although the EEOC did not issue to UPS its finding of reasonable cause to believe that Title VII was violated until June 27, 2012 (Compl. ¶ 7), the EEOC contends that its investigation into the charges was delayed by UPS's actions in response to the administrative subpoena issued to UPS and the ensuing litigation related to the subpoena. (Id. at 3). Thus, to the extent that the EEOC failed to make a prompt determination due to these disputed discovery issues, the EEOC argues that UPS itself was largely responsible for prolonging the EEOC's investigation and delaying its determination by refusing to provide the information sought by the July 2007 subpoena. (Pl.'s Mem. at 3). Moreover, as the district court noted during the July 19th hearing, there are unresolved questions of material fact over whether EEOC failed to make a prompt determination as required by Section 2000e-5, whether the EEOC unreasonably delayed in making its determination, and when exactly the Commission was "authorized to take action with respect to the charge." (Tr. at 66).

Due to the pending factual issues surrounding whether EEOC failed to make a prompt determination as to reasonable cause to believe that UPS violated Title VII, it is respectfully recommended that the EEOC's motion to strike this affirmative defense be denied at this time.

CONCLUSION

In light of the foregoing, the Court respectfully recommends that EEOC's motion to strike UPS's affirmative defenses be granted in part and denied in part.

The Court respectfully recommends that the EEOC's motion to strike UPS's Fourth Affirmative Defense (failure to conciliate), Fifteenth Affirmative Defense (failure to exhaust administrative remedies) and Twenty-Second Affirmative Defense (limitation of claims to charging parties) be granted. It is respectfully recommended that the EEOC's motion to strike UPS's Fifth Affirmative Defense (waiver and estoppel), Sixth Affirmative Defense (laches and unclean hands), Twelfth Affirmative Defense (statute of limitations), and Twenty-Third Affirmative Defense (failure to make a prompt determination) be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report & Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 9, 2017

/s/ Cheryl L. Pollak

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York