UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

        v.

UNITED PARCEL SERVICE,

                Defendant.

---------------------------------------------------------------

**MEMORANDUM & ORDER**

15-CV-4141 (MKB) (CLP)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Equal Employment Opportunity Commission (the "EEOC") commenced this

action on July 15, 2015 against Defendant United Parcel Service, Inc. ("UPS"), alleging that

UPS had violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of

1991 by discriminating against two UPS employees, Muhammad Farhan and Bilal Abdullah, as

well as a nationwide class of similarly situated individuals. (Compl., Docket Entry No. 1.) After

engaging in motion practice,[1] UPS filed an Answer to the Complaint on August 2, 2016,

asserting thirty affirmative defenses. (Ans., Docket Entry No. 32.) On August 23, 2016, the

EEOC requested a pre-motion conference in anticipation of a motion to strike several of UPS'

affirmative defenses. (Pl. Pre-Mot. Conference Request, Docket Entry No. 35.) The Court

referred the motion to Magistrate Judge Cheryl L. Pollak for a report and recommendation.

(Order dated Aug. 31, 2016.) By report and recommendation dated March 9, 2017 (the "R&R"),

Judge Pollak recommended that the Court grant the EEOC's motion to strike UPS' fourth,

---

        [1] On October 2, 2015, UPS moved to dismiss the Complaint, and on July 19, 2016, the
Court granted the motion to dismiss in part and denied it in part. (*See* Min. Order dated July 19,
2016.)

fifteenth and twenty-second affirmative defenses and deny the EEOC's motion to strike UPS' fifth, sixth, twelfth and twenty-third affirmative defenses. (R&R 44, Docket Entry No. 56.) The parties timely filed objections to the R&R. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 58; Def. Obj. to R&R ("Def. Obj."), Docket Entry No. 59; Pl. Opp'n to Def. Obj. ("Pl. Reply"), Docket Entry No. 60.) For the reasons set forth below, the Court adopts the R&R as to the fourth, fifth, twelfth, fifteenth and twenty-second affirmative defenses, except as to the unnamed claimants in the twenty-second affirmative defense, and declines to adopt the R&R as to the sixth and twenty-third affirmative defenses.

## I. Background

### a. Factual background

The Court assumes the parties' familiarity with the facts as set forth in the R&R and the parties' briefing and exhibits from the prior motion to dismiss, and includes only those facts necessary to decide the instant motion. (*See* Def. Mem. of Law in Supp. of Def. Mot. to Dismiss ("Def. Mot. to Dismiss Mem."), Docket Entry No. 26-1; Cert. of Wendy Johnson Lario in Supp. of Def. Mot. to Dismiss ("Lario Cert."), Docket Entry No. 26-2; Pl. Mem. of Law in Opp'n to Def. Mot. to Dismiss ("Pl. Mot. to Dismiss Mem."), Docket Entry No. 27; Decl. of Elizabeth Fox-Solomon ("Fox-Solomon Decl.") ¶ 15, Docket Entry No. 28.) UPS maintains an appearance policy that applies to all employees in customer contact, supervisory and managerial positions. (Compl. ¶ 13.) Pursuant to the policy, male employees in those positions, but not back-of-the-facility positions that avoid customer contact, are prohibited from wearing beards or growing their hair longer than collar length. (*Id.*) According to the EEOC, UPS has used the appearance policy to deny equal employment opportunities to individuals whose religious beliefs require them to maintain a beard or refrain from cutting their hair — including Muslims, Rastafarians,

Native Americans, Fundamentalist Christians, Sikhs, and Orthodox Jews. (*Id.* ¶ 15.) The EEOC alleges that UPS violated Title VII by (1) refusing to provide religious accommodations to individuals in the class or unreasonably delaying their requests; (2) failing to hire, promote, or transfer them into positions covered by the appearance policy; and (3) segregating them into non-supervisory positions and positions without customer contact. (*Id.* ¶¶ 16–18.)

On January 19, 2006, Abdullah filed a charge of discrimination with the local Buffalo office of the EEOC, alleging that Defendant had failed to hire him because of his religion and failed to accommodate his sincerely-held religious beliefs by requiring him to conform to UPS' appearance policy. In January of 2006, the EEOC provided UPS with notice and a copy of the charge. (Pl. Mot. to Dismiss Mem. 4.) In March of 2006, an EEOC investigator held a preliminary fact-finding conference with UPS supervisors about Abdullah's allegations. (*Id.*) The same month, the EEOC issued to UPS its first Request for Information ("RFI"), which included requests for nationwide information. (*Id.*) UPS requested an extension of time to respond to the RFI and, in May of 2006, objected to several requests as overly broad and as requesting private and confidential information about its employees. (*Id.* at 5.) Thereafter, the EEOC investigator interviewed supervisory personnel at the UPS facility to which Abdullah had applied. (*Id.*; *see* Def. Letter dated Aug. 30, 2006 ("Def. Aug. 30, 2006 Letter"), annexed to Lario Cert. as Ex. 7.)

In August of 2006, the EEOC investigator informed UPS that its responses were incomplete because they did not provide information pertaining to any facilities beyond the Rochester, New York facility to which Abdullah had applied. (Pl. Mot. to Dismiss Mem. 6.) The parties continued to exchange requests and responses through March of 2007, with UPS refusing to produce information on a nationwide basis. (*Id.* at 6.)

On April 26, 2007, Farhan filed a charge of discrimination against UPS with the EEOC's local office in Buffalo. (Farhan Charge, annexed to Lario Cert. as Ex. 2.) Farhan alleged that UPS had demoted him because of his religion and that UPS had "a pattern or practice of refusing to accommodate the religious observances, practices, and beliefs of its employees." (*Id.*) The EEOC provided UPS with notice and a copy of the charge on May 2, 2007 and asked UPS to provide a statement of position with supporting documentation by the end of the month. (Pl. Mot. to Dismiss Mem. 7.) When UPS did not respond, the EEOC sent a follow-up request in June of 2007. (Fox-Solomon Decl. ¶¶ 16–17.) The EEOC then issued an administrative subpoena seeking nationwide discovery in connection with the Abdullah and Farhan charges on July 25, 2007. (EEOC Subpoena, annexed to Lario Cert. as Ex. 10.) On August 6, 2007, UPS petitioned the EEOC to revoke or modify the subpoena, which the EEOC denied. (Pl. Mot. to Dismiss Mem. 8; Def. Petition dated Aug. 6, 2007, annexed to Lario Cert. as Ex. 11; EEOC Denial of Petition, annexed to Lario Cert. as Ex. 12.) UPS did not respond to the subpoena, and in November of 2007, the EEOC filed an application to enforce its subpoena in the U.S. District Court for the Western District of New York. (Lario Cert. ¶ 15.) In January of 2008, UPS opposed the EEOC's enforcement motion. (*Id.* ¶ 16.) In September of 2008, Judge William Skretny of the Western District of New York issued a decision denying the EEOC's enforcement motion. (*Id.* ¶ 17; Judge Skretny Mem. & Opinion, annexed to Lario Cert. as Ex. 13.) The EEOC appealed Judge Skretny's decision to the Second Circuit. (Lario Cert. ¶ 18.)

While Judge Skretny's decision was on appeal, the EEOC issued a Commissioner's Charge in December of 2008 that, according to the EEOC, permitted it to continue investigating UPS' alleged practices of nationwide discrimination before making a final determination. (Pl. Mot. to Dismiss Mem. 9; EEOC Comm'r Charge, annexed to Lario Cert. as Ex. 3.) In January of

2009, the EEOC issued an RFI in connection with the Commissioner's Charge. (Pl. Mot. to Dismiss Mem. 9.) UPS objected to the RFI in February of 2009.[2] (*Id.*) The EEOC replied to UPS' objections in March of 2009 and requested the information from the January of 2009 RFI. (*Id.*) According to the EEOC, UPS did not respond. (Fox-Solomon Decl. ¶ 30.) In September of 2009, the EEOC renewed its request for responses to its January of 2009 RFI, and counsel for UPS replied by requesting that the EEOC permit UPS to continue its process of negotiating with the EEOC's New York District Office over the scope of discovery in the Abdullah charge. (Def. Letter dated Sept. 21, 2009, annexed to Lario Cert. as Ex. 19.)

