1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                      :
EQUAL EMPLOYMENT                      : 15-CV-04141 (MKB)
OPPORTUNITY COMMISSION,               :
                                      :
         Plaintiff,                   :
                                      : United States Courthouse
                                      : Brooklyn, New York
    -against-                         :
                                      :
                                      : Tuesday, July 19, 2016
UNITED PARCEL SERVICE, INC.,          : 10:30 a.m.
                                      :
         Defendant.                   :
                                      :
- - - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
BEFORE THE HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S :


For the Plaintiff:      EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                        BUFFALO LOCAL OFFICE
                          6 Fountain Plaza
                          Suite 350
                          Buffalo, New York 14202
                        BY: ELIZABETH FOX-SOLOMON, ESQ.

For the Defendant:      EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                        NEW YORK DISTRICT OFFICE
                          33 Whitehall Street
                          5th Floor
                          New York, New York 10004
                        BY: NORA E. CURTIN, ESQ.

For the Defendant:      GREENBERG TRAURIG
                          500 Campus Drive
                          Suite 400
                          Florham Park, New Jersey 07932
                        BY: WENDY JOHNSON LARIO, ESQ.

Court Reporter:  VICTORIA A. TORRES BUTLER, CRR
225 Cadman Plaza East / Brooklyn, NY 11201
VButlerRPR@aol.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

Proceedings                                          2

1              (In open court.)

2              (Judge MARGO K. BRODIE is in the courtroom.)

3              THE COURTROOM DEPUTY:  All rise.

4              The parties on EEOC versus UPS.

5              This is civil cause for oral argument in Docket

6    Number 15-CV-4141, Equal Employment Opportunity Commission

7    versus UPS, Inc.

8              Counsel, please state your name for the record.

9              MS. FOX-SOLOMON:  Elizabeth Fox-Solomon for U.S.

10   Equal Employment Opportunity Commission.

11             THE COURT:  Good morning, Counsel.

12             MS. FOX-SOLOMON:  Good morning.

13             MS. CURTIN:  Nora Curtin, also for the Equal

14   Employment Opportunity Commission.

15             THE COURT:  Good morning, Counsel.

16             MS. LARIO:  Good morning, Your Honor.

17             Wendy Johnson Lario, Greenberg Traurig, on behalf of

18   defendant UPS.

19             THE COURT:  Good morning, Counsel.

20             Please be seated and the parties may remain seated.

21             We are here today for oral argument on the EEOC's

22   motion.

23             As I understand the papers that were submitted by

24   the parties, it is either a motion to dismiss or a summary

25   judgment motion, depending on how the Court construes it in

1    view of the number of exhibits that were submitted with the

2    motion.  And the basis for the motion is the affirmative

3    defenses raised by UPS, which is the failure of the EEOC to

4    comply with their Title VII obligation to make a prompt

5    determination of charges, the second argument that the claims

6    are barred by laches, and the third, the alternative and third

7    argument, is that the statute of limitation of 300 days prior

8    to the filing applies.

9              Is that right?  Counsel?

10             MS. LARIO:  That's correct, Your Honor.

11             THE COURT:  Okay.  So, we are going to start first

12   with whether this is a motion to dismiss or a motion for

13   summary judgment.

14             I have 57 exhibits that were submitted by you,

15   Counsel, on behalf of your client and there are a number of

16   documents.  I group them, basically, into five categories.

17             Charges brought by plaintiff and the charging

18   parties.  Discovery correspondence between the parties.  Court

19   filings and documents.  Conciliation correspondence between

20   the parties.  And the various certifications and declarations

21   of the various UPS employees.

22             So, while some of these documents I can consider on

23   a motion to dismiss, I do not see how and why I can consider,

24   for example, the certificates and declarations of the various

25   UPS employees, and a lot of other matters.

Proceedings                                    4

1              So, I am inclined to treat this as a motion for

2    summary judgment, rather than a motion to dismiss.  But

3    Counsel, I will let both parties tell me whether or not --

4    although, I do not believe there is any objection to this in

5    view of the fact that you alternatively moved for summary

6    judgment, and the EEOC did not really object but, in fact,

7    filed documents outside the pleadings.

8              So I assume the parties okay with having this matter

9    treated as summary judgment motion.

10             MS. LARIO:  Your Honor, you're correct.  We do not

11   object to this being treated as a motion for summary judgment.

12   However, just to address briefly those documents that you

13   identified as you believe being outside the scope of a motion

14   to dismiss, particularly, the certifications of certain UPS

15   employees.  Those were known to the EEOC and in the EEOC's

16   possession for many years.  This was not a surprise.  These

17   are facts and averments that were clearly known and understood

18   by them, and probably even incorporating in the context of

19   some of the allegations that they made or the considerations

20   that they made in making the pleading here.

21             So, while we do not object to this being a motion

22   for summary judgment, we do believe that still, those

23   documents, may still allow us to argue a motion to dismiss.

24             THE COURT:  So, I disagree with that argument.

25             In reviewing the case law on what can be admitted

Proceedings                                    5

1   and why, you made the arguments generally.  You did not really

2   specify which documents you thought were integrated and which

3   could be incorporated by reference.

4           So, I believe a number of documents here are

5   incorporated by reference and could be considered on a motion

6   to dismiss, including all of the charging documents and the

7   commissioner's letter with regard to its determination, and

8   notice after conciliation fails.

9           With regard to documents integrated, some things can

10  be considered there, also, but I believe the fact that EEOC

11  had these documents in its possession, in and of itself, the

12  case law is telling me is not sufficient.  They must have

13  relied on them in some way in drafting the complaint, and a

14  lot of these documents they did not.  A lot of these documents

15  actually go to the laches argument, and so I believe they

16  cannot be properly considered on a motion to dismiss.

17          So, I am going to convert it to a motion for summary

18  judgment, and hearing no objection from EEOC -- you are

19  shaking your heads no, Counsel?

20          MS. FOX-SOLOMON:  Yes, no objection from EEOC.

21          THE COURT:  Okay.

22          So, I am going to move on to the first argument with

23  regard to why the complaint here should be dismissed.

24          Give me one second.

25          (Pause in the proceedings.)

Proceedings                                    6

1          THE COURT:  Okay.  So turning to the affirmative

2   defenses, the first is the unreasonable delay.

3          Counsel, do you want to be heard further?

4          MS. LARIO:  Your Honor, briefly.  I guess on the

5   failure to make a prompt determination and required by

6   Title VII.

7          The EEOC is required to make a prompt determination

8   on reasonable cause and as so far as practicable, not later

9   than 120 days.

10         Now, the EEOC's argument is that 120 days is not a

11  requirement, and we don't disagree with them.  But there is a

12  requirement that the EEOC does make a determination on

13  reasonable cause as promptly as possible.  And while I believe

14  these two arguments that we have is failure to make a

15  determination promptly, as well as the latches argument, are

16  really predicated on the same issues and timelines and events

17  here.

18         Let me just say from the Abdullah charge, which was

19  filed on January 13th, 2006, until the determination on

20  June 29th, 2012, over six-and-a-half years expired, and under

21  no circumstances has the EEOC explained, or even attempted to

22  qualify or justify that time period with respect to the

23  Abdullah charge.

24         With respect to Mr. Farhan's charge on April 27th,

25  2007, and a determination was made on June 29th, 2012.  Five

Proceedings                                                    7

1    years and two months expired, and again, the EEOC has not

2    tried to explain or clarify or justify that time period.

3              THE COURT:  Can I ask you a question, Counsel, with

4    regard to that.

5              Why is it that the fact that in March of 2006 -- so,

6    shortly after receiving the first charge by Mr. Abdullah --

7    requested information from UPS for a nationwide review.  Why

8    does that not indicate that, in fact -- and ultimately that is

9    what they did, they filed one charge -- that the agency was

10   looking at the nationwide practice to try to determine whether

11   or not they should bring a case on a nationwide basis, instead

12   of simply determining the individual charges.

13             MS. LARIO:  The EEOC did serve us with broad-based

14   discovery in the Abdullah charge.  We propounded discovery in

15   connection with Mr. Abdullah and the Rochester, New York,

16   facility as which he worked.

17             There were later objections where they clarified

18   that they wanted nationwide discovery, and at that point, we

19   objected and, as you know, when we objected and a subpoena was

20   ultimately filed, and an order was sought by the EEOC, the

21   Western District of New York agreed with us; that the scope of

22   the EEOC's request was overly broad.  And while that was

23   certainly later reversed, for a period of about go

24   two-and-a-half years there was an understanding here that this

25   scope of that discovery was unreasonable.

Proceedings                                      8

1      And frankly, that discovery had nothing to do with

2  Mr. Abdullah, who was an applicant for a seasonal

3  driver/helper position in one facility.

4      THE COURT:  Understood.  But as the agency charged

5  with investigating these matters, in view of the fact it

6  received that complaint, and then a subsequent complaint in

7  2007, which did allege pattern and practice, why is it

8  unreasonable for them to look at what UPS was doing across the

9  country, and ultimately render one determination instead of

10  individually adjudicating each of those claims?  Because that

11  is the argument you are making; that they should not have done

12  that, they should have dealt with that charge separately, and

13  they should have dealt with Farhan's charge separately, and

14  delaying that and making it one determination, ultimately, is

15  prejudicial to your client and that goes to the other

16  argument.

17      But in the context you are saying that is what was

18  unreasonable, that they should not have done that.  They

19  should have just dealt with them through individual charges.

20      MS. LARIO:  Yes, Your Honor, because both Abdullah

21  and Farhan brought individual claims.  There was no pattern or

22  practice allegation.  There was no allegation involving any

23  other employee, other than themselves.

24      These are individualized claims that the EEOC was

25  investigating.  They weren't charges that were brought by the

VB        OCR        CRR

Proceedings                                    9

1    EEOC.

2              THE COURT:  I understand that.

3              MS. LARIO:  And there is no allegation of pattern

4    and practice, no notice to UPS.

5              THE COURT:  But my question to you is, if they have

6    gotten two complaints, or even if it was only one, and they

7    decided, as you know they did because they requested

8    nationwide discovery, to do a nationwide review of UPS's

9    practice, because of the policy, there is a policy in place

10   and it was the policy that was at issue here.

11             And so, why is it that it is unreasonable for them

12   to take those steps and to combine all of these

13   investigations?

14             MS. LARIO:  Because I think what Title VII requires

15   the EEOC to do, is to make a prompt determination on an

16   individual's charge.  And the EEOC had full knowledge of

17   everything they needed to know to make a determination about

18   Mr. Abdullah by May 5th, 2006, when we propounded all of the

19   discovery related to him.  They could have made a

20   determination on that.

21             And for Mr. Farhan, they have never propounded

22   specific requests for information, yet we provided a

23   declaration in December of 2007, and they had everything that

24   they needed from us with respect to Mr. Farhan's charge.

25             THE COURT:  No, I get what you are saying, that they

1   could have.  The question is, why is it within their

2   discretion to decide not to, and to delay making that decision

3   in view of the their broader investigation, and in view of the

4   commissioner's charge that was filed in 2008?