According to UPS, the parties conferred in November of 2009 and reached an agreement as to the scope of the information UPS would produce. (Lario Cert. ¶ 25.) However, in November of 2009, the Second Circuit reversed Judge Skretny's order and upheld the relevance of the EEOC's nationwide inquiries. (Pl. Mot. to Dismiss Mem. 9.) In February of 2010, UPS again objected to portions of the EEOC's January of 2009 RFI.[3] (Def. Letter dated Feb. 1, 2010, annexed to Lario Cert. as Ex. 20.) In March of 2010, Judge Skretny issued an order granting the EEOC's enforcement application and directing UPS to provide the required information within forty-five days. (Suppl. Cert. of Wendy Johnson Lario in Supp. of Def. Mot. to Dismiss ("Lario Suppl. Cert.") 3, ¶ 6, Docket Entry No. 29-1.) UPS completed its production by November of 2010. (Lario Cert. ¶¶ 27–30.)

According to the EEOC, the Buffalo Office took eighteen months to complete its

---

[2] In general, UPS repeatedly objected to the EEOC's RFIs as overbroad, unduly burdensome, and irrelevant.

[3] UPS asserted that the requests in connection with the Commissioner's Charge were "overbroad, vague, and not relevant to the subject matter," (Lario Cert. Ex. 20), although the Second Circuit had rejected those arguments in connection with the narrower individual charges months prior.

investigation of the three charges and issue a letter of determination.  (Fox-Solomon Decl. ¶ 40.)

During that time, an EEOC investigator mailed approximately 200 letters to applicants identified

in UPS' production as having been denied employment because of a conflict with the

Appearance Guidelines, and sent an additional fifty letters to UPS employees who had sought

religious accommodations.  (*Id.* ¶ 41.)  After two rounds of following up on undeliverable letters

and identifying individuals by other means, the EEOC investigator collected and analyzed

responses, made dozens of telephone calls, and conducted approximately thirty interviews.[4]  (*Id.*

¶¶ 42–43.)  On March 14, 2012, UPS wrote to the EEOC requesting a final determination.  (Def.

Letter dated Mar. 14, 2012, annexed to Lario Cert. as Ex. 25.)  In that letter, UPS noted that

"[t]his is a case where the EEOC has conducted a thorough and extensive investigation," and

"[t]he time has come for the charge process to end."  (*Id.*)

On June 29, 2012, the EEOC issued a letter of determination on the three charges of

discrimination (the "Letter of Determination").  (EEOC Determination Letter, annexed to Lario

Cert. as Ex. 26.)  The EEOC determined that UPS had violated Title VII "by engaging in a

nationwide pattern of discriminatory actions and fail[ing] to grant accommodations of religious

practice."  (*Id.* at 3.)  In addition, the EEOC determined that UPS had discriminated against both

Abdullah and Farhan.  (*Id.*)  The EEOC's Letter of Determination invited UPS to conciliate the

matter.  (*Id.*)  As evidenced in the redacted materials annexed to UPS' motion to dismiss, the

parties attempted to conciliate from June of 2012 until August of 2014, at which point the EEOC

declared conciliation a failure.  (Pl. Letter dated Aug. 13, 2014, annexed to Lario Cert. as Ex.

44.)  The longest delay during the conciliation process was between July of 2012 and January of

---

[4]  UPS did not dispute these facts.  (Def. Reply Br. in Supp. of Def. Mot. to Dismiss
("Def. Reply") 9, Docket Entry No. 29.)

2013, during which time the parties did not correspond and a UPS offer stood without response from the EEOC. (Def. Mot. to Dismiss Mem. 11.) After conciliation failed in August of 2014, the file was transferred to the EEOC's legal unit to determine whether to recommend litigation. (Fox-Solomon Decl. ¶ 46.) According to the EEOC, lawsuits involving nationwide class allegations must be reviewed and approved by the Office of General Counsel and submitted for a vote by the full Commission. (Pl. Mem. 13 (citing EEOC Regional Attorneys' Manual, Part 2, Section IV(F)).) The EEOC commenced this action on July 15, 2015, within a year of declaring that conciliation had failed.

### b. Procedural background

On October 2, 2015, UPS moved to dismiss the Complaint, arguing that (1) the EEOC failed to make a prompt determination of the three charges of discrimination; (2) the EEOC failed to conciliate in good faith; and (3) the EEOC's action was barred by laches. (Def. Mot. to Dismiss Mem. 1.) UPS also requested that the Court dismiss any claims based on acts that occurred prior to February 8, 2008 — 300 days before the EEOC issued the Commissioner's Charge. (*Id.*) At a pre-motion conference, UPS agreed not to pursue its failure-to-conciliate argument.

On July 19, 2016, the Court heard oral argument on the motion to dismiss. (*See* Min. Order dated July 19, 2016.) The Court denied the motion as to UPS' claims of unreasonable delay and laches but granted the motion to limit the claims based on the 300-day filing requirement. (*Id.*) The Court reserved decision as to when the 300-day period would commence for class claims. (*Id.*)

On September 16, 2016, the EEOC moved to strike UPS' fourth, fifth, sixth, twelfth, fifteenth, twenty-second and twenty-third affirmative defenses pursuant to Rule 12(f) of the

Federal Rules of Civil Procedure.  (*See* R&R 44.)

### c.   **Judge Pollak's recommendations**

Judge Pollak recommended that the Court grant in part and deny in part Plaintiff's motion to strike.  (*Id.* at 1.)  Specifically, Judge Pollak recommended that the Court grant Plaintiff's motion as to Defendant's fourth, fifteenth and twenty-second affirmative defenses and deny Plaintiff's motion as to Defendant's fifth, sixth, twelfth and twenty-third affirmative defenses. (*Id.*)

### i.   **Recommendations to strike defenses**

Judge Pollak recommended that the Court strike Defendant's fourth defense of failure to conciliate the class members' claims with Defendant before bringing suit because, assuming Plaintiff was required to conciliate in good faith, the Court would have to engage in an impermissible review of the substance of the conciliation proceedings to determine whether Plaintiff conciliated in good faith.  (*Id.* at 21–22.)  Judge Pollak determined that this review of conciliation would require the Court to "engag[e] in the very type of substantive review of agency action that [Supreme Court precedent] clearly prohibits."  (*Id.* at 22 (citing *Mach Mining LLC v. EEOC*, 575 U.S. ---, ---, 135 S. Ct. 1645, 1655 (Apr. 29, 2015)).)

As to Defendant's fifteenth affirmative defense, which asserts that Plaintiff failed to exhaust the administrative prerequisites to bringing suit, Judge Pollak found that judicial review of the EEOC's pre-suit obligations is limited and that Defendant had failed to plead the defense with requisite particularity.  (*Id.* at 39.)  Judge Pollak accordingly recommended that the Court strike Defendant's fifteenth affirmative defense.  (*Id.*)

Judge Pollak similarly recommended that the Court strike Defendant's twenty-second affirmative defense, which asserts that Plaintiff may not recover any damages or pursue any

claim on behalf of a claimant based on conduct outside the scope of the underlying charge. (*Id.* at 39.) Judge Pollak found that Defendant's argument was legally unsupported because "the EEOC is permitted to add both claimants and charges to a complaint after suit has been filed based on an investigation conducted during the process of litigation." (*Id.* at 41.)

### ii. Recommendations to deny motion to strike defenses

As to Defendant's fifth affirmative defense of waiver and estoppel, Judge Pollak recommended that the Court deny Plaintiff's motion to strike the defenses. Judge Pollak found that because the applicability of those equitable defenses to an administrative agency was an unresolved question of law and because there had been no discovery yet in the case, it was "impossible to state definitively at this time that there are no set of facts that could be proven that would provide a viable defense under either theory of waiver or estoppel." (*Id.* at 28.)