5          MS. LARIO:  And I guess if we were talking about a

6   year or 18 months, that would be one thing; but six-and-a-half

7   years, and five years and two months?  That's a long time.

8          And as you know, this goes to our laches argument,

9   not one of the witnesses that we have with respect to those

10  charges is employed by UPS any longer.

11         THE COURT:  Well, I mean --

12         MS. LARIO:  It's a long period of time.

13         THE COURT:  But Counsel, you will admit that a big

14  portion of that time was spent in litigating whether or not

15  you should be required to provide nationwide discovery.  You

16  opposed it, and so that was litigation not just before the

17  District Court, but the Second Circuit, and further litigation

18  when it came back.

19         So, while you say that, which is true, if I exclude

20  all of that time, aren't we really talking about two years,

21  maybe two-and-a-half years?

22         MS. LARIO:  No, we're not.  Not with respect to

23  Abdullah and Farhan.

24         With respect to the commissioner's charge we are,

25  but not with respect to Abdullah and Farhan.

Proceedings                                    11

1          THE COURT:  But the requests for information that

2   you opposed, the subpoena, was with regard to Abdullah's

3   charge.

4          MS. LARIO:  And --

5          THE COURT:  And that is what was litigated.  So

6   there is no question that the delay, even as to that, had to

7   do with the litigation.

8          MS. LARIO:  Certainly, there was some gap in time

9   due to the litigation on that; but employers have the right to

10  object to the scope of discovery before the EEOC, and we

11  rightfully took our steps or took the right steps to object.

12         THE COURT:  And I am not suggesting otherwise; but

13  all I am saying is, why should that time period be held

14  against the EEOC?  You have the right to object, and you used

15  that right, but then why should I then look at that time

16  period and hold it against the fact that the -- well, count it

17  words, the time period during which the EEOC did not render a,

18  decision, as you said, in order for it to be reasonable.

19         MS. LARIO:  Again, Your Honor, I don't think that

20  that time period is relevant to either of the charges for the

21  individuals.

22         THE COURT:  But I do not know how --

23         MS. LARIO:  Investigation stemmed from those

24  charges.

25         THE COURT:  But I do not see how you can make that

Proceedings                                        12

1    argument in view of the fact that the requests for

2    information, and the subsequent subpoena which you objected to

3    and opposed, was a result of the charge that was filed by

4    Abdullah.

5              Regardless of whether you think it was with merit

6    for them to seek nationwide information, based on that one

7    charge, that is what they did.  That is what was litigated.

8    And so, that time period has to be attributed to that charge,

9    also.

10             MS. LARIO:  Your Honor, I guess we respectfully

11   disagree, only because we believe that once the EEOC has all

12   of the information that it needs -- and it was clearly going

13   outside of Abdullah to look for other claimants, to look for

14   other instances of policy violations.

15             THE COURT:  But that is its right as an agency.

16             MS. LARIO:  Agreed.  Agreed.

17             But it had the ability to make a determination on

18   Abdullah as of May of 2006, and again, what the statute

19   requires is it should not be -- the EEOC should not be going

20   on an investigation expedition, when it has the ability and

21   the right to make a prompt determination for an individual who

22   is brought a charge before it.  And there, I think, is where

23   they went wrong.

24             THE COURT:  Okay.  Thank you, Counsel.

25             EEOC?

```
                        Proceedings                    13
```

1              MS. FOX-SOLOMON:  Yes, Your Honor.

2         With respect to the 100-day requirement for

3    completing an investigation, I'm glad that Counsel has

4    conceded that that is not, in fact, a statutory requirement.

5    Title VII requires only that the investigation be done as

6    promptly as possible, and so far as practical between within

7    120 days.

8              And here, even with respect to Abdullah's charge,

9    the first charge we received, the EEOC could not have

10   completed its investigation within that period of time, given

11   the timeline in which we received information from UPS.  So

12   that indicates that it is not practicable in this case.

13             With respect to the concept of whether we should

14   have treated the Abdullah charge and the Farhan charge as

15   individual investigations, rather than a systemic

16   investigation, the end result would have been the same.  Had

17   we issued a determination with respect to Abdullah, and then

18   done the same thing with respect to Farhan, we would have

19   sought nationwide policy changes because the policy that we

20   found problematic in both of those cases is nationwide and

21   applies to all UPS facilities.

22             So, we would be back here having three separate

23   investigations, three separate conciliations, and potentially,

24   three separate lawsuits litigating the same policy.

25             THE COURT:  But I guess what Counsel is arguing is

Proceedings                                          14

1   that it was unreasonable for you to delay as to those

2   individual charges.  So, even though you may have sought the

3   same result, and we may be in court litigating them, that you

4   would have been litigating them sooner rather than later,

5   because there was no reason why you could not decide the

6   Abdullah and the Farhan charges properly while -- and Counsel

7   is suggesting shortly after those charges were filed, so that

8   you would not be here all these years later dealing with the

9   broader issue, and those two individual charges.

10          MS. FOX-SOLOMON:  Sure.  And as, Your Honor

11  mentioned earlier, it is within the EEOC's discretion to

12  determine how they are going to investigate a charge, and in

13  this case the Supreme Court has said time and time again, an

14  individual charge does not limit the scope of an EEOC

15  investigation.  It simply provides a jurisdictional

16  springboard for the EEOC to investigate any unlawful

17  employment practices that it uncovers during the investigation

18  of an individual charge.

19          So, here, based upon our investigation of the first

20  charge, the Abdullah charge, we determined that there was an

21  unlawful policy here, and that's why we sought the nationwide

22  information, ultimately the nationwide relief.

23          With respect to Mr. Farhan, his charge, contrary to

24  what Counsel represented, his charge does include pattern or

25  practice language.  His charge specifically says, this is

VB        OCR        CRR

Proceedings                                    15

1    Exhibit 2 to defense counsel's affidavit.  I also believe that

2    respondent has a pattern or practice of refusing to

3    accommodate the religious observances, practices, and beliefs

4    of its employees.

5              So, as of April 2007, we had an individual who was

6    also charging pattern or practice allegations, and we had an

7    obligation to investigate that.

8              UPS did not even provide a position statement with

9    respect to Mr. Farhan's charge.  So when they say we didn't

10   request any information with respect to his charge, they

11   didn't even provide the first step, which is, we ask an

12   employer for a position statement.

13             They ignored the Farhan charge because they were

14   litigating the issue of the subpoena, which is both

15   Mr. Abdullah and Mr. Farhan.  It was not restricted to

16   Mr. Abdullah.

17             THE COURT:  Okay.

18             MS. LARIO:  So, Your Honor, I think what the -- what

19   I am hearing here, too, is the EEOC has a lot of discretion;

20   right?  We all know that, and they have a right to file a

21   commissioner's charge, which they also did here.

22             If they were actually going after the policy as

23   early as Mr. Abdullah's charge, and prior to Mr. Farhan's

24   charge, they had the right and the ability to bring an EEOC

25   commissioner's charge, and to make a prompt determination with

1   respect to the charges of these two individuals so that we

2   were not battling this issue of nationwide discovery on the

3   scope of the policy, and instead, focusing on and dealing with

4   the witnesses and the issues for Mr. Abdullah in New York and

5   Mr. Farhan in Texas.

6           THE COURT:  But wouldn't these witnesses be relevant

7   also to any commissioner's charge or a nationwide charge that

8   ultimately the EEOC would bring?

9           MS. LARIO:  Frankly, I don't even know.  I can tell

10  you that the discovery that we produced ultimately in this

11  case had approximately 300 applicants, and approximately 50

12  employees who requested accommodations.  I do not believe that

13  there were any other employees who went through the

14  accommodation process that were in the Rochester facility.

15          So, I don't know that there are overlaps, or that

16  these witnesses would have been relevant, but it certainly is

17  a potential that they would have been relevant to the broader

18  case.

19          THE COURT:  Okay.

20          Why don't you make your laches argument.

21          MS. LARIO:  Thank you, Your Honor.

22          So, in the laches argument, we have to problems to

23  meet.  We understand that this is an affirmative defense.

24  It's our obligation to demonstrate that the EEOC engaged in

25  unreasonable delay, and that there was associated prejudice

Proceedings                                       17

1   based upon their conduct.

2          So, with respect to the unreasonable delay here,

3   what we tried to do is help the Court by giving the Court kind

4   of a timeline here.  But if I may, just look back at some of

5   the -- if we break it down into the investigation, and I

6   think, Your Honor, I want to make one point clear.

7          When we're making this laches argument, we are not

8   including the time that the parties were engaged in the

9   dispute over the scope of the discovery.  We are really

10  focusing on the actual delays that were associated with the

11  EEOC's conduct.

12         THE COURT:  So, you are excluding 2006 through 2009?

13         MS. LARIO:  We are excluding and, Your Honor, I

14  would say that we are excluding from the request for

15  information for nationwide discovery, which was issued to us

16  on March 2nd, 2007, in the Abdullah case.

17         THE COURT:  Well, no.  But the one that you fought

18  was the request dating back to the 3/22/2006 request as to --

19         MS. LARIO:  The one we fought is over the

20  subpoena --

21         THE COURT:  Go ahead.

22         MS. LARIO:  What we were actually fighting over was

23  the EEOC subpoena, which wasn't issued until July of 2007.

24         THE COURT:  Right.  But the only reason that was

25  issued, was because of the fact that they issued the request

Proceedings                              18

1   on March 22nd of 2006, did not get any response or did not get

2   the proper response, and then, ultimately, issued the

3   subpoena.

4           That is my understanding.  Where am I wrong,

5   Counsel?

6           MS. LARIO:  Your Honor, you're right.  They issued a

7   request for information in the Abdullah charge on March 22nd,

8   2006.  We responded on May 5th of 2006.  And it wasn't until

9   the EEOC sent us a letter on August 18th, 2006, saying that

10  they were asking, clarifying that they were asking for

11  nationwide discovery.  At that point we objected and go from

12  there.

13          So, I guess, actually, if we want to go from that

14  date, the August 18th, 2006, that was the first time the EEOC

15  clarified for us that they were actually looking for

16  nationwide discovery.

17          THE COURT:  But their argument is that that was

18  clear in the request for information.

19          MS. LARIO:  I guess, Your Honor, whether we're

20  talking about August or March, yes.  I guess we're talking

21  about a number of months here.

22          But I think it was not clear to us whether or not it

23  was nationwide discovery.  In many of these cases, we respond

24  based upon the individual charge as well as the -- and

25  remember, Mr. Abdullah was an individual charge.  There was no

Proceedings                                    19

1    information about pattern and practice.

2            So, not only did we respond about Mr. Abdullah, we

3    gave them information about the facility.  We expected that

4    was sufficient as it is in most cases.  So, it really wasn't

5    until the EEOC notified us in August of 2006, that we had any

6    notice that they were seeking nationwide discovery here, or

7    that this was broader than Mr. Abdullah.

8            THE COURT:  Okay.  So, even if I were to accept

9    that, then that would start from August of 2006, and that

10   would have to continue at least through the Second Circuit

11   opinion.