Judge Pollak similarly recommended that the Court decline to strike Defendant's sixth affirmative defense of laches and unclean hands "because there is no *per se* rule against assertions of the defense of laches and unclean hands against the EEOC, no discovery has been conducted since the September hearing, and disputed issues remain as to UPS's claims of prejudice due to the delay engendered by the EEOC's investigation and the alleged bad faith associated with the delay." (*Id.* at 32.)

Judge Pollak also recommended that the Court decline to strike Defendant's twelfth affirmative defense, based on the 300-day limitations period applicable to Title VII actions. (*Id.* at 35.) Because Judge Pollak could not definitively conclude that the limitations period does not apply to the EEOC when it acts in the public interest and because "factual issues remain as to when UPS received sufficient notice of the EEOC investigation for the purposes of triggering the

300-day filing limit," Judge Pollak recommended that the Court deny the EEOC's motion to strike Defendant's twelfth affirmative defense.  (*Id.*)

Finally, Judge Pollak recommended that the Court decline to strike Defendant's twenty-third affirmative defense, which asserts that Plaintiff failed to make a prompt determination as required under Title VII, because of "pending factual issues surrounding whether EEOC failed to make a prompt determination as to reasonable cause to believe that UPS violated Title VII."  (*Id.* at 42.)

## II.   Discussion

### a.   Standards of review

#### i.   Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C.*

*Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Motion to strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and will not be granted "unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) (quoting *Salcer v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984), *vacated and remanded on other grounds*, 478 U.S. 1015 (1986)); *see also State of New York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 637 (S.D.N.Y. 2016) ("Motions to strike are generally disfavored." (quoting *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015))); *Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 78 (D. Conn. 2015) ("Motions to strike are generally disfavored, but are within the district court's sound discretion." (quoting *Lamoureux v. AnazaoHealth Corp.*, 250 F.R.D. 100, 102 (D. Conn. 2008))).

A court may strike a defense as insufficient where "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by the inclusion of the defense." *Sibley v. Choice Hotels Int'l*, 304 F.R.D. 124, 132 (E.D.N.Y. 2015) (citation omitted); *see also United Parcel Serv., Inc.*, 160 F. Supp. 3d at 637; *Coach, Inc.*, 756 F. Supp. 2d at 425. The first two prongs of this test "examine the legal sufficiency of the asserted defense." *Walters*, 124 F. Supp. 3d at 78 (citing *Coach, Inc.*, 756 F. Supp. 2d at 425). "This is 'to be determined solely upon the face of the pleading.'" *Id.* (quoting *Coach, Inc.*, 756 F. Supp. 2d at 425).

Courts in this Circuit are divided over the pleading standard that applies to affirmative defenses, and the Second Circuit has not clarified if or how that standard has changed since the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Compare Walters*, 124 F. Supp. 3d at 78 (noting that district courts in the District of Connecticut do not apply the heightened "plausibility standard" to affirmative defenses) *and Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014) ("More recently, many district courts within this Circuit have found that the *Twombly/Iqbal* standard does not apply to affirmative defenses." (collecting cases)) *with EEOC v. Kelley Drye & Warren, LLP*, No. 10-CV-655, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) ("[M]ost lower courts that have considered the question of the standard applicable to pleading of defenses have held that the Rule 12(b)(6) standard, as elucidated in *Twombly* and *Iqbal*, governs the sufficiency of the pleading of affirmative defenses." (collecting cases)) *and Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008) ("The standard on a motion to dismiss also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6) and a motion to strike an affirmative defense pursuant to Rule 12(f)." (citation omitted)). Notwithstanding this dispute, the Second Circuit has long held that affirmative defenses that contain only "bald assertions" without supporting facts should be stricken. *See Schechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996). In addition, the Second Circuit has endorsed the view that "even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *Salcer*, 744 F.2d at 939 (quoting 5 C. Wright & A. Miller, Fed. Practice & Proc. § 1381 at 800–01).

"If a court determines that a defense is legally insufficient, the court next determines

whether inclusion of the defense would prejudice the plaintiff." *Coach, Inc.*, 756 F. Supp. 2d at 425. "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Id.* (*citing Estee Lauder, Inc. v. Origins Nat. Res., Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999)); *see also Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111–12 (S.D.N.Y. 2005) (finding that plaintiffs would be prejudiced by the inclusion of an unclean-hands defense that would require additional discovery and expand the length and scope of trial. Moreover, inclusion of a defense that will fail as a matter of law prejudices the plaintiff by needlessly increasing the duration and expense of the litigation. *Coach, Inc.*, 756 F. Supp. 2d at 426; *Estee Lauder*, 189 F.R.D. at 272 (explaining that when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim").

### b.   Unopposed recommendation

Neither party has opposed Judge Pollak's recommendation that the Court deny Plaintiff's motion to strike Defendant's twelfth affirmative defense, which alleges that Plaintiff's claims are barred by the 300-day limitations period applicable to Title VII claims. The Court has reviewed the unopposed portion of the R&R and, having found no clear error, adopts this portion pursuant to 28 U.S.C. § 636(b)(1). Accordingly, the Court denies Plaintiff's motion to strike Defendant's twelfth affirmative defense.

### c.   Objections to the R&R

Plaintiff objects to Judge Pollak's recommendation that the Court deny the motion to strike Defendant's fifth, sixth and twenty-third affirmative defenses. (Pl. Obj. 1.) Defendant objects to Judge Pollak's recommendation that the Court grant the motion to strike Defendant's fourth, fifteenth and twenty-second affirmative defenses. (Def. Obj. 1.) The Court considers the

challenged defenses in sequential order, discussing both their legal sufficiency and any prejudice that might inure to Plaintiff as a result of allowing discovery into the defenses.

### i. Legal sufficiency

#### 1. Fourth affirmative defense

Defendant objects to Judge Pollak's recommendation that the Court strike Defendant's fourth affirmative defense. Defendant's fourth affirmative defense reads: "Plaintiff's claims are barred because it failed to pursue conciliation in good faith as to Bilal Abdullah, Muhammad Farhan and any Claimant subsequently identified." (Ans. 6.)

Judge Pollak recommended that the Court strike the defense because, in light of the "narrow" judicial review applicable to the EEOC's pre-suit conciliation efforts, "the EEOC . . . satisfied its pre-suit obligation to conciliate." (R&R 21–22.) Defendant argues that the fourth affirmative defense "cannot be stricken in light of the recent decision in *Equal Employment Opportunity Commission v. Bass Pro Outdoor World, LLC* [('*Bass Pro 2017*'), No. 11-CV-03425, 2017 U.S. Dist. Lexis 495 (S.D. Tex. filed Jan. 3, 2017)]." (Def. Obj. 6.)

Defendant argues that the court in *Bass Pro 2017*, a case "procedurally on all fours with our case," properly held that the EEOC had not satisfied its pre-suit conciliation obligation as to claimants that the EEOC identified as having been affected by Bass Pro's unlawful practices *after* the EEOC issued its pre-suit letter of determination. (*Id.*) Defendant principally objects to the inclusion of claimants who were not disclosed to Defendant during the conciliation process. (*Id*. at 7.) In reliance on *Bass Pro 2017*, Defendant argues that the Court should preserve the fourth affirmative defense because the EEOC could not have conciliated the claims of yet-unidentified applicants and employees against whom Defendant allegedly discriminated after the EEOC issued its Letter of Determination. (*Id*. at 7.) Defendant argues that *Bass Pro 2017*

precludes Plaintiff from litigating claims on behalf of those individuals before engaging in conciliation of their claims. (*Id.*) Plaintiff argues that *Bass Pro 2017* is not binding on the Court and that, in any event, there is "no merit" to Defendant's argument "that the EEOC is required to identify and negotiate on behalf of *every individual claimant* during the conciliation process, and that any harmed party who is not named during conciliation discussions is precluded from participating" in the suit if conciliation fails. (Pl. Obj. 7.)