12           MS. LARIO:  I would agree with you, Your Honor.  So,

13   we can take out that time period, and we are not arguing that

14   time period here.

15           THE COURT:  So, you are arguing as of 2010.

16           MS. LARIO:  No, as of November 19, 2009, was the

17   Second Circuit reversal and remand.

18           THE COURT:  But didn't you object again in

19   February of 2010?

20           MS. LARIO:  We did not, Your Honor.  We waited for

21   the Western District on the remand order.  That's all we were

22   doing, Your Honor.

23           There was a reversal and remand to the Western

24   District.  Western District didn't issue an order on remand

25   until March of 2010.

```
                        Proceedings                    20
```

1          THE COURT:  Why did you need that?

2          MS. LARIO:  Your Honor, because the reversal and

3     remand gave the Court -- gave their instructions to the

4     Western District to follow through.

5          THE COURT:  Right.  But it was clear at that point

6     that you had to provide the information, is what I am saying.

7          MS. LARIO:  I guess, again, it was not clear,

8     necessarily, what the Western District was going to do, based

9     upon the Second Circuit decision.

10         THE COURT:  Was there any question that they would

11    disagree with the Second Circuit finding and not ask that you

12    provide this information?

13         MS. LARIO:  Your Honor, it wasn't clear based upon

14    the prior order what the Western District would do, and we had

15    the right to wait for their order on remand, as any litigant

16    would.

17         THE COURT:  And again, I am not disagreeing with

18    you.  But then when we are talking about whether or not delay

19    is reasonable or unreasonable, this becomes relevant as to

20    whether a certain time period gets counted against EEOC.

21         And so, if the argument is the Second Circuit

22    reversed the District Court in November of 2009, but either

23    because the District Court did not take any action until

24    February, or whenever it issued the order that you needed to

25    comply with, I cannot hold that against the EEOC as being

1   unreasonable in their delay in acting here.

2           So, that is what I am trying to get at and that is

3   why I am suggesting that that puts us into 2010, as to the

4   time period from which we need to start counting the time

5   attributable to the EEOC with regard to any delay.

6           MS. LARIO:  So, if we went from August of 2006, to

7   March of 2010, that's approximately three-and-a-half years, if

8   my math is correct, and you should check it, because my math

9   is not he have very good.

10          THE COURT:  I think we are all in the same boat on

11  that, Counsel.

12          MS. LARIO:  All right.  So let's put that aside.

13          THE COURT:  Right.

14          MS. LARIO:  All right.  And again, I think the Court

15  is obligated to look at the Farhan charge, the Abdullah charge

16  and the commissioner's charge independently.  Because these

17  were individual charges that were filed, separate parties that

18  were filing them, and while Mr. Abdullah and Mr. Farhan have

19  now been incorporated into the commissioner's charge, they

20  clearly filed their independent charges at the earlier time

21  periods.

22          So, with respect to Mr. Abdullah, if we take out the

23  three-and-a-half years, we get from the date of his charge

24  through the deliberations to this lawsuit, eight years and

25  three months, okay?

```
                         Proceedings                    22
```

1      And if we deduct the three-and-a-half years from

2  that.

3      THE COURT:  Okay.  I am not doing the math that way.

4  I am starting with March of 2010, and moving from there, since

5  we have excluded everything else up until then.

6      MS. LARIO:  Well, we have to go back to his charge

7  date, right?  His charge date was January 13th of 2006.

8      THE COURT:  Right.  But then the issue with regard

9  to the request was two months later.  So, we are excluding

10  everything from March of 2006 through February of 2010.

11      MS. LARIO:  Correct.

12      THE COURT:  Okay.

13      MS. LARIO:  Yes.

14      THE COURT:  So, you want me to count the two months

15  in 2006.

16      MS. LARIO:  Yes.

17      THE COURT:  Okay.  Go ahead.  I am counting.

18      So, two months in 2006, and then we start with 2010.

19  And in 2010, you had March of 2010.  That was when the

20  district court judge granted the application; right?

21      MS. LARIO:  Yes.

22      THE COURT:  And then November of 2010, was when UPS

23  complied -- completed its production.

24      MS. LARIO:  Completed the production; correct.

25      THE COURT:  So, what time period am I attributing to

Proceedings                                    23

1    EEOC in 2010?

2            MS. LARIO:  So, again, Your Honor, I thought that we

3    were including and not ascribing time period to the time that

4    we were litigating this issue; correct?  Because at that

5    point, again, while we had litigated that issue, there was

6    still no information -- no additional information that was

7    produced or requested with respect to Mr. Abdullah or

8    Mr. Farhan.

9            THE COURT:  Right.  So, the point being?  What is

10   your point here?

11           MS. LARIO:  Again, the point being, that this time

12   period should be included from the date that the Western

13   District orders the production, that should stop the clock on

14   the litigation of the issue relating to the discovery.

15           THE COURT:  Right.  I am in agreement with that.

16           MS. LARIO:  Okay.

17           THE COURT:  Okay.

18           MS. LARIO:  So, if we start the clock there.

19           THE COURT:  On March of 2010.

20           MS. LARIO:  Correct.

21           THE COURT:  Okay.

22           MS. LARIO:  And move forward to -- for from the

23   laches argument, we're really looking at going through to the

24   date of the lawsuit; right?

25           THE COURT:  Right.  But even within that time -- so,

Proceedings                                        24

1   between March and November, you agree that it was not until

2   November of 2010, that UPS provided all of the information.

3           MS. LARIO:  We provided all of the information on

4   all of the applicants, and all of the applicants who were

5   listed as refusing to abide by the appearance guidelines.

6           And just to be clear, that's all it says.  There is

7   a code that the UPS puts into the system when an individual

8   comes in, applies for the job, and says, I won't abide by your

9   appearance guidelines.  There is no indication whether it's

10  religion, whether they just didn't want to shave, whether they

11  had long hair and didn't want to cut it.  There is no

12  indication as to what that rationale is.

13          So, 300 individuals and their names, places and

14  dates of application were provided to UPS in April of 2010.

15          50 employee requests for accommodation were

16  provided, along with all the documentation for their requests

17  for accommodation, April of 2010.  The only thing that lapsed

18  was the issue of personal identifying information, and we

19  provided that in August of 2010, for the applicants, and in

20  November of 2010, for the 50 employees.

21          Nothing related to Abdullah, nothing related to

22  Farhan.

23          THE COURT:  So, your point is this time may not --

24  well.  Maybe I should not count it against the commissioner's

25  charge, but certainly as to the individuals.

Proceedings                              25

1          MS. LARIO:  Correct.

2          THE COURT:  Okay.

3          MS. LARIO:  And then we have the delay in getting

4   from the end of November -- let's take the November date,

5   November 2010, until the issuance of the determination in

6   June of 2012.

7              So, we have 19 months that passes by for the EEOC to

8   conduct an investigation, at least as to the broader policy

9   issues that they were looking into, 19 months.

10             And then we have from the period of the

11  conciliation, and I'd like to break this down for the Court.

12             The period of conciliation lasted 26 months from

13  June 29, 2012, the date of the determination and the request

14  for conciliation, through August 13, 2014, which was the

15  failure of conciliation.

16         THE COURT:  Right.

17         MS. LARIO:  If you look at all of the communications

18  there, there are four critical delays by the EEOC; 26-month

19  period and, Your Honor, these four periods account for 16 of

20  those months.  During the other times, the correspondence back

21  and forth between the parties was relatively regular.

22         THE COURT:  I went through -- I read the papers and

23  my math, my calculation, is that there was about a six to

24  seven-month period when there was no communication where your

25  offer was outstanding.

```
                    Proceedings                   26
```

1           MS. LARIO:  For where our offer was outstanding?

2           THE COURT:  Yes, with no response.

3           MS. LARIO:  Yes; correct.

4           THE COURT:  So, that is all I count, is six to seven

5    months within that conciliation period.

6           MS. LARIO:  You're right, Your Honor.

7           From July of 2012 to January of 2013 --

8           THE COURT:  Right.

9           MS. LARIO:  -- the EEOC failed to respond to our

10   offer.

11          There was another period in 2013, Your Honor, where

12   the EEOC delayed another three months.  We responded on

13   May 22nd, 2013, and the EEOC's next letter to us wasn't until

14   August 13 of 2013.  So, that's another three-month period

15   where we were waiting for the EEOC to respond.

16          And there's another five-month gap.  On

17   September 27, 2013, we sent more information and another offer

18   to the EEOC, and it wasn't until February 27, 2014, five

19   months later, that the EEOC responded.

20          And then there was another two-month gap between

21   April 4, 2014, and June 6, 2014, where we didn't hear from the

22   EEOC.

23          So, when we look at all three of those periods,

24   which were, again, no explanation for the delay, we didn't

25   understand what the delay, the EEOC still hasn't explained to

Proceedings                                              27

1   this Court the reasons for the delay --

2           THE COURT:  But Counsel, to me, when I read the

3   papers and when I looked at this, as a former investigator, I

4   understood that once material is produced to you, you then

5   have to investigate them.

6           So, I didn't appreciate the two or three months

7   response time to be an unreasonable amount of time, which is

8   why when I looked at the conciliation period, I did conclude

9   that that period of time between July of 2012, and January of

10  2013, when there was no communication, that that was a longer

11  period of time, and arguably, unreasonable.

12          But not a two, three-month response time between

13  communications.

14          MS. LARIO:  Then I would submit, Your Honor, that

15  the five-month time period was also equally long because at

16  this point in time, the parties had kind of, weren't really

17  providing that much more substantive information.  We were

18  well down the path of discussing our settlement decisions.

19          THE COURT:  I have no idea what is going on at that

20  point.

21          MS. LARIO:  Understood.

22          THE COURT:  So all I am doing is looking at the fact

23  that the parties are engaged in trying to resolve the issues,

24  and so there is back and forth, and obviously, they needed

25  time to review and consider whatever was being proposed.  It

Proceedings                               28

1   is not just the investigator who is conducting the review.  It

2   has to go up the chain.

3           I am assuming all of this, just based on common

4   knowledge and practice.

5           MS. LARIO:  I don't think that's fair.

6           THE COURT:  But Counsel, you cannot ask me to infer

7   that if a letter with whatever the offer is, is sent to EEOC,

8   that because EEOC does not reply within a month's time, that

9   is unreasonable.  I cannot draw that inference, knowing the

10  role of the EEOC, the structure of EEOC, the investigator who

11  is or whomever you are speaking to cannot make that decision

12  as to whether or not to accept your offer.

13          So certainly I have to build in some lag time.  I

14  cannot find that if they do not respond within a month's time

15  that that is unreasonable.  Based on what?

16          MS. LARIO:  But we are not asking you to do that.

17  We are asking you to look at a five and a six and a

18  three-month period to say that's unreasonable.

19          THE COURT:  And I said, six or seven months might be

20  unreasonable, but a month or two is not.

21          I am drawing a line here.  I cannot sit here and say

22  every month where there is no response, that that is

23  unreasonable.  And at the end of day, I am looking at the

24  totality of the circumstances, and I am going to put it all

25  together, like you are suggesting.