Title VII "imposes a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit." *Mach Mining, LLC v. EEOC*, 575 U.S. ---, ---, 135 S. Ct. 1645, 1651 (Apr. 29, 2015). The statute provides that the EEOC "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* (alteration in original) (quoting 42 U.S.C. § 2000e-5(b)). In *Mach Mining*, the Supreme Court limited the scope of judicial review of the EEOC's conciliation activities: the Court held that "to meet the statutory condition," the EEOC "must tell the employer about the claim — essentially, what practice has harmed which person or class — and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance." *Id.* at 1652. "If the Commission does not take those specified actions, it has not satisfied Title VII's requirement to attempt conciliation." *Id.* The "appropriate scope of [judicial] review enforces the statute's requirements as just described — in brief, that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice — but goes no further." *Id.* at 1653.

The Court emphasized that the conciliation process outlined in Title VII differs from the standard set out in the National Labor Relations Act, which imposes a duty of good-faith negotiation. *Id.* The Court held that the EEOC need only "endeavor" to conciliate a claim, that

such an attempt "need not involve any specific steps or measures," and that the "EEOC alone decides whether in the end to make an agreement or resort to litigation." *Id.* at 1654. In sum, "Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief," and courts are not permitted to "assess any of those choices." *Id.* at 1654–55.

In a 2014 decision, *EEOC v. Bass Pro Outdoor World, LLC*, the district court granted in part and denied in part defendant Bass Pro Outdoor World's motion for summary judgment in an EEOC case that alleged violations of Title VII for pervasive discrimination against minority applicants and employees. *See EEOC v. Bass Pro Outdoor World, LLC* ("*Bass Pro 2014*"), 1 F. Supp. 3d 647, 650 (S.D. Tex. 2014). The court explained that the EEOC had an obligation to conciliate "in good faith," and outlined a three-part process that the Fifth Circuit applied to determine whether the EEOC had satisfied its obligation.[5] *Id.* at 653. The court also separated the EEOC's efforts to conciliate its claims under sections 706 and 707[6] of Title VII and held that, as to the EEOC's section 706 claim on behalf of a class of plaintiffs, the EEOC was not required to make an individual attempt to conciliate on behalf of each potential claimant or to disclose the names of every member of the potential class. *Id.* at 664. However, the court held that the EEOC was required to share with the defendant "the outline of the class and . . . sufficient

---

[5] *Bass Pro 2014* was decided prior to the Supreme Court's decision in *Mach Mining*, which further circumscribed judicial review of the EEOC's conciliation process. *See EEOC v. Bass Pro Outdoor World, LLC*, 1 F. Supp. 3d 647, 650 (S.D. Tex. 2014); *Mach Mining, LLC v. EEOC*, 575 U.S. ---, ---, 135 S. Ct. 1645, 1651 (Apr. 29, 2015).

[6] Section 706 of Title VII permits the EEOC to sue a private employer on behalf of persons aggrieved by the employer's unlawful employment practice. 42 U.S.C. § 2000e–5(f)(1); *see also Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359–60 (1977) (explaining the Commission's authority under section 706). Section 707 permits the EEOC or a class of plaintiffs to sue a private employer for an unlawful "pattern or practice" of discriminatory treatment. 42 U.S.C. § 2000e–6.

information to understand the basis of the allegations and fully engage in the conciliation process," and in that case, the EEOC had not provided Bass Pro with sufficient information to meaningfully participate in conciliating the section 706 claims. *Id.* at 665 (citation omitted). In addition, the *Bass Pro 2014* court granted Bass Pro's motion to dismiss from the suit all individuals who applied to work at the company after the EEOC issued its Letter of Determination, "because the Commission could not possibly have learned about these individuals during its investigation and could not possibly have conciliated their claims." *Id.* at 672. Although the court acknowledged that the decision "may seem a bit formalistic" because "these individuals whose claims are now dismissed are barely distinguishable from others whose names the Commission did not share, or have to share, with Bass Pro," it nevertheless found that the Commission should have shared information that would have helped Bass Pro to identify section 706 class-members, and "no piece of information" could have alerted Bass Pro "to the existence of class-members who had not even yet applied for employment." *Id.* The *Bass Pro 2014* court reached its conclusion in reliance on "the proposition that 'the EEOC can bring an enforcement action only with regard to unlawful conduct that was discovered and disclosed in the pre-litigation process.'" *Id.* at 672 (quoting *EEOC v. Original Honeybaked Ham Co. of Ga., Inc.*, 918 F. Supp. 2d 1171, 1179 (D. Colo. 2013)).

In *Bass Pro 2017*, the court declined to reconsider its March 4, 2014 ruling, noting, as it did in *Bass Pro 2014*, that "because the [post-letter of determination] applicants by definition applied after the investigation was completed, 'the Commission could not possibly have learned about these individuals during its investigation and could not possibly have conciliated their claims.'" *Bass Pro 2017*, 2017 U.S. Dist. Lexis 495 at *4 (quoting *Bass Pro 2014*, 1 F. Supp. 3d at 672).

The Court agrees with the holdings of *Bass Pro 2014* and *Bass Pro 2017* that the EEOC can bring an enforcement action only with regard to unlawful conduct that was discovered and disclosed in the pre-litigation process. In addition, the Court agrees with the implicit holding that pre-trial discovery of class members is not a substitute for pre-litigation investigation, notice and conciliation. *See Bass Pro 2017*, 2017 U.S. Dist. Lexis 495 at *4 (dismissing from the case individuals whose claims the EEOC could not have investigated or conciliated). The EEOC must disclose to an employer before litigation the claims that subsequently are raised in an enforcement action. However, there is a difference between pre-litigation disclosure of alleged unlawful conduct and pre-litigation disclosure of the specific identities and number of aggrieved persons. "For meaningful conciliation to occur, the EEOC must make the employer aware of the basis of its charges against it. Disclosure of the alleged unlawful conduct is essential." *Honeybaked Ham Co.*, 918 F. Supp. 2d at 1180. Neither the Supreme Court nor the Second Circuit has suggested, as Defendant argues, that the EEOC possesses any further obligation to conciliate on behalf of each individual claimant in a class. Nor does Defendant cite to any case law that imposes and supports such a requirement.

To the contrary, cases decided after *Mach Mining* suggest that the EEOC is not precluded from identifying new claimants within the scope of the claims that were investigated, disclosed and conciliated.[7] *See Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1200 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 623 (Jan. 9, 2017) ("The Supreme Court did not articulate any further requirement of individual conciliation prior to bringing a lawsuit on behalf of a class of individuals. Accordingly, we will not impose any additional pre-suit conciliation requirement.");

---

[7] As Judge Pollak notes, even before *Mach Mining*, the majority of circuit courts "held that the EEOC is not required to prove that it made individual attempts to conciliate on behalf of each potential claimant in a class action." (R&R 19 (collecting cases).)

*EEOC v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 403 (E.D.N.Y. 2016) (holding that "the EEOC was not precluded from identifying new claimants (whose claims were effectively identical to the claims of the pre-existing claimants) after filing this action"); *cf. EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 675–76 (8th Cir. 2012) (finding that the EEOC did not fulfill its investigative obligation because it "did not investigate the specific allegations of *any* of the 67 allegedly aggrieved persons . . . until *after* the Complaint was filed"); *see generally EEOC v. Sterling Jewelers, Inc.*, 801 F.3d 96, 100 (2d Cir. 2015) (relying on *Mach Mining* to circumscribe judicial review of the EEOC's investigation procedure and finding that, where the EEOC "interviewed at least one [c]harging [p]arty," performed a statistical analysis and "requested and obtained numerous documents relating to the charges," it had satisfied its Title VII obligation to investigate).