Proceedings                                29

1        We are fighting here over a month or two.  I do not

2   think ultimately it is going to make a difference whether it

3   is an additional two, three, four months, added to my

4   calculation, versus your calculation.

5        MS. LARIO:  I just -- I am troubled by the fact that

6   the EEOC has done nothing to show this Court what it did

7   during that time period; why it was too busy to respond in a

8   five or six-month time period; why it waited three months to

9   respond.  I don't disagree with you, Your Honor, that a 30-day

10  or a 45-day time period is needed, probably by both parties.

11       But we're not asking you to look at that.  We're

12  asking you to look at the larger gaps that we had in the

13  conciliation process, and to look at the EEOC's papers here,

14  and say, EEOC, why didn't you justify this?  Why didn't you

15  come to this Court with averments from the investigator to say

16  what she was doing, or why it took so long?  Because frankly,

17  it shouldn't have.

18       This was an unreasonable delay, at several points in

19  this process.  And it took too long to go through this

20  process; and so, respectfully, we believe that putting aside

21  the one month, the 45-day periods, the EEOC's delay during the

22  conciliation process totalled 16 months.

23       THE COURT:  Okay.

24       MS. LARIO:  So, if we include that delay in

25  conciliation, and then move on to the deliberations that it

VB        OCR        CRR

Proceedings                                30

1   took to file suit here, we know that it took 11 months until

2   July 15, 2015, for the EEOC to actually decide to file this

3   lawsuit.  And so again, when we look at that time period, the

4   EEOC's papers have not provided this Court with any

5   information that it can consider, other than the trial

6   attorney's averment, which is not acceptable for this Court to

7   consider in terms of what was done during that time period.

8           Similarly, during the investigation process and the

9   conciliation process, there is nothing before this Court that

10  it can consider to justify any of these time periods.

11          THE COURT:  Okay.

12          MS. LARIO:  So, as a result, when we're talking now,

13  and I think boiling down those issues, you have the 16-month

14  time period during conciliation process; the 11 months for the

15  determination to file suit; and then you have the 19-month

16  investigation for the commissioner's charge.

17          And, Your Honor, we still propose that you have to

18  look back even further for the Farhan and Abdullah charges

19  because, again, they had the right to file a commissioner's

20  charge, they didn't.  They were prosecuting or processing

21  individual charges with Mr. Abdullah and Mr. Farhan, and the

22  time period that they waited between the investigation -- I'm

23  sorry, between the filing of the charge and this lawsuit are

24  just outrageous.

25          We're talking about eight, nine years at a time --

Proceedings                                     31

1           THE COURT:  Okay.

2           MS. LARIO:  -- with those delays and putting aside

3    the issues of the discovery issues.

4           The discovery issues really boil down to the

5    commissioner's charge.

6           THE COURT:  Okay.

7           MS. LARIO:  I guess that's the first prong and the

8    second prong is prejudice.

9           THE COURT:  Sure.

10          MS. LARIO:  Here, Your Honor, with respect to the

11   prejudice to the parties -- to UPS.  We know that for Abdullah

12   and Farhan, our principal witnesses are gone.  The individual

13   that interviewed Mr. Abdullah left the company back in 2010.

14          Mr. Roberson, who was involved in the Farhan charge

15   and was the HR manager, who managed his accommodations and,

16   frankly, granted both of the requests for accommodation there,

17   has retired and long-since retired.

18          THE COURT:  But are they unavailable?

19          MS. LARIO:  So, Your Honor, we haven't had the

20   chance yet to look into those issues for purposes of this

21   motion, and I think that the issue of -- if this Court is

22   inclined not to grant this motion for laches, we still have,

23   again, nothing from the EEOC that justifies any of these

24   delays.  Any of the unreasonable delay.

25          And we would like a further opportunity to

Proceedings                                                    32

1   demonstrate the prejudice that we've had, because 40 percent

2   of the people that we identified --

3             THE COURT:  Counsel, it is your motion.  If you are

4   making the motion, you have to come to court with the

5   evidence; right?

6             MS. LARIO:  We have 40 percent of the people that

7   were listed as managers, or HR managers who processed either

8   the applicants or the employee requests for accommodation, are

9   no longer employed by the company; 40 percent.  This is

10  hundreds of people that we have had.

11            And so we have to investigate that.  We have to look

12  at the specific individuals that were at all of the

13  facilities, where all of these applicants applied; have to

14  look at all of the facilities where the individuals went

15  through the accommodation process.  It's a time-consuming

16  process, and for purposes this motion that was filed a long

17  time ago, we did not have the opportunity to do a full

18  investigation of those issues, but we can come to the Court

19  and tell you that, again, we have significant issues with

20  respect to witnesses who have left the company.

21            The other issue here is because we are dealing with

22  circumstance that is happened back in 2005, 2006, 2007, we're

23  talking about years that have lapsed.  And the courts have

24  taken notice, that when that happens, that passage of time,

25  memories are automatically going to lapse.  And when we're

Proceedings                                    33

1    talking about applicants who have applied for employment, or

2    individuals that have gone through an accommodation process,

3    that's a long period of time to remember particular details

4    about those events.

5              So, we certainly are faced, unfortunately, with

6    those prospects of faded memories.

7              THE COURT:  But is it not true, Counsel, that just

8    as a general matter, witnesses do not remember these things

9    anyway, and you are using documentation to refresh their

10   recollection?

11             MS. LARIO:  Your Honor, when the EEOC has delays

12   that are this significant, it is unfair and courts have

13   recognized it is unfair for companies to be placed in a

14   circumstance where we can't produce witnesses who have a

15   memory of what has happened.  And cases have been dismissed

16   where the EEOC has done just that on shorter time periods than

17   we have here.

18             THE COURT:  So, are you suggesting that if, in fact,

19   they had brought the individual charges, and this case was

20   litigated three or even four years, because it would have

21   taken at least that long to litigate as to the individuals,

22   that the memory that the witnesses would have been able to

23   recall better?

24             MS. LARIO:  Well, we know, for example, if in

25   November of 2010, if they had made determinations where they

Proceedings                                    34

1    had all of the information, if they made determinations on

2    Abdullah and Farhan, at that time, we would have had witnesses

3    available.  And we don't now, because they waited another six

4    years.

5              THE COURT:  But even if they had made the decision

6    then, Counsel, and brought a lawsuit in 2011, how far along

7    would we be?  How much further along than we are here?

8              MS. LARIO:  I'm not following.

9              THE COURT:  So, your argument is 2010, they had all

10   of the information, could have made a decision properly.

11   Assuming it took them two, three months to make a decision.  I

12   do not think you would argue that that would have been prompt.

13             Then that means filing a lawsuit in 2011, a motion

14   to dismiss, maybe getting past the motion to dismiss, and then

15   discovery.  You're talking 2012, 2013 for those very

16   witnesses.

17             MS. LARIO:  Yes.  Again, you're right, still a very

18   long time to have to wait and to recall the specifics of any

19   of these individual witnesses.

20             THE COURT:  Right.  And so my point is, the

21   difference between had they filed a decision then, and

22   litigation followed and now, we are talking two, three years.

23             I know, that is not my analysis for purposes of

24   reaching a decision here.  But that is the point that I am

25   trying to make, based on your argument.

```
                        Proceedings                        35
```

 1          Your argument is had they filed in 2010, then your

 2    witnesses would have been able to better testify about this,

 3    and I am just suggesting there is really not that much of a

 4    difference in the scheme of things.

 5          MS. LARIO:  You know, I can't speculate what the

 6    difference of five or six years would make.  But I can tell

 7    you, Judge, that there clearly would be more witnesses

 8    available to us that there are not now.  And that, for

 9    example, in the Abdullah case, we probably would have

10    witnesses that were still with the company at that time, who

11    could have at least tried to recall what happened at that

12    time.

13          So, I think we are in a much different situation and

14    we are far more prejudiced now than we would have been five

15    years ago, in both of those individual cases.  Absolutely.

16          THE COURT:  Okay.

17          EEOC?

18          MS. FOX-SOLOMON:  Yes, thanks, Your Honor.

19          I will start with the issue of delay.

20          THE COURT:  Why don't you pull the mic over to you,

21    Counsel.

22          MS. FOX-SOLOMON:  Okay.

23          Better?

24          THE COURT:  Yes.

25          MS. FOX-SOLOMON:  With respect to the issue of

Proceedings                                                36

1   delay, Your Honor, again, I don't want to go through all the

2   math calculations that we were engaging in, but it is clear

3   that the longest delay in this case, four-and-a-half years,

4   was due to defendant's resistance to the EEOC's investigation.

5          As of March 22nd, 2006, the EEOC asked for a

6   nationwide discovery with respect to applicants and employees

7   who were denied employment, or an accommodation, based upon a

8   religious objection to the appearance policy.

9          THE COURT:  So, based on UPS's argument, they are

10  saying that it was not clear you were asking for nationwide

11  information until you clarified that in August of 2006.

12         MS. FOX-SOLOMON:  So, I disagree, Your Honor.  If

13  you look at Exhibit 4 to Counsel's declaration, this is the

14  March 22nd, 2006, RFI, and we're talking here about requests

15  seven through nine, where we ask to identify all applicants or

16  all employees from January 1st, 2004, to present.

17         If you then contrast that with the next request,

18  that request is specific to UPS facilities in Rochester,

19  New York.  So, we made it very clear that we had some

20  questions with respect to the Rochester, New York, facility

21  and then we had other questions with respect to how this

22  policy was applied nationwide.

23         And then with respect to the clarification in

24  August 2006, we said your responses are incomplete.  You've

25  limited the information provided to the Rochester facility.

Proceedings                              37

1   Please provide a response that includes UPS facilities

2   nationwide.

3           So, I think that that's clearer, because we make it

4   specific, but I believe that our RFI in March of 2006, was

5   also clear that we were asking for some information on a

6   nationwide basis, and other information limited to the

7   facility at which Mr. Abdullah applied.

8           But even using August 2006, we still have from

9   August 2006, until November 2010, when we did not have all the

10  information that we sought.  And that is by far the longest

11  delay in this case.

12          I agree with Counsel that an employer has every

13  right to challenge a subpoena from the EEOC.  We have internal

14  procedures for doing that, which they followed, but if they

15  choose to go that course, they cannot then hold that period of

16  time against the EEOC for purposes of laches, because the

17  incentive there would be for all employers to obstruct

18  investigations because then they get the case thrown out at

19  the end point.  So, that is by far the longest delay in this

20  case and that should not be attributed to the EEOC.

21          Once we got this information in November 2010, there

22  was a 19-month investigation.  I do not think that is

23  unreasonable given the scope of this case.  There were

24  numerous witnesses that we had to contact.  As you might

25  imagine, much of the contact information was out of date

Proceedings                                          38

1    because we were dealing with people back to 2005, and it's now

2    2010.

3            THE COURT:  So, Counsel, one of the arguments UPS

4    makes is that there is no information before the Court that I

5    can rely on.  I read, I believe, it is your affidavit; is that

6    correct?

7            MS. FOX-SOLOMON:  Yes, that's correct.

8            THE COURT:  I read your affidavit to suggest that

9    you had some personal knowledge with regard to most of the

10   procedural matters in this case, but not as to all of them.