Here, the EEOC met its obligation to conciliate, at least insofar as the Court is permitted to examine that obligation. While Defendant is correct that *Mach Mining* "does not prevent [Defendant] from asserting a failure to conciliate where the EEOC wholly failed to exercise its duty to conciliate," (Def. Opp'n to Mot. to Strike ("Def. Opp'n") 18, Docket Entry No. 43), Defendant submitted numerous redacted letters between the parties as part of their conciliation efforts between June of 2012 and August of 2014, (*see* Pl. Letter. dated Aug. 13, 2014, annexed to Lario Cert. as Ex. 44), and does not dispute that the EEOC attempted to conciliate the charges, (*see* Ans. ¶ 8). The parties' communications included seventeen letters over a two-year period and an "in-person meeting . . . to discuss conciliation and settlement opportunities." (Lario Cert. ¶¶ 34–37, 39–41.) As Judge Pollak correctly concluded, these efforts satisfy *Mach Mining*'s requirement that the EEOC "try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory

practice." *Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1656; (*see* R&R 22 ("[S]ince UPS does not dispute that the EEOC engaged UPS in the process of conciliation and that the EEOC exchanged multiple communications with UPS and met with UPS to discuss a potential resolution before bringing suit, the EEOC has satisfied its pre-suit obligation to conciliate.")).

Furthermore, the EEOC appears to have "attempt[ed] to conciliate on behalf of a class of individuals prior to bringing suit." *See Geo Grp.*, 816 F.3d at 1200–01; *see Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1655–56 (holding that the EEOC must provide notice to the employer that describes "what the employer has done and which employees (or what class of employees) have suffered as a result"). The EEOC's Letter of Determination stated the scope of the charges:

> religious discrimination against employees in and applicants to customer contact positions, and other management and office positions, whose religious beliefs, observances or practices are in conflict with [UPS'] Uniform and Personal Appearance Guidelines who have been denied reasonable religious accommodations or otherwise adversely affected by [UPS'] application of its Uniform and Personal Appearance Guidelines.

(Letter of Determination at 1.) The Letter of Determination also identified as the class "applicants or employees who were Muslim, Rastafarian, Native American, fundamentalist Christian, Sikh, Orthodox Jew, Buddhist, and others." (*Id.* at 3.) Thus, the EEOC made clear in its Letter of Determination that it was seeking relief on behalf of a nationwide class of employees and applicants who would, "in the future," be adversely affected by Defendant's policies. Accordingly, because it appears to a certainty that Plaintiff "would succeed despite any state of the facts which could be proved in support of the defense," the Court finds the fourth affirmative defense legally insufficient. *See Coach, Inc.*, 756 F. Supp. 2d at 425 (quoting *Salcer*, 744 F.2d at 939).

### 2. Fifth affirmative defense

Plaintiff objects to Judge Pollak's recommendation that the Court deny Plaintiff's motion

to strike Defendant's fifth affirmative defense.  Defendant's fifth affirmative defenses states:

"The Complaint is barred in whole or in part by the doctrine of waiver and/or estoppel."

(Ans. 7.)

Judge Pollak found that, notwithstanding the absence of facts supporting such a defense,

"it is impossible to state definitively at this time that there are no set of facts that could be proven

that would provide a viable defense under either theory of waiver or estoppel."  (R&R 28.)

Judge Pollak accordingly recommended that the Court deny Plaintiff's motion to strike the fifth

affirmative defense, "subject to renewal if UPS is unable to provide notice as to what the basis

for these affirmative defenses might be."  (*Id.*)  In objecting to Judge Pollak's recommendation,

Plaintiff argues that "[r]egardless of the factual sufficiency (or insufficiency) of the asserted

defenses, the affirmative defenses of waiver and estoppel fail in this case *as a matter of law*"

because they "cannot defeat an action brought by the government in furtherance of the public

interest."  (Pl. Obj. 7.)  Plaintiff argues that although both Defendant and Judge Pollak cite to a

1995 district court case for the proposition that the viability of waiver and estoppel defenses

against the government "is an open and disputed question of law" that should not be resolved on

a motion to strike, the Second Circuit has since reiterated that where the government undertakes

to enforce a public right or protect the public interest, equitable defenses cannot apply.  (*Id.* at 8

(first citing *Resolution Trust Corp. v. Gregor*, 94-CV-2578, 1995 WL 931093, at *4 (E.D.N.Y.

Oct. 14, 1995); and then citing *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 268 (2d

Cir. 2005)).)

Waiver is defined as "the intentional relinquishment of a known right."  *State of New

York v. United Parcel Serv., Inc.*, 160 F. Supp. 3d 629, 645 (S.D.N.Y. 2016) (citing *United States

v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982)); *see also Jordan v. Can You Imagine, Inc.*, 485 F.

Supp. 2d 493, 499 (S.D.N.Y. 2007) ("Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable.  Waiver may be established by affirmative conduct or by a failure to act that evinces the intent to abandon the right." (citations omitted)).  Equitable estoppel applies "when a party, by its conduct, including language, acts or silence, knowingly makes a representation or conceals material facts which it intends or expects will be acted upon by the other party."  *United Parcel Serv., Inc.*, 160 F. Supp. 3d at 646 (citing *United States v. Wynshaw*, 697 F.2d 85, 87 (2d Cir. 1983)).

In *Resolution Trust Corporation v. Gregor*, the case on which Defendant and Judge Pollak relied, the district court reviewed the applicability of equitable defenses to claims brought by the government and found the question "unsettled."  1995 WL 931093, at *3.  The court noted that in addressing estoppel and waiver, "the justices decide on a case-by-case basis to bar estoppel claim[s] on narrower, fact-specific grounds, an approach that other courts have followed."  *Id.* (citing *RePass*, 688 F.2d at 158 ("Equitable estoppel as a defense is not available against the United States except in the most serious of circumstances, not present here.")); *see also Reich v. Valley Nat. Bank of Az.*, 837 F. Supp. 1259, 1303 (S.D.N.Y. 1993) ("While the Supreme Court has not yet announced an across-the-board no estoppel rule in suits against the Government, the defense of estoppel has always been found to be unavailing against the government.").  As to the "related doctrine of laches," the court found that although "the Supreme Court held decades ago that the defense could never succeed against a government entity," the Supreme Court had, more recently, "indicated in *dicta* that some exceptions to that rule might exist."  *Id.*

Since *Resolution Trust Corporation* was decided, the Second Circuit has spoken to the issue of equitable defenses in suits by government agencies.  In *Cayuga Indian Nation of N.Y. v.*

*Pataki*, the Second Circuit "recognize[d] that the United States has traditionally not been subject to the defense of laches" or to other, similar doctrines. *Cayuga Indian Nation*, 413 F.3d at 278 (citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940)). The Second Circuit found that Supreme Court dicta, however, supported the availability of laches in at least some government suits: (1) in an "egregious instance[] of laches"; (2) in "suits against the government in which . . . there is no statute of limitations"; or (3) when the government is enforcing "what are in the nature of private rights." *Id.* at 279 (quoting *United States v. Admin. Enters., Inc.*, 46 F.3d 670, 672–73 (7th Cir. 1995)). In *Cayuga Indian Nation*, the government sought to bring suit based on events that occurred two hundred years prior, there was no statute of limitations until relatively recently, and the United States intervened in the case to vindicate the interest of a private entity. *Id.* The court concluded that "whatever the precise contours of the exception to the rule against subjecting the United States to a laches defense, this case falls within the heartland of the exception." *Id.* District courts in this Circuit are similarly unsure of the "precise contours" of the exception. As a recent district court decision summarized:

> Once again, given the body of case law involving government plaintiffs and these equitable defenses, a basic principle emerges: "Courts have routinely held that, when acting in a capacity to enforce public rights in the public interest and discharge statutory responsibilities, government entities are not subject to all equitable defenses — such as laches or estoppel — that could ordinarily be invoked against a private actor." On the other hand, no case endorses wholesale "the sweeping proposition that there is no set of facts pursuant to which an equitable defense might be asserted against a governmental entity," especially where the government's role in an action more closely resembles that of a private litigant.