11           MS. FOX-SOLOMON:  So, Your Honor, I was hired by the

12   EEOC last July.  So in terms of personal knowledge of me

13   actually being at these proceedings, that attorney has no

14   retired from the agency.

15           THE COURT:  Well, my understanding of the personal

16   knowledge part is that you have reviewed files and records as

17   to what happened and when and how.

18           MS. FOX-SOLOMON:  That's correct.  That was what I

19   was going to say next, Your Honor.

20           Is that many cases have said that when a Government

21   attorney reviews official files held by the Government in the

22   course of their official duties, that satisfies the personal

23   knowledge requirement of 56E.  And so that is what was done in

24   this case.

25           And the investigator, or the district director, all

Proceedings                                    39

1   the various EEOC employees involved in this investigation,

2   they would have to do the same thing.  Our investigator does

3   not remember that she sent out 300 letters.  She would have to

4   do what I did, is go through and count the letters in the

5   file.  So, anybody is going to have to base their declaration

6   on a review of the file.

7             If that is not sufficient to this Court, then we

8   would ask for the opportunity to rectify that by submitting

9   declarations from all the underlying individuals.  But I

10  submit that that is not required under the case law of this

11  district, and I have some case cite, if you would like, and

12  generally, courts accept this information from governmental

13  agency attorneys, and that's what occurred here.

14            THE COURT:  Okay.  Please proceed, Counsel.

15            MS. LARIO:  Your Honor, I guess with respect to the

16  personal knowledge issue, there is not any specific record

17  that's identified in many of the other cases that are out

18  there that are reported.  We see where the EEOC has come

19  forward with and explained that there were case laws or other

20  official information that was specifically reviewed, and/or

21  provided to the Court, and here all we have is a shallow

22  affirmation from an attorney that has no personal knowledge

23  and no record of where that information is derived from.

24            So, again, in an important motion such as this, we

25  would have expected that there would be some justification

Proceedings                                      40

1   from the EEOC, based upon personal knowledge, or some kind of

2   reflection of a record that would show how many calls were

3   made; why the investigation took so long; why the conciliation

4   periods were delayed, which is not even explained in the

5   record; and why the deliberations to file suit took 11 months,

6   other than a reference to the EEOC guidebook or handbook.

7           So, here, again, there really are no specifics upon

8   which the EEOC has given this Court to evaluate the

9   justification for the delay.

10          THE COURT:  Okay.

11          Any other arguments from either side?

12          MS. FOX-SOLOMON:  Yes, Your Honor.  I just would

13  like to touch on prejudice, because I didn't have a chance to

14  do that yet.

15          The cases that Counsel relies on are clearly

16  distinguishable from this case.  The vast majority of those

17  cases involve situations where the employer was not on notice

18  promptly of a charge, and so records were destroyed, things

19  were lost.

20          Here, UPS was on notice of the charge promptly after

21  each of the individual charges were filed.  They knew it was a

22  nationwide case as of either March 2006, or August 2006,

23  depending on how, Your Honor, determines.  So, they had the

24  opportunity to preserve and collect records, as well as

25  testimony from key witnesses, and they did that here.

Proceedings                                    41

1          With respect to Mr. Abdullah's charge, we have, I

2     believe, five certifications from UPS employees

3     contemporaneous to the time that they made these decisions.

4          As for reasonable accommodations requests, UPS has a

5     reasonable accommodation tracking system that they mention in

6     their brief.  That is something, again, that there's

7     documentation to refresh people's recollections with.

8          So, unlike laches cases involving private litigants,

9     Title VII cases are different.  The reason we put employers on

10    notice promptly is exactly so that they can preserve and

11    gather this evidence, especially when you have a case of this

12    scope that is going to take some time.

13         And with respect to turnover of employees.  I would

14    argue that, first, that is not enough.  The case law says

15    turnover itself is not enough.  There has to be actual

16    unavailability of witnesses who would be crucial to UPS's

17    defense in this case, and I don't believe UPS has met its

18    burden there.

19         Also, given the volume of interviews, they're

20    talking about hundreds of thousands of interviews done each

21    year.  It is very unlikely that any individual hiring manager

22    would remember the specifics of an interview that might last

23    five minutes.  That would be the case whether we sued this

24    case in 2006, 2007, 2008.  That's an issue with the type of

25    case involved here.  It has nothing to do with EEOC delay and

Proceedings                              42

1   we also have to separate out, well, what portion of faded

2   memories is due to EEOC delay versus UPS delay.  I just don't

3   believe that UPS has met their burden to establish material,

4   specific prejudice in this case.

5            In short, Your Honor, dismissal on laches would

6   reward UPS for their delays in this case, for their

7   obstruction of the investigation, and it would encourage other

8   employers to follow this course.  So we argue that the just

9   result in this case is a denial of their motion for summary

10  judgment.

11           THE COURT:  Okay.

12           Counsel?

13           MS. LARIO:  Your Honor, just a brief comment.

14           There was no obstruction of any investigation here.

15  I think, as the EEOC has even acknowledged, we have the right

16  and we followed the procedures to properly object to the scope

17  of the discovery in the investigation period, and there were

18  reasonable arguments on both sides.  Ours was upheld for a

19  period of two years, until the Second Circuit reversed it.

20  So, there was no obstruction of the investigation here.

21           I have nothing further on the laches argument.

22           THE COURT:  Okay.  That leaves us only with the

23  statute of limitation argument.

24           So, as to the statute of limitation argument, I turn

25  to the EEOC on this.  I do not appreciate why the 300-day

1  limit does not apply to the EEOC here.  I do not get it.  Why

2  is it not applicable?

3          MS. FOX-SOLOMON:  Understood, Your Honor.  There is

4  conflicting case law on that issue, as I talk about in the

5  brief.

6          EEOC's position is that the language of Title VII

7  says that an aggrieved individual must file a charge with the

8  EEOC within 300 days of an unlawful employment practice.  That

9  is a statute of limitations with respect to a private

10  litigant.

11          THE COURT:  Right.  But that also means that a

12  private litigant could not possibly bring a suit for anything

13  prior to that.

14          MS. FOX-SOLOMON:  That's correct.

15          THE COURT:  And the EEOC is standing in the shoe of

16  that private litigant when they are suing on behalf of that

17  private litigant.  So how do you get to extend the time limits

18  simply because you are EEOC?

19          I do not see the equities.  I do not see any really

20  legal support for it.  It does not make sense to me that you

21  would be allowed to extend that time period, so that the

22  matter could -- so that you could really present evidence

23  prior to 300 days prior to the filing.

24          Sorry for all the priors, but you understand --

25          MS. FOX-SOLOMON:  I understand.

Proceedings                                          44

1          THE COURT:  -- what I am saying.

2          MS. FOX-SOLOMON:  So, our support for that position

3   would be the language in Occidental, in General Telephone, the

4   Supreme Court cases where they talk about, yes, EEOC stands in

5   the shoes of a litigant when they're arguing on behalf of that

6   person, but we are not simply a surrogate for a charging

7   party.  Charging parties can go and file their own suits, and

8   they do.

9          THE COURT:  And I agree with all of that, and I

10  agree that the Supreme Court has said that you have a lot more

11  flexibility, and that is why you are not bound by the 120-day

12  rules, and that is why a lot of these rules do not apply to

13  you.  That all makes sense.

14         But it does not make sense that where it is clear

15  that to start the action, something has to be filed; right?

16         MS. FOX-SOLOMON:  Sure.

17         THE COURT:  And normally, you bring a lawsuit.  You

18  can file as to action that happened.

19         The statute specifies, or at least and law, because

20  it is 180 days in some cases; right?

21         MS. FOX-SOLOMON:  Right.

22         THE COURT:  You can go back to 300 days.

23         Nothing about what the Supreme Court says in

24  Occidental or any of the other cases, to me, suggests that

25  there is a legitimate reason for why you should be able to

Proceedings                                          45

1   reach back even further than that.  It is not statutory

2   construction, not case law, nothing.  I just did not get it.

3           So, is there anything else that you are relying on

4   to suggest that the 300-day period does not apply in this

5   case?

6           MS. FOX-SOLOMON:  Sure.  Well, the argument we rely

7   on, Sterling from the Western District, which conflicts with

8   Bloomberg in the Southern District, obviously, they come to

9   completely different conclusions in that case.  So there's no

10  controlling law in this circuit on this.  But --

11          THE COURT:  Or in any circuit.

12          MS. FOX-SOLOMON:  Or in any circuit, that's correct.

13          Most of these cases come up in the context of 707

14  pattern or practices.  So there's just not a lot of case law

15  about how this applies to 706, which is what we have here.

16          THE COURT:  And you will admit that there is a

17  difference between the two.

18          MS. FOX-SOLOMON:  Yes, yes, in terms of how we

19  litigate the cases, sure.

20          My argument would be, and I will move on quickly,

21  because I think, in this case, it doesn't really matter

22  because the 300 days, if we measure it back from Abdullah's

23  charge, where that covers the scope of our lawsuit, but the

24  argument is that if the EEOC is not bound by an individual

25  charge in terms of the claims it can pursue, and that's

Proceedings                                    46

1    well-settled, we're only bound by the scope of our reasonable

2    investigation into the charge.

3              So, the argument is, if it's the scope of our

4    reasonable investigation that determines what claims we can

5    litigate in the case, shouldn't it be the scope of our

6    reasonable investigation that governs the time period of the

7    case.

8              THE COURT:  But isn't the issue here notice to the

9    employer?  And wouldn't the concern be that an employer

10   expects and knows that once a charge is filed, that the

11   activity that they could be sued for goes back 300 days,

12   without any notice to the employee, why should EEOC be allowed

13   to go back even further?

14             And isn't that prejudicial to an employer to not

15   know when a suit is brought, that, in fact, EEOC may go back

16   two years, or even three years, into activity that they, based

17   on the statute and case law, would have no reason to believe

18   that would be the subject of an EEOC investigation or suit?

19             MS. FOX-SOLOMON:  So, with respect to notice.  The

20   charge in this case, as soon as we filed an RFI with respect

21   to Abdullah, we asked for information going back two years, to

22   January 1st, 2014.  So, that's the basis of why we use that

23   date in the lawsuit.

24             THE COURT:  January 1st, 2004.

25             MS. FOX-SOLOMON:  2004, you're right, 2004.

Proceedings                    47

1          So, the employer was on notice that that was the

2   period of interest, and the reason we do that two years back

3   is the language in Title VII that limits back-pay claims to

4   two years prior to the charge.  So, the other argument is why

5   would we need that limitation of two years on back pay if EEOC

6   couldn't reach back to earlier than the 300-day charge filing

7   period.  So, that's the period of time that UPS was on notice

8   we were looking into, and so that's the period of time used in

9   the lawsuit.

10         But here, as I said, it doesn't really matter

11  because the 300 days, if it applies to the EEOC, is measured

12  from the triggering charge, which would be Bilal Abdullah

13  charge, which would bring us back to March 19th, 2011.