*City of New York v. Fedex Ground Package Sys., Inc.*, 314 F.R.D. 348, 357 (S.D.N.Y. 2016) (quoting *United Parcel Serv.*, 160 F. Supp. 3d at 647–48); *see id.* (concluding that equitable defenses were "not cognizable as a matter of law" where the state and city were acting in the public interest or in a law enforcement capacity but that it was an "open question" whether the

government was subject to the same defenses in its contract claim); *cf. S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 327 (S.D.N.Y. 1999) ("To be successful [in an estoppel defense], the defendant must prove that the government's conduct was egregious and that the resulting prejudice to the defendant was of a constitutional magnitude." (citing *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1998), *aff'd sub nom.*, *S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989))).

Because the law as to the applicability of equitable defenses to government agencies is not as settled as Plaintiff suggests, and "even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike," *Salcer*, 744 F.2d at 939, the Court adopts Judge Pollak's recommendation and declines to strike the fifth affirmative defense.

### 3. Sixth affirmative defense

Plaintiff objects to Judge Pollak's recommendation that the Court deny Plaintiff's motion to strike Defendant's sixth affirmative defense. Defendant's sixth affirmative defense reads: "The Complaint is barred in whole or in part by the doctrine of laches and unclean hands." (Ans. 7.)

As with the fifth affirmative defense, Judge Pollak recommended that the Court deny Plaintiff's motion to strike "because there is no *per se* rule against assertion of the defense of laches and unclean hands against the EEOC . . . and disputed issues remain as to UPS's claims of prejudice due to the delay engendered by the EEOC's investigation." Plaintiff argues that "[e]ven if the doctrine of laches could be asserted against the EEOC in a Title VII enforcement action, this Court already considered and rejected the affirmative defense of laches in ruling on UPS's motion to dismiss the complaint." (Pl. Obj. 12.)

Laches "is an equitable defense that bars a plaintiff's equitable claim where he is guilty

of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *United Parcel Serv., Inc.*, 160 F. Supp. 3d at 646 (quoting *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998)). A party asserting laches must establish that: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Allens Creek/Corbetts Glen Preserv. Grp., Inc. v. West*, 2 F. App'x 162, 164 (2d Cir. 2001) (quoting *Ikelionwu*, 150 F.3d at 237). The defense of "unclean hands" is premised on the maxim that a party "who has acted fraudulently, or who by deceit or any unfair means has gained an advantage" is not entitled to obtain equitable relief." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004).

As explained in connection with the fifth affirmative defense, there is some ambiguity around the circumstances in which laches or unclean hands might be applied to a government entity acting in the public interest. *See Utah Power & Light Co.*, 243 U.S. at 409 ("As a general rule laches or neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest."); *Cayuga Indian Nation*, 413 F.3d at 279 n.8 ("[L]aches is not available against the federal government when it undertakes to enforce a public right or protect the public interest."); *but see United Parcel Serv., Inc.*, 160 F. Supp. 3d at 640 (noting that the Supreme Court's more recent decisions "refuse to shut the door completely to the invocation of laches or estoppel . . . in government suits").

Notwithstanding this general ambiguity, section 2000e-5 "imposes no limitation upon the power of the EEOC to file suit in a federal court." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 365–66 (1977). More generally, although "Congress did express concern for the need of time limitations in the fair operation of [Title VII], . . . that concern was directed entirely to the initial filing of a charge with the EEOC and prompt notification thereafter to the alleged

violator." *Id.* at 371. "The fact that the only statute of limitations discussions in Congress were directed to the period preceding the filing of an initial charge is wholly consistent with the Act's overall enforcement structure," and accordingly, the Supreme Court has found that the only period of delay that may warrant equitable relief is "inordinate EEOC delay in filing the action after exhausting its conciliation efforts." *Id.* at 373.

Defendant raised the defense of laches and unclean hands before this Court in its motion to dismiss. (*See* Def. Mot. to Dismiss Mem. 23.) In particular, Defendant argued that it was prejudiced by Plaintiff's unreasonable delay between filing Abdullah's, Farhan's and the Commissioner's charges and commencing the instant lawsuit. (*Id.*) At oral argument on July 19, 2016, the Court rejected Defendant's argument and denied the motion to dismiss based on laches because the EEOC's delay was not *per se* unreasonable and because Defendant cited no case law in support of its position. Where, as here, the basis for an affirmative defense was previously held insufficient, the defense "should be stricken to eliminate delay and unnecessary expense from litigating the invalid claim." *Fed. Deposit Ins. Corp. v. Eckert Seamans Cherin & Mellott*, 754 F. Supp. 22, 23 (E.D.N.Y. 1990); *see also Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171, 2006 WL 544394, at *3 (E.D.N.Y. Mar. 6, 2006) ("An affirmative defense previously rejected as a basis for granting a defendant's motion to dismiss may already have effectively been determined to be 'insufficient as a matter of law'; such a ruling may therefore establish sufficient reason to grant a later motion to strike the affirmative defense.").

Although the Court reviews a motion to dismiss under a different standard than it reviews a motion to strike, the Court's denial of Defendant's motion to dismiss for laches effectively determined that the defense was legally insufficient for purposes of this motion, as well. In order to determine whether the EEOC "inexcusably delayed in taking action," *see Allens*

*Creek/Corbetts*, 2 F. App'x at 164, the Court would have to review much of the substance of Plaintiff's investigation and conciliation efforts to determine whether any delay was "inexcusable" and to which party it was attributable; as discussed above, this is beyond the Court's authority pursuant to Supreme Court and Second Circuit law, as *Mach Mining* and *Sterling Jewelers* foreclose such a substantive inquiry of the EEOC's pre-suit efforts. *See Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1655 (noting that judicial review of the substance of conciliation "would *necessitate* the disclosure and use of [confidential conciliation efforts] in a later Title VII suit"); *Sterling Jewelers*, 801 F.3d at 101 ("[L]imited review respects the expansive discretion that Title VII gives to the EEOC . . . while still ensuring that the Commission follows the law."). Having already determined that Defendant's defense of laches is not, as a matter of law, meritorious, the Court now declines to "assess [the] choices" of the EEOC in its investigation and conciliation efforts. *See Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1654–55 ("Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief," and courts are not permitted to "assess any of those choices."). The Court finds the sixth affirmative defense legally insufficient.

### 4. Fifteenth affirmative defense

Defendant objects to Judge Pollak's recommendation that the court strike Defendant's fifteenth affirmative defense. Defendant's fifteenth affirmative defense states: "Plaintiff's claims are barred to the extent it failed to exhaust the administrative procedures that are prerequisites to the claims asserted. Plaintiff's claims are also barred to the extent that any Claimant filed an

EEOC charge and received a no probable cause finding and/or a settlement."[8]  (Ans. 8.)

Judge Pollak recommended that the Court strike this defense "[b]ased on the limited nature of judicial review of the Commission's pre-suit obligations, . . . UPS's failure to plead its Fifteenth Affirmative Defense with particularity, and the EEOC's argument that it would be prejudiced by the time and expense of litigating the defense."  (R&R 39.)

Defendant argues that the Court should preserve the fifteenth affirmative defense "because there may be claimants whose claims fall outside the scope of the charges, the investigation, and the conciliation efforts."  (Def. Obj. 7.)  But, as discussed in connection with the fourth affirmative defense, *Mach Mining* narrowly circumscribes judicial review of the EEOC's conciliation efforts and *Sterling Jewelers* extends that holding to the EEOC's investigation efforts.  *See Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1653 (holding that the "appropriate scope of [judicial] review enforces the statute's requirements as just described — in brief, that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice — but goes no further"); *Sterling Jewelers, Inc.*, 801 F.3d at 100 (relying on *Mach Mining* to circumscribe judicial review of the EEOC's investigation procedure and finding that, where the EEOC "interviewed at least one [c]harging [p]arty," performed a statistical analysis and "requested and obtained numerous documents relating to the charges," it had satisfied its Title VII obligation to investigate).