14         THE COURT:  Okay.

15         Counsel?

16         MS. LARIO:  Your Honor, this complaint is a Section

17  706 claim.  It is being brought by the EEOC on behalf of an

18  individual.  It is not a Section 707 pattern and practice

19  claim.  Many I think, of the cases that the EEOC cites, are

20  the pattern and practice kinds of cases where there might be a

21  little bit more ambiguity on the law.

22         But let's be clear.  Title VII, Section 706, is the

23  one that has the 300-day charged filing period in it.  There

24  is no excuse for the EEOC to be arguing to the contrary and,

25  indeed, in the Southern District of New York, they admitted

Proceedings                                          48

1    that they were bound by that charged filing period.

2            So, how they're saying or arguing something

3    different here just doesn't make sense with respect to that.

4            THE COURT:  So, I am in agreement with you on that,

5    Counsel, that they are limited by the 300-day.

6            The question is does the 300-day limit, based on the

7    Abdullah charge, cover all of the charges here, or as you were

8    articulating to me, it's only 300-day back for each so that

9    Abdullah and Farhan have separate time periods covered here,

10   not as EEOC argues that it should be the time period dating

11   from the Abdullah charge.

12           MS. LARIO:  Right.

13           So, the 300 period day, as you've indicated, where

14   there isn't an individual charge, it has to be where the

15   employer is on notice.  And in connection with this case, I

16   think what, again, is compelling here is that every employer

17   that responds to charges of discrimination, individual charges

18   of discrimination, does not anticipate that their case is

19   going to be a nationwide case.

20           In this case, in fact, then we objected and we

21   objected properly, and it wasn't until later, until after the

22   commissioner's charge was filed -- and clearly, the

23   commissioner's charge was filed, as the EEOC acknowledges,

24   because there was uncertainty as to whether they were going to

25   get nationwide discovery in the Farhan and Abdullah cases.

1          THE COURT:  Right, but as to notice when they issued

2    the RFI, you knew then that they were asking for nationwide

3    disclosure.

4          MS. LARIO:  But that was in dispute, and we didn't

5    necessarily know, or understand.

6          THE COURT:  You did not agree with it.  But there is

7    no dispute that is what they were seeking.

8          MS. LARIO:  But then what about the two years that

9    we were in the right?  The two years that the Western District

10   held that our position was the correct position, until later

11   that was reversed on appeal.

12         THE COURT:  That might go to the laches argument,

13   but here we are talking about statute of limitation.

14         The question is, when should the clock start to run?

15   Is it 300 days before the filing of the Abdullah charge, or

16   the for everything?  Or only as to Abdullah, and then 300 days

17   before the Farhan charge for him?  And then 300 days before

18   the commissioner's charge for that?

19         MS. LARIO:  So, I guess I am going to rely upon

20   Judge Prescott's decision in the Bloomberg case.

21         THE COURT:  Okay.

22         MS. LARIO:  967 F.Supp.2d 802 case, Southern

23   District 2013.

24         There she talked about the differences between

25   Section 707 and 706 claims and said clearly in that case, that

Proceedings                                    50

1   the EEOC is obligated to go through the pre-litigation

2   requirements for a 706 claim; right?  Different than what

3   their pre-litigation requirements are for a 707 claim.

4           While we may have been on notice of a broad

5   policy-based 707 claim back then, we were not on notice that

6   they would file solely a 706 claim.  That, we didn't have.

7   And respectfully --

8           THE COURT:  But does it matter which claim they are

9   going to file ultimately?  Isn't the issue are you on notice

10  that they are investigating a nationwide practice, as opposed

11  to the individual practice?

12          MS. LARIO:  So, again, you know, Judge Prescott said

13  you can't use 707 to get a backdoor to 706, and you can't use

14  that as any of the pre-litigation requirements; whether it's

15  notice, whether it's investigation, conciliation,

16  determination.

17          We weren't on notice of a 706 claim until they filed

18  this lawsuit.  That's it.  We didn't know.  It wasn't --

19  that's not the way to handle the investigation or any of the

20  prior allegations.  This has always been previously done

21  separately.

22          So, we don't believe that they went through that

23  process and gave us notice that they were ever going to bring

24  a 706 claim.  So, we say, even in the charge itself, it really

25  isn't clear.  It really wasn't clear until the litigation.

Proceedings                                    51

1    But clearly, because of that, the Abdullah, the Farhan

2    charges, can't be used.

3             The subpoena, the RFIs can't and shouldn't be used

4    to place us on notice, because we weren't on notice that they

5    were going to bring these individual claims at this point.

6             THE COURT:  I guess I am having a hard time reaching

7    that conclusion.  I think if it was the other way around, it

8    would make more sense in my head; but the fact that you were

9    on notice as of the RFI, or at least as of the clarification

10   in August of 2006, certainly as of the subpoena, that EEOC is

11   looking at the practice of UPS nationwide.

12            MS. LARIO:  What you just said is right; they were

13   looking at the practice.  They were not looking at a 706 claim

14   on behalf of individuals --

15            THE COURT:  Understood.

16            MS. LARIO:  -- around the country.

17            THE COURT:  But looking at all of it nationwide, and

18   then deciding only to bring as to some of it, you got notice.

19   If it was the other way around, where they were only

20   investigating the individual claims, and then ultimately

21   brought a nationwide practice claim, then I think you would

22   have a stronger argument.

23            But I do not see the inequities in your favor here

24   on that issue.  And I would not count it from the date of the

25   filing in a Farhan, obviously, because at that point all you

VB        OCR        CRR

Proceedings                                    52

1   know is this individual claim.  But I think once it is made

2   clear to you that it is a national investigation, then you

3   have received any notice that would be due that, in fact, they

4   are looking at the practice with regard to all employees,

5   potential employees of UPS.

6              And so, I come out the other way on that --

7              MS. LARIO:  I just want to --

8              THE COURT:  -- in my mind.

9              Go ahead, Counsel.

10             MS. LARIO:  Your Honor, I hear what you're saying.

11  I just want to read a quote from that Bloomberg case.  I think

12  it's at page 813.

13             THE COURT:  Slow down.

14             MS. LARIO:  "Title VII does not allow the EEOC to

15  use class-wide claims to conduct an end-run around the

16  pre-litigation requirements that must be satisfied before

17  bringing suit on behalf of individual claimants under 706."

18             THE COURT:  But what pre-litigation requirements do

19  you believe they did not engage in here?

20             MS. LARIO:  The investigation, the conciliation, and

21  the determination.

22             We never had an opportunity to talk specifically

23  about individuals.  In fact, when we attempted to do that

24  during conciliation, we were met with no response whatsoever.

25             THE COURT:  Again, doesn't that go to your laches

Proceedings                                              53

1    argument, though, not to the statute of limitation?

2          I mean, why does that affect the statute of

3    limitations?

4          MS. LARIO:  I just, because this starts at the

5    beginning.  It starts at the beginning of the charge.  It

6    starts at the beginning of the charge that we're at issue

7    here.  And again, while we were on notice of some kind of

8    class claim, we were not on notice that this was somehow going

9    to turn into a 706 claim until much later.

10         And I see that you don't understand my argument or

11   don't accept it, but I think --

12         THE COURT:  I understand it.  I just do not find it

13   as persuasive.

14         Go ahead.

15         MS. LARIO:  The reasoning of Bloomberg, to me,

16   solidified the fact that we had the right to be placed on

17   notice that they were going to be bringing individual charges

18   and we didn't know that even through the conciliation process

19   in this case.  We didn't anticipate that in this case.

20         THE COURT:  But you did not just think they would

21   walk away from the Farhan and the Abdullah charges.

22         MS. LARIO:  No, Your Honor.

23         And again, I think those individuals were the only

24   individuals, because they had their own charges that were out

25   there.  But with respect to anyone that is unnamed, that there

Proceedings                                                    54

1   was no indication by the EEOC that they abided by their

2   obligations, and therefore, placed us on notice, that at some

3   point they were going to bring a 706 claim against UPS.

4           THE COURT:  Okay.

5           Anything further, Counsel?

6           MS. FOX-SOLOMON:  Yes.

7           Your Honor, I don't really understand the 707 versus

8   706 argument.

9           First of all, it's a brand-new argument that is not

10  in the main brief or the reply brief.  I have never heard

11  Counsel articulate that they thought we were pursuing a 707

12  and now it's a 706.

13          The 707 versus 706 has nothing to do with notice to

14  the employer.  Charges never say 706, 707.  That has to do

15  with litigation.  The charge says here's the statute that was

16  violated, and here's the person and time period at issue.

17          THE COURT:  I think I understand Counsel's argument

18  to be, look, the way you conducted the litigation, to the

19  extent you were planning to bring these individual charges,

20  they should have been brought earlier, but you conducted it in

21  such a manner as if you were looking for pattern or practice,

22  and then you are turned around and brought this; did I get

23  that right, Counsel?

24          MS. LARIO:  Correct, Your Honor, thank you.

25          THE COURT:  Okay.

Proceedings                                             55

1          MS. FOX-SOLOMON:  Well, it's still a practice that

2    we're dealing with here.  It's a class case.  It's a class

3    case on behalf of the named individuals, Farhan and Abdullah,

4    and similarly aggrieved individuals, based upon UPS's

5    practice.  We're not using our 707 pattern or practice

6    authority.  That's a separate issue.

7          But the way we investigated the case is the same,

8    regardless of which suit authority we used here.  We always

9    said we were interested in Mr. Farhan hand and Mr. Abdullah,

10   and then the commissioner's charge also clarified, as we said

11   beginning in March 2006, we're looking at a class of

12   applicants and employees.  So, UPS was on notice of that scope

13   in March 2006.

14         And Bloomberg does not support Defense Counsel's

15   argument.  Bloomberg does say 706, 707.  Regardless, 300 days

16   applies.  That's what Bloomberg says.  But Bloomberg says,

17   it's measured from the earliest filed charge, which it then

18   refers to as the triggering charge.  And here the earliest

19   filed charge is Mr. Abdullah's charge.

20         Even the cases that Defense Counsel cites in her

21   reply brief, she cites several lower court cases from the

22   third and fourth circuits.  Those cases say the date should be

23   measured from the date that the employer was on notice of the

24   expended investigation.

25         I would argue those cases don't apply here because

Proceedings                                        56

1    those cases involved a situation where the individual charging

2    party says sex discrimination, and then the EEOC looked into

3    it and said, oh, it's not just sex discrimination, it's also

4    race discrimination, or disability discrimination.  So the

5    Court says it's unfair in those situations because the

6    employer was not on notice of the statute and the claims at

7    issue.

8              So, for those cases, they say it should be measured

9    from the date the EEOC provided notice of the expanded

10   investigation.

11             THE COURT:  But why wouldn't that apply here,

12   though?  I mean, even though the expansion of your

13   investigation is that you are looking at more than Abdullah,

14   but still the same religious discrimination claims.

15             MS. FOX-SOLOMON:  Right.  It's still the same

16   charge.

17             THE COURT:  Yes.

18             MS. FOX-SOLOMON:  It's still the same practice.

19             THE COURT:  But UPS would not know until they are

20   notified that you are looking beyond Abdullah; right?