In addition, Rule 9(c) of the Federal Rules of Civil Procedure requires that "when denying that a condition precedent has occurred or been performed, a party must do so with

---

[8]  Defendant makes no argument with respect to its defense that the claims are barred "to the extent that any Claimant filed an EEOC charge and received a no probable cause finding and/or a settlement."  (Ans. 8.)  The Court accordingly adopts Judge Pollak's recommendation that this portion of the fifteenth affirmative defense be dismissed.  (*See* R&R 38 n.11.)

particularity." Fed. R. Civ. P. 9(c). In this district, courts have stricken affirmative defenses that baldly assert that the EEOC has failed to satisfy its pre-suit requirements without providing additional factual allegations. *See Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *4 (striking affirmative defenses for lack of legal sufficiency where the defendant "neither plead [sic] nor proffered any facts indicating that the EEOC has failed to comply with any of the administrative prerequisites to commencement of an enforcement suit"). Here, Defendant has failed to articulate which, if any, administrative procedures Plaintiff failed to complete before bringing suit. To the extent that Defendant's fifteenth affirmative defense challenges the EEOC's alleged failure to conciliate, the defense is stricken as duplicative of the fourth affirmative defense. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any *redundant*, immaterial, impertinent or scandalous matter." (emphasis added)). To the extent that Defendant's fifteenth affirmative defense challenges the EEOC's investigation process, neither party disputes that the EEOC did, in fact, undertake an investigation, and *Sterling Jewelers* circumscribes the Court's review to that consideration alone. *See Sterling Jewelers*, 801 F.3d at 100. Accordingly, the Court finds the fifteenth affirmative defense legally insufficient.

### 5. Twenty-second affirmative defense

Defendant objects to Judge Pollak's recommendation that the Court strike Defendant's twenty-second affirmative defense. The twenty-second affirmative defense states:

> Plaintiff may not recover any damages or pursue any claim on behalf of any Claimant based on conduct outside the scope of the underlying Commissioner's charge of discrimination, and [P]laintiff may not recover any damages or pursue any claim on behalf of Bilal Abdullah or Muhammad Farhan based on conduct outside the scope of their respective EEOC charges.

(Ans. 9.)

Judge Pollak recommended that the Court grant Plaintiff's motion to strike the twenty-second affirmative defense because "the EEOC is permitted to add both claimants and charges to a complaint after suit has been filed based on an investigation conducted during the process of litigation." (R&R 41.) Defendant argues that because "the EEOC has yet to name claimants in this litigation," Defendant should be permitted to "move to dismiss any potential claims raised by the EEOC in this litigation if they were not within the scope of the underlying charge." (Def. Obj. 17.)

"Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 331 (1980). Several courts have acknowledged that "[t]he EEOC charge incites the investigation, but if the investigation turns up additional violations the Commission can add them to the suit." *EEOC v. Caterpillar, Inc.*, 409 F.3d 831, 832–33 (7th Cir. 2005); *see also United Health Progs. of Am., Inc.*, 213 F. Supp. at 403 ("Courts have permitted the EEOC to add new claimants identified during discovery even when the EEOC is asserting claims under Section 706 of Title VII rather than exclusively under Section 707, which permits 'pattern or practice' actions." (collecting cases)). Indeed, even the district court decision on which Defendant relies elsewhere in its objections to the R&R found that "the EEOC is not obligated to provide the identities of all § 706 class members." *Bass Pro 2014*, 1 F. Supp. 3d at 664. This doctrine applies not only to illegal practices that the EEOC unearths during its investigation, but also to additional victims who are uncovered during the investigation. *EEOC v. Thomas Dodge Corp. of N.Y.*, 524 F. Supp. 2d 227, 236 (E.D.N.Y. 2007); *see, e.g.*, *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101 (6th Cir. 1984) ("[T]he EEOC has merely broadened the scope of the [individual's] charge by alleging that [the defendant] has engaged in sexual discrimination

against all of its female employees in its assembly division.  Consequently, the only difference between the EEOC's later charge and initial charge is the number of persons victimized by [the defendant's] allegedly discriminatory practices.").

However, although the EEOC "is not confined to claims typified by those of the charging party," its authority "is not unbridled."  *Thomas Dodge Corp.*, 524 F. Supp. 2d at 236.  "The additional practices must have been ascertained in the course of a reasonable investigation of the charging party's complaint and the EEOC must have provided adequate notice to the defendant-employer of the nature of such charges to allow resolution of the charges through conciliation."  *Id.* (collecting cases); *see also EEOC v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976) ("In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such discrimination was included in the reasonable cause determination of the EEOC . . . .").  It is not clear to the Court to what extent Defendant anticipates that the unnamed claimants will have claims not reasonably arising from the Letter of Determination.  To the extent that the claims of unnamed claimants arise from discrimination not "stated in the charge itself" or "developed in the course of a reasonable investigation of that charge" — or, stated differently, to the extent that the unnamed claimants do not fall broadly within the class defined in the Letter of Determination — the EEOC may not retroactively include such claimants in the suit.  *See Gen. Elec. Co.*, 532 F.2d at 366.  Because, at this stage, it does not "appear[] to a certainty that [P]laintiffs would succeed despite any state of the facts which could be proved in support of the defense," the Court declines to adopt Judge Pollak's recommendation only as to the yet-unnamed claimants.  *See Coach, Inc.*, 756 F. Supp. 2d at 425 (quoting *Salcer*, 744 F.2d at 939).

### 6.   Twenty-third affirmative defense

Plaintiff objects to Judge Pollak's recommendation that the Court deny its motion to strike Defendant's twenty-third affirmative defense. The twenty-third affirmative defense states: "Plaintiff's claims are barred because it failed to make prompt determinations." (Ans. 9.)

In recommending the denial of Plaintiff's motion to strike the twenty-third affirmative defense, Judge Pollak reasoned that, based on the Court's prior ruling of July 19, 2016, there are "unresolved questions of material fact over whether EEOC failed to make a prompt determination as required by Section 2000e-5, whether the EEOC unreasonably delayed in making its determination, and when exactly the Commission was 'authorized to take action with respect to the charge.'" (R&R 43.) Plaintiff objects to this interpretation of the Court's prior ruling, arguing that the Court concluded that "[n]either Title VII, nor the courts[,] require the EEOC to complete its investigation within a particular period of time." (Pl. Obj. 15.) In addition, Plaintiff argues that permitting Defendant to proceed with the twenty-third affirmative defense "would require this Court to review the nature and extent of the EEOC's investigation — matters committed to the Commission's discretion and beyond the scope of judicial review." (*Id.* at 16 (citing *Sterling Jewelers*, 801 F.3d at 101).)

Under section 2000e-5, the EEOC must "make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e-5. However, courts have read the 120-day time period as a recommendation rather than a requirement. *See Occidental Life Ins. Co.*, 432 U.S. at 369 n.23 ("Under s[ection] 706(b) the EEOC may then take *at least* 120 days to investigate the charge and make its determination of reasonable cause.") (emphasis added); *Tuft v. McDonnell Douglas Corp.*, 517 F.2d 1301, 1307 (8th Cir. 1975), *cert denied*, 423 U.S. 1052 ("Congress

recommended, but did not mandate, that the EEOC make a determination on reasonable cause within 120 days").

Based on the correspondence Defendant submitted in support of its earlier motion to dismiss, the Court found that Defendant had not met its burden of proving that Plaintiff had failed to make a prompt determination pursuant to section 2000e-5.  Defendant's exhibits demonstrate that the parties were negotiating the scope of discovery in the Abdullah charge until November of 2010.  (Def. Letter dated Nov, 11, 2010, annexed to Lario Cert. as Ex. 25.)  While the Farhan charge was filed in April of 2007, Farhan's allegation that UPS engaged in a "pattern or a practice of refusing to accommodate the religious observances, practices and beliefs of its employees," (Farhan Charge, Ex. 2), suggests that the EEOC's discovery after both the Abdullah and Farhan charges — and until and after the Commissioner's Charge — was part of an ongoing investigation over which the Supreme Court and the circuit courts have given the EEOC great latitude.  *See Sterling Jewelers*, 801 F.3d at 101 ("The sole question for judicial review is whether the EEOC conducted an investigation . . . . [C]ourts may not review the *sufficiency* of an investigation — only whether an investigation occurred."); *CRST Van Expedited*, 679 F.3d at 674 ("[T]he nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that that agency."); *see also Mach Mining*, 575 U.S. at ---, 135 S. Ct. at 1653 (holding, in the context of the EEOC's obligation to conciliate, that judicial review of pre-suit requirements is "narrow" and serves to "enforce[ ] the statute's requirements . . . that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice — but goes no further").