21             MS. FOX-SOLOMON:  So, if that's what we're using, if

22   we're looking using the date of the notice of the expanded

23   investigation as opposed to Bloomberg, then that date would be

24   March 2006, when our RFI requested nationwide discovery.

25             THE COURT:  Okay.

Proceedings                                57

1          Okay.  So, I am just going to tell you what is left

2     and then what I am going to do and we will break for ten

3     minutes.

4          Okay.  So, the last issue left is this segregation

5     argument that EEOC is making, that, for the life of me, try as

6     I did, I could not get it, Counsel.  So, you have your work

7     cut out for you to explain to me why there is a segregation

8     charge here that provides for a continuing violation argument.

9          And then, I am actually going to render my decision

10    today, okay?  So we are going to take a ten-minute break.

11         MS. FOX-SOLOMON:  Actually, Your Honor, may I add

12    just one thing about that argument?  I might be able to save

13    some time.

14         It depends when Your Honor decides to measure the

15    300 days from.  If the 300 days is measured from either

16    January 2006, of the Abdullah charge, or March 2006, when we

17    provided the notice, then that argument really is unnecessary

18    because we're --

19         THE COURT:  I want to hear that argument, because

20    you made it, and I read it, and I am confused by it and it is

21    it's your job to educate the Court.

22         MS. FOX-SOLOMON:  Okay.  Will do.  Thank you, Your

23    Honor.

24         THE COURT:  So we will take a ten-minute break.

25         (Recess taken at 11:59 a.m.)

Proceedings                                    58

1              (In open court.)

2              (Judge MARGO K. BRODIE enters the courtroom.)

3              THE COURTROOM DEPUTY:  All rise.

4              THE COURT:  Please be seated.

5              So, Counsel, I did not mean to be flip with you.

6              Are you withdrawing your segregation charge?

7              MS. FOX-SOLOMON:  No, we are not.

8              THE COURT:  Okay.  So then why don't you tell me

9     what that charge is.

10             MS. FOX-SOLOMON:  Sure.

11             So the segregation claim in this case is that UPS,

12    over time, has channelled individuals whose religion conflicts

13    with the appearance policy into nonsupervisory,

14    back-of-the-facility, noncustomer contact positions.  And this

15    is done by channelling people at hire into those positions.

16    That's what we allege occurred with Mr. Abdullah here.

17    Mr. Abdullah was applying for a driver-helper position.

18             THE COURT:  I understand the factual basis for the

19    argument.  I do not understand why it is a continuous or

20    continuing violation.

21             MS. FOX-SOLOMON:  So the argument is that

22    segregation is more than the sum of its parts.  It may start

23    on the day that you're hired into a back-of-the-facility

24    position, but it continues when, based on that initial

25    classification, you are denied upward mobility into jobs that

VB        OCR        CRR

Proceedings                                    59

1    are paid more.

2           THE COURT:  So, is it a segregation claim as to each

3    individual?

4           MS. FOX-SOLOMON:  I mean, it's a class claim.

5           THE COURT:  I understood that part.  But I guess --

6    so in my mind, when you are talking about a continuous claim,

7    for example, a hostile work environment; right?

8           MS. FOX-SOLOMON:  Sure.

9           THE COURT:  And so the law for that is it must be

10   severe or pervasive.

11          MS. FOX-SOLOMON:  Right.

12          THE COURT:  Here, is the argument that this group,

13   this particular group of individuals, was created by UPS in

14   that they were not being hired, they were not being promoted,

15   and all of those things, but those are discrete actions.

16          MS. FOX-SOLOMON:  Right.

17          THE COURT:  So, how do you get them from there to

18   some form of continuing activity?  Is it that because UPS does

19   this continuously?  Because that cannot be it; right?

20          MS. FOX-SOLOMON:  No, no.

21          THE COURT:  So, I am not understanding the legal

22   basis for why you believe that the segregation claim, this

23   claim, is a continuous violation instead of just each act that

24   UPS did that was problematic, which should be challenged

25   individually.

Proceedings                                         60

1          MS. FOX-SOLOMON:  Right.  And that's what our other

2     three claims are.  It's exactly that.

3          We agree that failure to hire, failure to promote,

4     denial of reasonable accommodation, those are discrete acts.

5          The argument with the job segregation claim is that

6     it's ongoing and cumulative in nature on an individual basis.

7     So, to take the Abdullah example, he applied for a

8     driver-helper position, he alleges that he was told you need

9     to shave your beard.  When he disclosed he was a Muslim, they

10     said, okay, why don't you apply for a package handler

11     position, because there's no customer contact and the policy

12     doesn't apply.

13          So, he wasn't hired at all.  But had he been hired,

14     the argument would be that that segregation claim is not just

15     the initial channeling into that position, but the fact that

16     his opportunities for advancement on an ongoing basis were

17     limited that that initial action.

18          THE COURT:  But what is the legal support for that

19     type of claim?

20          MS. FOX-SOLOMON:  So the legal support is the

21     harassment allegations that it's a similar concept where it's

22     ongoing -- ongoing indignities that add up to something more

23     than just the acts of harassment or name calling; that it's

24     more than the sum of its parts.

25          There is no case that deals with Abdullah.  There's

Proceedings                          61

1   not a lot of job segregation cases out there.  There are some

2   that recognize the claim.  This issue has not, at least my

3   research, did not disclose any cases that specifically dealt

4   with job segregation, the continuing violation in Title VII.

5            The most analogous case I could find was in the

6   housing discrimination avenue, which made a similar argument

7   on the basis of race; that steering practices, it might be a

8   denial of credit.  It might be showing people houses in a

9   certain neighborhood.  Those are discrete acts, but the

10  greater issue is what happens when all those things are put

11  together, and then you have neighborhoods separated on the

12  basis of race.

13           THE COURT:  There is the difference.

14           So, I think in that situation, ultimately, you see

15  the impact and there is a segregation that you are pointing

16  to; right?  Which is more than the individual activities.

17           Here there are no such allegations; right?  In fact,

18  there is nothing that suggests the individual employees who

19  were denied promotions, or whatever, even knew of or

20  commiserated with, or ended up in this environment -- it does

21  not have to be physical, but somehow had the same stigma

22  attached, or all of those things that go with the housing

23  discrimination claim that you just discussed.

24           MS. FOX-SOLOMON:  I see.

25           THE COURT:  So it does not quite fit.  I could see

VB        OCR        CRR

Proceedings                    62

1    where maybe it could fit in the right circumstances, in the

2    right set of facts, but it does not fit here in my mind, not

3    based on the allegations in the complaint.

4             MS. FOX-SOLOMON:  I think the closest would be

5    Mr. Farhan's allegations, because that is something that he

6    has talked about and that he talked about in his charge, and

7    in his interviews, is the concept of, you know, with him, it

8    was other Muslim employees.  The concept that if you have a

9    beard, you're going to be stuck in these back-of-the-facility

10   positions, and it affects lots of other religions, but the

11   viewpoint that, if you have a beard and the beard is based on

12   religious objections, that you are not going to be able to be

13   a supervisor.  You are not going to be able to be a driver.

14   You are going to be sorting packages in the back of the

15   facility.

16            So to that extent, I think, there is not as great of

17   a stigma clearly as in the housing discrimination context with

18   segregation, but it's the same concept that, over time, you

19   have a work force that is divided.  In this case, based upon

20   religion.

21            THE COURT:  Got it.  Okay.

22            MS. LARIO:  I don't know how the EEOC makes this

23   argument when every one of the 50 accommodations that we

24   provided to them was granted.  Every one, including

25   Mr. Farhan's.

Proceedings                                             63

1        He was granted an accommodation to drive with a

2   beard.  He was granted accommodation to go on a six-month

3   Hajj.  Every single one.  There is absolutely no basis, in

4   fact, for this argument.  I understand it's a pleading, but

5   there is no basis, as we sit here today, to even make that

6   argument.

7            I agree with you, Your Honor, that the segregation

8   claim is predicated completely and solely on discrete acts.

9   In fact, if we look at the complaint itself, on pages 10 and

10  11, they talk about the segregation allegation and the

11  examples that they give are, a transfer to a different

12  position; a failure to accommodate; a delayed accommodation;

13  and a failure to hire.  Those are all discrete acts.  And

14  those are not subject to the continuing violation.

15           And one other point I'd like to make.  To the extent

16  the EEOC is using the continuing violation doctrine to revive

17  any kind of stale claimants, as opposed to stale claims,

18  that's not the purpose of the doctrine, and it is not allowed

19  to be used in that manner.

20           So, when we have discrete acts that are outside of

21  the statute of limitations, they can't be pulled in by the

22  banner of segregation, because that just doesn't exist and

23  they've made no pleading to suggest otherwise.

24           THE COURT:  Okay.

25           Okay.  So I have heard a lot of arguments today.  I

VB        OCR        CRR

1  have read all of the motion papers, and I have also read the

2  complaint.  I am going to render an oral decision here.  I

3  want to make it as understandable as possible.

4          I will have a written decision, but I am going to

5  deal with each issue in the manner in which we have discussed

6  them.

7          So, beginning with the first.  First, let me just

8  state for the record that summary judgment is proper only when

9  construing the evidence in the light most favorable to the

10 nonmovant.  There is no genuine dispute as to any material

11 fact, and the movant is entitled to judgment as a matter of

12 law.

13         That is Federal Rule of Civil Procedure 56(a).

14         A movant for summary judgment always bears the

15 burden of production as to every element of an affirmative

16 defense.  <u>FDIC versus Giam Metei</u>, 34 F.3d 51 page 54

17 Second Circuit, 1994, and I am not including the citations.

18         So, turning to the first affirmative defense,

19 whether or not the EEOC made a prompt determination of the

20 underlying charges, I am not going to reiterate the parties'

21 position, or the discussion we had today.  But my ruling is

22 that this is not, this defense has not been proved here.

23         Neither Title VII, nor the courts require the EEOC

24 to complete its investigation within a particular period of

25 time.  The parties are all in agreement as to that.

Proceedings                                65

1          See <u>Occidental Life Insurance Company of California</u>

2    <u>versus EEOC</u>, 432 U.S. 355 page 369, footnote 23, 1977 Supreme

3    Court.

4          Defendant's exhibits here demonstrate that the

5    parties were litigating and negotiating the scope of discovery

6    in the Abdullah charge until November of 2010.

7          While the Farhan charge was filed in April of 2007,

8    Farhan's allegations that UPS engaged in a pattern or practice

9    of refusing to accommodate the religious observances,

10   practices and beliefs of its employees, suggest that the

11   EEOC's discovery after both Abdullah and Farhan charges, and

12   until and after the commissioner's charge, was part of an

13   ongoing investigation over which both the Supreme Court and

14   the Second Circuits have given EEOC great latitude.

15         Declining to decide as a matter of law that the EEOC

16   did not satisfy its pre-suited requirement to make a

17   determination as promptly as possible, quoting promptly as

18   possible, 42 U.S.C. Section 2000e-5 is consistent with the

19   Second Circuit's determination that limited review respects

20   the expansive discretion that Title VII gives to the EEOC

21   while ensuring that the commissioner follows the law.