According to Plaintiff, the Buffalo Office took eighteen months to complete its investigation of the three charges and issue a letter of determination.  (Fox-Solomon Decl. ¶ 40.)

During that time, an EEOC investigator mailed approximately 200 letters to applicants identified in UPS' production as having been denied employment because of a conflict with the Appearance Guidelines, and sent an additional fifty letters to UPS employees who had sought religious accommodations. (*Id.* ¶ 41.) After two rounds of following up on undeliverable letters and identifying individuals by other means, the EEOC investigator collected and analyzed responses, made dozens of telephone calls and conducted approximately thirty interviews. (*Id.* ¶¶ 42–43.) On March 14, 2012, UPS wrote to the EEOC requesting a final determination. (Def. Letter dated Mar. 14, 2012.) In that letter, UPS noted that "[t]his is a case where the EEOC has conducted a thorough and extensive investigation," and "[t]he time has come for the charge process to end." (*Id.*) On June 29, 2012, the EEOC issued its Letter of Determination. (EEOC Determination Letter.)

Based on this information, the Court denied Defendant's motion to dismiss for failure to render a prompt determination because Defendant had provided no authority to support its argument that Plaintiff's delay was entirely attributable to Plaintiff or unreasonable as a matter of law. (Tr. of Oral Arg. dated July 19, 2016 ("Tr.") 44.) In analyzing Plaintiff's motion to strike and the parties' corresponding papers, the Court maintains the view that Defendant has provided no legal support for its argument that Plaintiff failed to make a prompt determination in contravention of its statutory obligation. To the extent that further discovery may bear on the promptness of a determination — and the Court is hard-pressed to see how it would — Defendant would be requesting a level of judicial review that *Sterling Jewelers* clearly forecloses. *See Sterling Jewelers*, 801 F.3d at 103 ("For a court to second-guess the choices made by the EEOC in conducting an investigation 'is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far.'" (quoting *Mach*

*Mining*, 575 U.S. at ---, 135 S. Ct. at 1654–55)).

Because Title VII does not require the EEOC to complete its investigation and issue a determination within a particular period and because any further inquiry into the sufficiency of the EEOC's investigation would be inconsistent with Supreme Court and Second Circuit precedent, the Court declines to adopt Judge Pollak's recommendation and finds the twenty-third affirmative defense legally insufficient.[9]

### ii. Prejudice

If a court determines that a defense is legally insufficient, the court next determines whether inclusion of the defense would prejudice the plaintiff. *Coach, Inc.*, 756 F. Supp. 2d at 425. "Increased time and expense of trial may constitute sufficient prejudice to warrant striking an affirmative defense." *Id.* (*citing Estee Lauder*, 189 F.R.D. at 271); *see also Specialty Minerals*, 395 F. Supp. 2d at 111–12 (finding that plaintiffs would be prejudiced by the inclusion of an unclean-hands defense that would require additional discovery and expand the length and scope of trial). Moreover, inclusion of a defense that will fail as a matter of law prejudices the plaintiff by needlessly increasing the duration and expense of the litigation. *Coach, Inc.*, 756 F. Supp. 2d at 426; *Estee Lauder*, 189 F.R.D. at 272 (explaining that when "the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim").

Here, the Court finds the fourth, sixth, fifteenth and twenty-third affirmative defenses legally insufficient, and finds the twenty-second affirmative defense legally insufficient except as

---

[9] In addition, as both Judge Pollak and Plaintiff note, the twenty-third affirmative defense is "virtually identical" to the sixth affirmative defense of laches. (*See* R&R 42 n.12; Pl. Obj. 17 n.4.) The twenty-third affirmative defense should thus be stricken as redundant as well as legally insufficient. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

to the unnamed claimants.  Plaintiff argues that failing to strike the defenses would prejudice it by: "(1) focusing the litigation on the EEOC's pre-suit conduct rather than the merits of the alleged unlawful employment practices; and (2) 'needlessly lengthening and complicating the discovery process and trial of this matter.'"  (Pl. Obj. 17 (quoting *EEOC v. Bay Ridge Toyota*, 327 F. Supp. 2d 167, 174 (E.D.N.Y. 2004)).)  Defendant argues that Plaintiff "made no showing whatsoever of prejudice other than saying so," and that "[t]he burden is on the moving party to provide substantive facts to demonstrate prejudice."  (Def. Obj. 3 (citing *Calabrese*, 2006 WL 544394, at *4).)

In *Calabrese*, the court found that the plaintiffs had not demonstrated that they would suffer any prejudice if the court allowed the defenses to proceed; instead, the plaintiffs stated only that they "will be prejudiced by increased trial time and expense."  *Calabrese*, 2006 WL 544394, at *4.  The court found that there was "no reasonable prospect that striking the [defense] will alleviate the burdens" associated with the plaintiffs' existing task of "proving an essential factual component of their claim."  *Id.*  The plaintiffs' claims and the challenged defense were "inevitably intertwined."  *Id.*

Here, Defendant has indicated that it would pursue discovery relating to "when the charges were filed, what claims were at issue, how they were processed (including EEOC case logs and call records), [and] the scope and findings of the investigation."  (Def. Opp'n 12.)  Unlike in *Calabrese*, none of the above would overlap with the factual underpinnings of Plaintiff's claims — instead, the challenged claims relate entirely to Plaintiff's alleged noncompliance with pre-litigation procedure, which has no bearing on the substantive Title VII charges in this case.  *See Sterling Jewelers*, 801 F.3d at 101–02 (explaining that judicial review of the sufficiency of an EEOC investigation "would expend scarce resources and would delay

and divert EEOC enforcement actions from furthering the purpose behind Title VII —
eliminating discrimination in the workplace"); *see also Keco Indus.*, 748 F.2d at 1110 ("[T]he
EEOC's reasonable cause determination does not adjudicate rights and liabilities; it merely
places the defendant on notice of the charges against [it].  If the charge is not meritorious,
procedures are available to secure relief i.e. a de novo trial in the district court.").

      The Court therefore credits Plaintiff's reasonable assertion that "[a]llowing such
discovery would significantly prolong this litigation, requiring the EEOC to spend time and
resources defending its investigation and conciliation efforts rather than litigating the merits of
the action."  (Pl. Reply 14.)  Plaintiff has adequately explained the prejudice to itself and to the
public should Defendant be permitted to pursue discovery of defenses without any legal basis.
*See Coach, Inc.*, 756 F. Supp. 2d at 426; *Estee Lauder*, 189 F.R.D. at 272 (explaining that when
"the defense is insufficient as a matter of law, the defense should be stricken to eliminate the
delay and unnecessary expense from litigating the invalid claim").

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Pollak's recommendations as to the fourth, fifth, twelfth, fifteenth and twenty-second affirmative defenses, except as to the unnamed claimants in the twenty-second affirmative defense, and declines to adopt Judge Pollak's recommendations as to the sixth and twenty-third affirmative defenses. The Court grants Plaintiff's motion to strike Defendant's fourth, sixth, fifteenth, and twenty-third affirmative defenses and grants Plaintiff's motion to strike Defendant's twenty-second affirmative defense except as to the unnamed claimants. The Court denies Plaintiff's motion to strike the fifth and twelfth affirmative defenses.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: June 29, 2017
      Brooklyn, New York