22         And that is Sterling Jewelers, I quoted part of that

23   from there, 801 F.3d 96 at page 101, quoting Mach Mining.

24         Moreover, it is defendant's burden to prove that

25   there is no genuine issue of material fact that plaintiff

1  failed to make a prompt determination, pursuant to Section

2  2000e-5, and defendant has not met that burden this view of

3  one, defendant's own role in prolonging the investigation, as

4  is defendant's right to object to the scope of the

5  investigation, and defendant did that here;

6          Number two, facts that tend to show that plaintiff

7  investigated a potential nationwide claim;

8          And three, defendant's inability to point to any

9  legal authority regarding what constitutes a prompt

10  determination in this context.

11          So, with regard to defendant's objection to the

12  Fox-Solomon affidavit, based on both the substance and the

13  form of the affidavit, it is not clear to me that the

14  declaration is not based on her personal knowledge.  The test

15  of admissibility is whether a reasonable trier of fact could

16  believe the witness had personal knowledge of the facts to

17  which she is testifying.

18          Fox-Solomon states in her declaration that she is

19  fully familiar with the facts asserted in the declaration.

20  Even looking at the declaration itself, and excluding the

21  items that possibly she could not have any personal knowledge

22  of, the Court's ruling is the same.

23          And there were certain parts of the Fox-Solomon

24  affidavit that I did exclude from consideration, including the

25  information regarding why the Buffalo office took 18 months to

Proceedings                                67

1    complete its investigation of the three charges at issue.

2           So, turning to the laches affirmative defense.  This

3    one, clearly, we had strenuous discussion about it.  As I

4    indicated before, because it is an affirmative defense, the

5    party is asserting it bears an ultimate burden of persuasion,

6    and that's citing <u>Pecorino versus Vutec Corp.</u>, 6 F.Supp. 3d

7    217, Eastern District of New York 2013.

8           And even where the factors of undo delay and

9    prejudice are met, whether to apply the equitable remedy of

10   laches lies in the sound discretion of the Court, relying on

11   the same case.

12          To prove laches, a party must establish:

13          One, the plaintiff knew of the defendant's

14   misconduct;

15          Two, the plaintiff inexcusably delayed in taking

16   action;

17          And three, the defendant was prejudiced by that

18   delay.

19          Quoting <u>Allens Creek/Corbetts Glen Preservation</u>

20   <u>Group, Inc., versus West</u>, 2 F.App'x 162 page 164

21   Second Circuit 2001 and the Second Circuit was quoting a

22   reported case.

23          Addressing each factor.  With regard to the first,

24   where the plaintiff knew of defendant's misconduct, although

25   the Second Circuit has not considered the defense of laches in

Proceedings                                    68

1   the context of an enforcement suit by the EEOC, its laches

2   jurisprudence, generally, and in Title VII cases by private

3   plaintiffs, reflects a principle also reflected in the other

4   circuits that laches can only apply after plaintiff knows of

5   its right to bring suit in view of a defendant's misconduct.

6   See Brennan versus Nassau County 352 F.3d 60 page 64.

7           Here, defendant has not presented any evidence or

8   even argued that plaintiff knew of its alleged misconduct, or

9   in any event, the scope of the alleged misconduct, prior to

10  the close of discovery in November of 2010.

11          So, the Court can identify November of 2010, as the

12  beginning of the applicable laches period, as the parties

13  discussed at length today.  Since the record reflects no point

14  before that which plaintiff could reasonably have known of

15  defendant's misconduct, having not been able to contact other

16  class members until it had been given their identifying

17  information.

18          Turning to the second element, whether or not

19  plaintiff inexcusably delayed taking action here.  I am not

20  going to go over the parties' arguments again, but construing

21  all the facts and drawing all the reasonable inferences in

22  plaintiff's favor, as I am required to on a motion for summary

23  judgment, the only periods of delay that I find are reasonably

24  attributable to plaintiff are:

25          One, from November 2010, until the determination in

Proceedings                                              69

1    June of 2012;

2            And two, from the end of the conciliation in

3    August 2014, until the filing of the suit in July 2015.

4            Moreover, even disregarding Ms. Fox-Solomon's

5    declaration, which evidences that plaintiff did take

6    significant steps toward investigating the claims between

7    November 2010, and June 2012, defendant has not met its burden

8    to prove that the time delays amounting to approximately

9    two-and-a-half years, are unreasonable or inexcusable.

10           See Springer versus Partners in Care, 17 F.Supp. 2d,

11   133 page 138 EDNY 1998.

12           Noting that on summary judgment, or a motion to

13   dismiss, the absence of evidence indicating what efforts the

14   plaintiff took to pursue his claim, cannot lead to the

15   conclusion that the plaintiffs simply did nothing for an

16   extended period of time.

17           Further, in view of the steps that must be followed

18   before the EEOC may file suit, an 11-month period between the

19   end of conciliation, and the filing of suit, is not

20   unreasonable as a matter of law.

21           And I looked at the EEOC's policy requirement which

22   are available online.

23           The cases that defendants rely on do not provide a

24   contrary result here.  Many of these cases demonstrate that

25   outside of the Second Circuit Court of Appeals, these courts

Proceedings                                        70

1   consider inexcusable delay on specific facts of each case, but

2   heavily consider any delay and:

3              One, in one notifying the defendant of the charges;

4              Or two, beginning an investigation after receipt of

5   a charge; neither of which is relevant here.

6              Turning to the third factor, whether defendant was

7   prejudiced by the delay.  Mere delay without more does not

8   amount to laches.  The defendant must establish with such

9   clarity as to leave no room for controversy; that it has been

10  substantially and unduly prejudiced in its ability to defend

11  the lawsuit because of the EEOC's delay.

12             Quoting EEOC versus Westinghouse Electric Corp.,

13  592 F.2d 484 page 486, which, in turn, was quoting an

14  Eighth Circuit EEOC case.

15             So, defendant's arguments that the witness's

16  memories have faded; that changes in personnel will make it

17  difficult to locate witnesses; and that the volume of

18  applications since the relevant events will make it difficult

19  to defend the case, these are the arguments made by defendant,

20  but defendant has not produced evidence of any of these

21  allegations, except as contained in Ms. Caldwell's

22  certification, who is defendant's corporate director of talent

23  acquisition, which was submitted with a reply brief.

24             The Caldwell certification notes that, "each UPS

25  interviewer generally conducts hundreds of interviews each

Proceedings                    71

1    peak season"; that the initial personnel in charge of

2    interviewing or supervising Abdullah and Farhan no longer work

3    at UPS, and that "about 40 percent of the managers involved in

4    addressing the religious accommodation requests of the

5    employees who went through the UPS accommodation process are

6    no longer employed by UPS."

7            Given this is the only evidence of prejudice,

8    defendant has not met its burden to prove that EEOC delays

9    have caused specific prejudice to its ability to defend the

10   case.

11           Turning to the third affirmative defense, the

12   statute of limitations.  We've gone back and forth on this.  I

13   believe my view on this is clear, that the EEOC, contrary to

14   its claim, cannot go back beyond 300 days before the filing of

15   the charge.

16           The real issue here is whether or not all of the

17   charges can relate back to that date, as EEOC argues, or

18   whether or not each relates back only to 300 days prior to

19   that particular charge.

20           As the parties acknowledge, there is no clear law on

21   this point.  There are no Appellate Court decisions and few

22   scattered District Court decisions that address how an

23   expanded investigation affects the triggering chart for the

24   purposes of the 300-day time bar.

25           The few courts that have considered the issue, have

Proceedings                                          72

1   concluded that the relevant date for limitations is the date

2   that EEOC provided notice to the employer that the

3   investigation has been expanded.

4            Here, so the question is whether or not the relevant

5   date would be the March 22nd, 2006, date for when EEOC made

6   their request for information, where that request included

7   nationwide responses, or at least requested nationwide

8   responses, or whether it is the 300 days prior to the

9   April 25, 2007, date, which is the Farhan charge, the date of

10  the filing of the Farhan charge, which specifies pattern or

11  practice.

12           In view of the fact that the issue here is when was

13  the defendant notified that, in fact, it was a nationwide

14  discovery request, or that the EEOC was conducting a

15  nationwide investigation, which brings the triggering date to

16  either March 22nd, 2006, when the request was made, or when it

17  was subsequently clarified in August of 2006.  Not much of a

18  difference between the two dates.

19           The only question, in my mind, is whether the

20  initial request was clear enough, which it sounds like it was,

21  since it specified only responses from Rochester with regard

22  to some requests, and generally all suggesting nationwide.  I

23  do not know that I need to make a ruling as to that

24  specifically.  I do not know that it makes a difference in the

25  context of the litigation, whether it's March or August, but

Proceedings                                          73

1   it really would require me to go back and re-read the request

2   that was made in March of 2006, to see if that was sufficient

3   notice for EEOC to be aware that for -- I am sorry, for UPS to

4   be aware that EEOC was conducting a broader investigation, a

5   nationwide investigation, or whether that was not clear until

6   it was clarified in August.

7          So, my decision as to which of the two days depends

8   on when that was clear to UPS, and I will go back and read the

9   document, the RFI, from March of 2006, to see if that

10  clarifies.

11         I believe that has taken care of all of the issues.

12  As to the segregation claim of a continuing violation, as I am

13  sure EEOC understood from my questions, I do not believe that,

14  to the extent such a claim exists, it certainly does not exist

15  here in this case, meaning, there is no continuous violation

16  that has been alleged in the complaint.  The complaint only

17  alleges discrete activities.

18         Did I forget anything?

19         MS. CURTIN:  No, Your Honor.

20         MS. FOX-SOLOMON:  No.

21         MS. LARIO:  No, Your Honor.

22         THE COURT:  Okay.

23         Where do we go from here?

24         MS. FOX-SOLOMON:  I guess initial conference; right?

25         MS. LARIO:  Yes.

Proceedings

74

1          MS. FOX-SOLOMON:  We postponed the initial

2   conference with the magistrate judge.

3          THE COURT:  Okay.  So, the magistrate judge in this

4   case is whom?

5          MS. FOX-SOLOMON:  Judge Pollak.

6          THE COURT:  Judge Pollak, yes.

7          Okay.  So the parties should meet with her.  Either

8   someone should call her and reschedule the initial conference

9   so that you can move forward.  I will look at that one

10  document and issue a short order as to my decision on that one

11  issue.

12         I thank the parties for their arguments today.  I

13  could not have done this without the vigorous input from both

14  sides.  It is always appreciated, at least I certainly

15  appreciate, hearing from the parties.  It helps me better

16  decide the issue before me.

17         MS. LARIO:  Thank you, Your Honor.

18         MS. FOX-SOLOMON:  Thank you, Your Honor.

19         MS. CURTIN:  Thank you.

20         MS. FOX-SOLOMON:  We appreciate it.

21         THE COURT:  Have a good day.

22         ALL:  Thank you.

23         (Matter concluded.)

24                        ooo0ooo

25

VB     OCR     CRR

I certify the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Victoria A. Torres Butler     September 14, 2016