## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | Case No. 1:15-cv-04141-MKB-CLP |
| Plaintiff, | ) ) | District Court Judge Margo K. Brodie |
| v. | ) ) | Magistrate Judge Cheryl L. Pollak |
| UNITED PARCEL SERVICE, INC. | ) ) | |
| Defendant. | ) ) | |

_____

## <u>CONSENT DECREE</u>

### <u>INTRODUCTION</u>

Plaintiff Equal Employment Opportunity Commission ("EEOC" or "Commission")

commenced this action on July 15, 2015 against Defendant United Parcel Service, Inc. ("UPS"

or "Defendant") under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights

Act of 1991 to correct alleged unlawful employment practices on the basis of religion in relation

to the UPS Uniform and Personal Appearance Guidelines ("Appearance Guidelines") and to

provide appropriate relief to individuals the EEOC alleges were adversely affected by the alleged

unlawful practices. The EEOC alleges that Defendant discriminated against applicants and

employees whose religious practices conflicted with the Appearance Guidelines by:

(a)    Failing to hire individuals who maintain beards or long hair in accordance with

their religious beliefs;

(b)    Refusing to provide religious accommodations to such individuals or

unreasonably delaying their requests;

(c)     Failing to promote or transfer individuals who maintain beards or long hair in accordance with their religious beliefs into positions covered by the Appearance Guidelines; and

(d)     Segregating individuals with religious-based beards or long hair into non-supervisory positions and positions without customer contact.

In consideration of the mutual promises of each party to this Consent Decree (hereinafter "Decree"), the sufficiency of which is hereby acknowledged, it is agreed and IT IS ORDERED, ADJUDGED AND DECREED as follows:

## PART I      GENERAL PROVISIONS

### Section 101     Purpose of this Decree

A.     The EEOC and Defendant ("the parties") desire to settle this action, and therefore do hereby stipulate and consent to entry of this Decree as final and binding on the parties.

B.     The Decree resolves all issues that were raised in the EEOC's Complaint for all Charging Parties, Claimants, and Potential Claimants (all as defined below).  The Decree also fully and finally resolves the following Charges of Discrimination, which served as the jurisdictional prerequisites in this case:  EEOC Charge No. 165-2006-00422 (Charging Party Bilal Abdullah); EEOC Charge No. 526-2007-00716 (Charging Party Muhammad Farhan); and EEOC Charge No. 525-2009-00220 (Commissioner Charge).  The Decree also fully and finally resolves EEOC Charge No. 450-2017-00742 (Charging Party Syed Rizvi).  This Decree in no way affects EEOC's right to process any future charges that may have been or may be filed against Defendant, and to commence civil actions on any such charges.  For individual charges that are pending as of the Effective Date of the Decree, and that concern issues covered by the Decree, the EEOC and Defendant agree to work cooperatively and in good faith to identify and

resolve those charges through the Decree, but nothing in the Decree affects EEOC's right to process or commence civil actions on any charges that cannot be so resolved.

C. Nothing in this Decree constitutes an admission by any party as to the claims and/or defenses of any other party.

D. No party will contest the validity of this Decree or the jurisdiction of the federal district court to enforce this Decree and its terms.

E. This Decree applies to all of Defendant's facilities nationwide.

F. The terms of this Decree represent the full and complete agreement of the parties. The parties agree that this Decree may be entered into without Findings of Fact and Conclusions of Law being made and entered by the Court.

**Section 102    Definitions**

A. "Defendant" or "UPS" means United Parcel Service, Inc., an Ohio corporation, and its successors and assigns.

B. "The Commission" or "EEOC" is the U.S. Equal Employment Opportunity Commission, an agency of the United States Government charged with the administration, interpretation and enforcement of Title VII.

C. "Charging Parties" refers to charging parties Bilal Abdullah and Muhammad Farhan.

D. "Claimant" or "Claimants" refers to all individuals (other than the Charging Parties) who have been identified by the EEOC in this lawsuit as allegedly subjected to unlawful employment practices from May 26, 2005 through the Effective Date, and who are listed in Exhibit A.

E. "Potential Claimant" or "Potential Claimants" refers to applicants and employees

of Defendant who were allegedly subjected to unlawful employment practices on the basis of religion as alleged in the EEOC's Complaint from May 26, 2005 through the Effective Date of this Decree, but have not yet been identified to Defendant as Claimants. Potential Claimant or Potential Claimants also refers to individuals with pending individual charges as of the Effective Date of the Decree that are identified and resolved through the Decree.

      F.      "Effective Date" means the date the Decree is entered by the Court.

      G.      "Day" or "Days" means calendar days and includes weekends and holidays.

**Section 103    Applicability of Decree to Successors and Assigns or Upon Purchase, Merger or Consolidation**

Before Defendant engages in any transfer of its business or its assets, it will provide written notice of this lawsuit and a copy of the Complaint and this Decree to any potential purchaser of its business or assets, and to any potential successors, assigns, or affiliates, including any entity with which Defendant may merge or consolidate. Defendant will provide written notice to the EEOC within fourteen (14) days of any transfer of its business or assets.

**Section 104    Amendments to this Decree**

By mutual consent of the parties, this Decree may be amended in the interests of justice and fairness and to facilitate execution of this Decree's provisions. No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing, approved by all parties to this Decree, and approved or ordered by the Court.

**Section 105    Severability**

If one or more provisions of this Decree are rendered unlawful or unenforceable as a result of a legislative act or a decision by a court of competent jurisdiction, the following will apply to ensure that this Decree continues to effectuate the intent of the parties. The provisions of this Decree which are not rendered unlawful, unenforceable, or incapable of performance as a

result of such legislative act or court decision will remain in full force and effect and the parties'
responsibilities will not abate as to any and all provisions that have not been rendered unlawful
or unenforceable, except to the extent that the intent of this Decree would be undermined.

**Section 106    Notices**

Except as otherwise provided for in this Decree, all notifications, reports, and
communications to the parties required under this Decree will be made in writing and will be
sufficient as emailed, hand-delivered, faxed, or sent by certified, registered, or overnight mail to
the following persons (or their designated successors):

| | |
|---|---|
| For EEOC: | Elizabeth Fox-Solomon |
| | Trial Attorney |
| | EEOC Buffalo Local Office |
| | Olympic Towers |
| | 300 Pearl Street, Suite 450 |
| | Buffalo, NY 14202 |
| | elizabeth.fox-solomon@eeoc.gov |
| | |
| | and |
| | |
| | decreemonitor.nydo@eeoc.gov |
| | |
| For Defendant: | Wendy Johnson Lario |
| | Shareholder |
| | Greenberg Traurig LLP |
| | 500 Campus Drive |
| | Suite 400 |
| | Florham Park, NJ 07932 |
| | lariow@gtlaw.com |

Any party may change such addresses by written notice to the other party setting forth a
new address for this purpose.

**PART II        INJUNCTIVE RELIEF**

**Section 201    Injunctions**

A.    Defendant (including, for purposes of this sub-paragraph A, UPS Freight and UPS

Information Technology) and its managers and officers are enjoined from engaging in any employment practice that discriminates on the basis of religion in relation to the Appearance Guidelines in violation of Title VII in the following manner:

1.     Failing or refusing to accommodate qualified individuals whose religious beliefs, practices, or observances conflict with the Appearance Guidelines, provided that the individuals participate and fully cooperate in the UPS Religious Accommodation Process, and further provided that the requested accommodation does not pose an undue hardship to Defendant;

2.     Failing or refusing to hire qualified individuals whose religious beliefs, practices, or observances conflict with the Appearance Guidelines, or segregating such individuals into positions that are not subject to the Appearance Guidelines;

3.     Failing or refusing to transfer or promote eligible and qualified employees because their religious beliefs, practices, or observances conflict with the Appearance Guidelines, provided that the individuals participate and fully cooperate in the UPS Religious Accommodation Process, and further provided that the requested accommodation does not conflict with the relevant collective bargaining agreements or pose an undue hardship to Defendant; and

4.     Harassing or subjecting any individual to different terms and conditions of employment on the basis of a conflict between that individual's religious beliefs, practices, or observances and the Appearance Guidelines.

B.     Defendant (including, for purposes of this sub-paragraph B, UPS Freight and UPS Information Technology) and its managers and officers are enjoined from retaliating against any person because that person has opposed any practice enjoined under Section 201(A) of this

Decree, requested a religious accommodation to the Appearance Guidelines, complained of religious discrimination related to the Appearance Guidelines, testified or participated in any manner in any investigation, proceeding, or hearing concerning religious discrimination related to the Appearance Guidelines, sought or received relief in this action, or asserted any rights under this Decree.

**Section 202    Religious Accommodation Process**

A.    Within twenty-one (21) days of the Effective Date, Defendant will implement a revised Religious Accommodation Process and will post Frequently Asked Questions ("FAQs") about the revised Process on UPSers.com.  The revised Religious Accommodation Process, the FAQs, and the Summary of UPS Religious Accommodation Process Changes and Clarifications are attached hereto as Exhibit B, to be filed under seal.  Any proposed substantive changes to the Religious Accommodation Process related to the UPS Uniform and Personal Appearance Guidelines must be submitted to the EEOC for approval prior to implementation or as soon as practicable thereafter.

B.    Within twenty-one (21) days of the Effective Date, Defendant will implement a revised Religious Accommodation Request Form for Applicants, attached hereto as Exhibit C, to be filed under seal.

C.    On or before July 1, 2019, Defendant will implement a revised Religious Accommodation Request Form for employees.  The EEOC will review and comment on the substance of the revised form related to the UPS Uniform and Personal Appearance Guidelines prior to implementation.

D.    Within twenty-one (21) days of the Effective Date, Defendant will post a "story" about the revised Religious Accommodation Process, with a link to the Religious

Accommodation Request Form, on the "News" page of UPSers.com.  The "story" and link will remain on the "News" page of UPSers.com for at least twenty-one (21) days after the initial posting.  After twenty-one (21) days, the revised Religious Accommodation Process and a link to the Religious Accommodation Request Form will be moved to the "HR Policies" section within the "My HR" tab of UPSers.com, for the duration of the Decree.

E.     Within twenty-one (21) days of the Effective Date, Defendant will post Frequently Asked Questions about the revised Religious Accommodation Process that are relevant to applicants on jobs-ups.com, and will add a link to request more information about the process in the "footer" or comparable section of jobs-ups.com.

F.     Within thirty (30) days of the Effective Date, Defendant will conduct an audit of UPSers.com and remove outdated versions of the Appearance Guidelines.  Defendant will ensure that every remaining reference to the Appearance Guidelines on UPSers.com includes a link to the Religious Accommodation Process and Request Form.

G.     Within forty-five (45) days of the Effective Date, Defendant will certify in writing to the EEOC that it has updated UPSers.com and jobs-ups.com in accordance with this Section. Defendant will provide screenshots of UPSers.com and, upon request by the EEOC, will permit a representative of the EEOC to view UPSers.com via Skype for Business or similar technology for purposes of verifying compliance with this Section.

**Section 203     Posting and Distribution of Notices**

A.     Within twenty-one (21) days of the Effective Date of this Decree, Defendant will post the "Notice of Lawsuit and Resolution" (the "Notice," attached as Exhibit D to this Decree) on UPSers.com.  The Notice will be keyword-searchable based on the following terms: EEOC, religion, religious accommodation, discrimination, beard, hair, grooming, and appearance.  The

Notice will appear as a related link within the "story" described in Section 202, which will be on the "News" page of UPSers.com for at least twenty-one (21) days. After twenty-one (21) days, the Notice will be moved to a link from the Religious Accommodation Process in the "HR Policies" section within the "MyHR" tab of UPSers.com, where it will remain for the duration of the Decree.

B.      Defendant will certify in writing to the EEOC within forty-five (45) days after the Effective Date that it has posted the Notice pursuant to this provision. Defendant will provide screenshots of the Notice on UPSers.com and, upon request by the EEOC, will permit a representative of the EEOC to view the Notice on UPSers.com via Skype for Business or similar technology for purposes of verifying compliance with this Section.

**Section 204    Training**

A.      Beginning in October 2018, Defendant (including, for purposes of this Section 204, UPS Freight and UPS Information Technology) will provide training to all human resources employees at the supervisor level and higher, including UPS recruiters and interviewers, regarding the UPS Religious Accommodation Process and forms, as well as how to implement the Religious Accommodation Process and forms with applicants and employees, and the interaction between the Religious Accommodation Process and the Appearance Guidelines. The general terms of this Decree will also be included in the training. As part of the training, Defendant will provide instruction about the current Appearance Guidelines and instruct Area Human Resources Managers to remove any outdated versions of the Appearance Guidelines from the New Service Provider Training Manuals to the extent such Manuals are used in their facilities, bulletin boards, and any other building locations where policies are maintained. The EEOC will review and comment on all training materials prior to commencement of training.

This training will be conducted annually for UPS recruiters and interviewers prior to each peak season through (and including) peak season 2022 (or earlier as provided in Part V(A) of the Decree).

B.      Beginning in the first quarter of 2019, Defendant will provide interactive web-based training to all employees at the supervisor level and higher, addressing the UPS Religious Accommodation Process and its interaction with the Appearance Guidelines.  Defendant will provide the training module to the EEOC for review and comment prior to the first training.  The training will be repeated annually for the duration of the Decree.

C.      Beginning in the second quarter of 2019, Defendant will amend its new supervisor training to include a description of the Religious Accommodation Process and its interaction with the Appearance Guidelines.  The EEOC will review and comment on all training materials prior to implementation.

D.      Beginning in 2019, during a monthly period in which hourly employees' national use of paid vacation is expected to be at a reduced level, Defendant will use its established Pre-work Communication Message ("PCM") to brief management employees and inform hourly employees of the UPS Religious Accommodation Process and its interaction with the Appearance Guidelines. Defendant will repeat this PCM annually for the duration of the Decree. The EEOC will review and comment on the PCM prior to implementation.

E.      All training required by this Section during the first year of the Decree will be completed on or before the last business day in October 2019.

**Section 205    Recordkeeping and Reporting**

A.      During the duration of the Decree, Defendant will retain the following documents:

1.      Applications of applicants denied hire by UPS based upon their failure or refusal to comply with the Appearance Guidelines;

2.      Religious accommodation requests related to the Appearance Guidelines submitted to the UPS Human Resources Service Center ("HRSC") by applicants and employees, and all documents maintained by the HRSC related to such requests;

3.      All complaints made to the UPS Helpline and to the Corporate Human Resources Risk and Compliance managers related to discrimination, unfair treatment, or failure to accommodate based on religion involving the Appearance Guidelines, all documents generated in response to such complaints, and any resolution thereof;

4.      All training materials required by this Decree;

5.      Any and all reports to the EEOC created or compiled in accordance with this Decree; and

6.      Any other document or record referenced in or created pursuant to this Decree.

B.      Defendant will provide the EEOC with semi-annual written reports for the duration of the Decree.  The first report will be provided to the EEOC on or before February 28, 2019 and will cover the period from January 1, 2018 through December 31, 2018.  Thereafter, Defendant will provide the EEOC with subsequent reports on a semi-annual basis as follows:  on or before the last business day in August (covering the period from January 1st through June 30th) and on or before the last business day in February (covering the period from July 1st through December 31st).  The reports will contain the following:

1.      A spreadsheet with all requests for religious accommodations related to the Appearance Guidelines submitted to the UPS Human Resources Service Center ("HRSC") during the applicable time period.  The spreadsheet will contain the following:

a.      The full name, telephone number, and e-mail address of the applicant or employee provided on the HRSC religious accommodation request form;

b.      The employee's job title and work location or, in the case of an applicant, the position sought and the location applied to, as provided on the HRSC religious accommodation request form;

c.      The date(s) of the request for religious accommodation;

d.      The accommodation requested, as provided on the HRSC religious accommodation request form;

e.      The determination of the accommodation request, the date of the determination, and the date that the applicant or employee was notified of the determination, as reflected in the HRSC records.

2.      A spreadsheet with all applicants who applied for employment at Defendant and who were rejected for failure or refusal to comply with the Appearance Guidelines during the applicable time period.  The spreadsheet will contain the following:

a.      The full name, phone number, and e-mail address of the applicant provided on the employment application; and

b.      The region, district, job code, candidate status code, and revised candidate status code on the employment application.

UPS may, in its sole discretion, elect to provide the EEOC with the application data in lieu of a spreadsheet.

3.     A spreadsheet of complaints to the UPS Helpline and to the Corporate Human Resources Risk and Compliance managers related to religious discrimination, unfair treatment, or failure to accommodate involving the Appearance Guidelines made during the applicable time period. The spreadsheet will contain the following information:

a.     The name and telephone number and/or e-mail address of the employee provided to the UPS Helpline;

b.     The date of the complaint;

c.     A summary of the nature of the religious discrimination complaint that was made;

d.     Status of the complaint (i.e., pending, resolved, awaiting additional information from complainant or other witnesses, etc.); and

e.     Summary of the resolution and/or any remediation related to the complaint.

4.     Verification of any training conducted pursuant to this Decree during the applicable time period.

C.     After submitting each report, the Defendant's Vice President of Human Resources Risk and Compliance or the equivalent position, or his/her designee, will meet by phone or video conference on a mutually agreeable date and time for the purpose of answering any questions EEOC may have regarding the information in the report. To the extent there are

questions that require further research, Defendant will have fourteen (14) days to research the issues and report back to the EEOC.

**Section 206     Individual Conferences with Current Employee-Claimants**

A.     Defendant will contact current employee Claimants to schedule individual, in-person conferences.  The purpose of the conferences includes:

1.     Discussing any current or ongoing issues concerning religious discrimination, harassment, or failure to accommodate relating to the Appearance Guidelines;

2.     Discussing career goals and advancement opportunities at UPS;

3.     Informing the Claimants that Defendant is committed to improving the religious accommodation process and ensuring equal employment opportunities on the basis of religion; and

4.     Informing the Claimants that Defendant will not retaliate against them based upon their participation in the individual conferences or this action.

B.     Defendant will make reasonable efforts to complete all individual conferences pursuant to this Section within thirty (30) days after the Effective Date, and will apprise the EEOC of its status at that time.

**PART III     MONETARY RELIEF**

Defendant will pay a gross total of $4,900,000.00 in monetary relief to the Charging Parties, Claimants, and Potential Claimants as follows:

**Section 301     Monetary Relief for Charging Parties and Claimants**

A.     Within thirty (30) days of the Effective Date, Defendant will create a Claims Fund for Charging Parties and Claimants by depositing the gross aggregate sum of $4,400,000.00

("Claims Fund") into an interest-bearing account and will provide notice and proof of the establishment of such account to the EEOC.

B.      The monies in the Claims Fund will be distributed to Charging Parties and Claimants in the amounts and in the form specified in Exhibit A, which is filed under seal.  In order to receive such payment, each Charging Party and Claimant must execute a release in the form attached as Exhibit E (for Charging Parties or Claimants with separate individual charges) or Exhibit F (for all other Claimants), and an IRS Form W-9 and/or IRS Form W-4, where applicable.  Individuals who receive non-economic damages will also be required to submit a Medicare Questionnaire, attached hereto as Exhibit G.

C.      The Parties recognize and agree that, due to the nature of the discrimination alleged in this case, all or a portion of the damages paid to individual Claimants or Charging Parties may be allocable to non-economic harm.  The EEOC has provided a specific factual basis to support such allocation beyond the allegations set forth in the Complaint.

D.      The EEOC will be responsible for informing all Charging Parties and Claimants of the amounts that will be paid to each of them, as well as any allocation between wages and non-economic damages.  The EEOC will provide each individual with the appropriate form of release, the necessary tax forms, and a Medicare Questionnaire, if necessary, as set forth in Section 301(B) above.  For Claimants who reside in New Jersey, the EEOC will also obtain a certification in accordance with N.J.S.A. 2A:17-56.23b(b)(1).

E.      Within forty-five (45) days of receiving from the EEOC an executed release, mailing address, an IRS Form W-9 and/or IRS Form W-4 and, where required, a Medicare Questionnaire and/or a child support certification from an individual Claimant or Charging Party, Defendant or its agent will mail checks via a trackable method to the individual at the address

provided by the EEOC and in the amounts and allocations specified in Exhibit A.  Defendant or

its agent will make all required withholdings from the portion of the payment representing wages

for applicable federal, state, and local income taxes and the employee share of federal payroll

taxes, and will issue an IRS Form W-2.  In those circumstances where a Charging Party or

Claimant is receiving an amount representing non-economic damages, Defendant or its agent

will issue an IRS Form 1099 for the portion of the payment representing non-economic damages.

Claimants and Charging Parties will be responsible for any federal, state, or local taxes that may

be due on the portion of the payment representing non-economic damages.  Defendant will

provide the EEOC with a copy of the check(s), tax forms, and proof of mailing, upon issuance.

F.      Under no circumstances will any portion of the Claims Fund revert to Defendant.

If Defendant or its agent becomes aware of incorrect mailing address information for any

Claimant or Charging Party identified by the EEOC as receiving a monetary payment, Defendant

or its agent will make reasonable efforts to confirm the proper mailing address.  If Defendant or

its agent is unable to obtain any different mailing address or it becomes aware that the corrected

information was still incorrect, Defendant will notify the EEOC.  The EEOC may then, in its sole

discretion, provide Defendant or its agent with updated contact information for the Claimant or

Charging Party or direct Defendant or its agent to reallocate the un-effectuated funds to the

Reserve Fund (defined below).  Defendant will make no more than two (2) attempts to mail a

check to any individual receiving Claim Funds.  In each instance, Defendant will provide the

EEOC with proof of mailing upon issuance.

G.      Any Charging Party or Claimant who fails or refuses to execute the required

release and/or any of the other required forms within one hundred eighty (180) days from the

Effective Date will not be paid and the amounts allocated to them will be reallocated to the

Reserve Fund.

H.     Any checks that are not deposited or cashed within one hundred eighty (180) days after issuance will be cancelled and the un-effectuated funds will be reallocated to the Reserve Fund.

I.     If Defendant or EEOC learns of the death of any individual who is identified by EEOC to receive a payment from the Claims Fund, such claims may be paid through representatives of their estate or next of kin if appropriate documentation (e.g., letters testamentary or equivalent) is provided to both EEOC and Defendant within sixty (60) days of the date of death or the date of issuance of the check, whichever is later. All claims paid on behalf of deceased persons shall be made payable to the deceased person's estate.

**Section 302     Reserve Fund for Potential Claimants**

A.     At the same time that Defendant funds the Claims Fund, it will create a Reserve Fund for Potential Claimants by depositing the gross aggregate sum of $500,000.00 into an interest-bearing account and will provide notice and proof of the establishment of such account to the EEOC.

B.     The monies in the Reserve Fund will be distributed to Potential Claimants as defined in Section 102(E) of the Decree.  Eligibility for a distribution and the amount and allocation of any distribution will be determined solely by the EEOC in its discretion. The Parties recognize and agree that, due to the nature of the discrimination alleged in this case, all or a portion of the damages paid to Potential Claimants may be allocable to non-economic harm.  The EEOC has obtained a specific factual basis to support such allocation.

C.     In order to receive a distribution from the Reserve Fund, each Potential Claimant must execute a release in the form attached as Exhibit E (for Potential Claimants with separate

individual charges or lawsuits) or Exhibit F (for all other Potential Claimants) and an IRS Form W-9 and/or IRS Form W-4, where applicable. Potential Claimants who receive non-economic damages will also be required to execute a Medicare Questionnaire, attached hereto as Exhibit G.

D. Within twelve (12) months of the Effective Date, the EEOC will provide Defendant with a list of individuals who will receive payments from the Reserve Fund ("Distribution List"). The Distribution List will include each individual's full legal name and mailing address and will specify the amount and form of each individual's payment. The Distribution List will be filed under seal as Exhibit H. At the same time, the EEOC will provide an executed release, an IRS Form W-9 and/or IRS Form W-4 and, if applicable, a Medicare Questionnaire from each Potential Claimant. For Potential Claimants who reside in New Jersey, the EEOC will also obtain a certification in accordance with N.J.S.A. 2A:17-56.23b(b)(1).

E. Within thirty (30) days of receiving the Distribution List and all required forms and releases, Defendant or its agent will mail checks to the Potential Claimants at the addresses provided by the EEOC in the amounts and in the forms specified in the Distribution List. Defendant or its agent will make all required withholdings from the portion of the payment representing wages for applicable federal, state, and local income taxes and the employee share of federal payroll taxes, and will issue an IRS Form W-2. In those circumstances where a Potential Claimant is receiving an amount representing non-economic damages, Defendant or its agent will issue an IRS Form 1099 for the portion of the payment representing non-economic damages. The Potential Claimants will be responsible for any federal, state, or local taxes that may be due on the portion of the payment representing non-economic damages. Defendant will provide the EEOC with a copy of the check(s), tax forms, and proof of mailing, upon issuance.

F. Under no circumstances will any portion of the Reserve Fund revert to Defendant.

If Defendant or its agent becomes aware of incorrect mailing address information for any Potential Claimant identified by the EEOC in the Distribution List, Defendant or its agent will make reasonable efforts to confirm the proper mailing address. If Defendant or its agent is unable to obtain any different mailing address or it becomes aware that the corrected information was still incorrect, Defendant will notify the EEOC. The EEOC may then, in its sole discretion, provide Defendant or its agent with updated contact information for the Potential Claimant or direct Defendant or its agent to reallocate the un-effectuated funds back into the Reserve Fund. Defendant will make no more than two (2) attempts to mail a check to any individual receiving Reserve Funds. In each instance, Defendant will prove the EEOC with proof of mailing.

G.     Any checks that are not deposited or cashed within one hundred eighty (180) days after issuance will be cancelled and the un-effectuated funds will be reallocated back into the Reserve Fund.

H.     If Defendant or EEOC learns of the death of any individual who is identified by EEOC to receive a payment from the Reserve Fund, such claims may be paid through representatives of their estate or next of kin if appropriate documentation (e.g., letters testamentary or equivalent) is provided to both EEOC and Defendant within sixty (60) days of the date of death or the date of issuance of the check, whichever is later. All claims paid on behalf of deceased persons shall be made payable to the deceased person's estate.

I.     If any funds remain in the Reserve Fund after the Distribution period, the parties agree that Defendant or its agent will distribute the funds to the Tanenbaum Center for Interreligious Understanding. The parties will request that the funds be earmarked for the Center's efforts to counter religious bias in the workplace.

## PART IV     DISPUTE RESOLUTION

A.     The parties agree to work cooperatively with each other during the duration of the

Decree with respect to any issues, potential breaches, disputes, or conflicts relating to this Decree. In that regard, the EEOC agrees to notify and work with UPS in good faith to address any such issues, potential breaches, disputes, or conflicts that arise during the Term of the Decree. In turn, Defendant agrees to work in good faith with the EEOC to resolve any issues, potential breaches, disputes, or conflicts brought to its attention.

B.     In the event that either party believes that the other party has failed to comply with any provisions of the Decree, the complaining party will so notify the alleged non-complying party in writing and afford the alleged non-complying party thirty (30) calendar days (the "Voluntary Compliance Period") to remedy the non-compliance or satisfy the complaining party that it has complied. If the alleged non-complying party fails to do so or the complaining party is not satisfied with the non-complaining party's response, the matter should first be referred to mediation to be paid for by UPS. The parties agree that they will participate in mediation in good faith and each will bear their own attorneys' fees and costs related to any such mediation. If the complaining party determines, in its sole discretion, that mediation has failed to resolve the dispute, the complaining party may apply to the Court for appropriate relief. EEOC and Defendant will bear their own costs and attorneys' fees if a breach of the Decree is raised with the Court.

C.     If, in monitoring this Decree, the EEOC learns of any UPS employee(s) or applicant(s) who allege to have been discriminated against, harassed, or retaliated against on the basis of religion in relation to the Appearance Guidelines, or who allege to have requested a religious accommodation but were not put through UPS's Religious Accommodation Process or were allegedly treated unfairly in the process, EEOC will provide Defendant with notice of the same, so that Defendant can take appropriate remedial action or provide the EEOC with

the legitimate reasons for its actions.  After providing notice, the EEOC will provide Defendant with at least thirty (30) days to address the issues to the EEOC's satisfaction before seeking judicial relief to enforce the Decree and/or commencing contempt proceedings.

**PART V         DURATION OF DECREE**

A.      This Decree will remain in effect for five (5) years from the Effective Date of this Decree.  The EEOC may petition the Court to release Defendant from the obligations of this Decree within three (3) years if the EEOC determines, in its sole discretion, that Defendant's level of compliance warrants such early release.

B.      The Court will retain jurisdiction over this action for all purposes including, but not limited to, the entering of all orders, judgments, and decrees as necessary to implement the relief provided herein.  If, upon the expiration of the Decree, any disputes under Section IV of this Decree remain unresolved, the Court will retain jurisdiction over such disputes until such time as they have been resolved. Upon signature and approval by the Court, the matter may be administratively closed but will not be dismissed.

**FOR PLAINTIFF**
**EQUAL EMPLOYMENT**
**OPPORTUNITY COMMISSION**

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

_Jeffry Burstein_

JEFFREY BURSTEIN
Regional Attorney

NORA CURTIN
Supervisory Trial Attorney
EEOC New York District Office
33 Whitehall Street, 5th Floor
New York, NY  10004

ELIZABETH FOX-SOLOMON
Trial Attorney
EEOC Buffalo Local Office
Olympic Towers
300 Pearl Street, Suite 450
Buffalo. NY 14202


SO ORDERED:
s/ MKB 12/21/2018
_____

MARGO K. BRODIE
United States District Judge

**FOR DEFENDANT UNITED PARCEL**
**SERVICE, INC.**

_Wendy Lario_

Wendy Johnson Lario
Greenberg Traurig
Attorneys for United Parcel Service, Inc.
500 Campus Drive, Suite 400
Florham Park, NJ 07932

# EXHIBIT A
# (Filed Under Seal)

# EXHIBIT B
# (Filed Under Seal)

# EXHIBIT C
# (Filed Under Seal)

# EXHIBIT D



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
District Office: (212) 336-3620

## <u>NOTICE TO ALL EMPLOYEES</u>

This Notice is being posted pursuant to a Consent Decree entered by the federal court in *EEOC v. United Parcel Service, Inc.*, Case No. 1:15-cv-04141 (E.D.N.Y.), resolving a lawsuit filed by the U.S. Equal Employment Opportunity Commission ("EEOC") against United Parcel Service, Inc. ("UPS").

In its suit, the EEOC alleged that UPS discriminated against employees and applicants whose religious practices conflicted with the UPS Uniform and Personal Appearance Guidelines ("Appearance Guidelines") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, the EEOC alleged that UPS failed to hire, accommodate, promote or transfer individuals who maintain beards or long hair in accordance with their religious beliefs. UPS filed an answer denying the allegations.

To resolve the case, UPS and the EEOC have entered into a Consent Decree that provides, among other things, that:

1) UPS will not discriminate against any applicant or employee on the basis of religion in relation to the Appearance Guidelines;

2) UPS will not retaliate against any individual who requests a religious accommodation to the Appearance Guidelines, makes a complaint or participates in any investigation or proceeding involving religious discrimination related to the Appearance Guidelines, or seeks or receives any benefit as a result of this litigation or the Decree;

3) UPS will enhance its religious accommodation process;

4) UPS will provide training to employees, supervisors, and human resources personnel on religious accommodations related to the Appearance Guidelines; and

5) UPS will pay a settlement in the amount of $4.9 million to provide monetary relief to eligible claimants.

If you are an employee with a religious conflict with the Appearance Guidelines and need to request a religious accommodation from UPS, click here. For questions or assistance in completing the religious accommodation process, you may contact the HR Service Center at 1-855-877-4772.

The EEOC enforces the federal laws against discrimination in employment on the basis of race, color, religion, national origin, sex, age, disability or genetic information. If you believe you have been discriminated against, you may contact the EEOC at 1-800-669-4000. EEOC charges no fees and has employees who speak languages other than English. Go to www.eeoc.gov/employees/charge.cfm for more information or to file a charge.

## <u>THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE</u>

**This Notice must remain posted on UPS's internal website for five (5) years from the date below unless the EEOC agrees to a three (3) year duration, and it must not be altered, defaced, or covered by any other material. Any questions about this Notice or compliance with its terms may be directed to: UPS Religious Discrimination Settlement, EEOC Buffalo Local Office, 300 Pearl Street, Suite 450, Buffalo, NY 14202 or ups-religion.lawsuit@eeoc.gov.**

_____
Date

_____
U.S. District Court Judge

# EXHIBIT E

# RELEASE

In consideration for the gross sum of $_____ ("Consideration") paid to me by Defendant, United Parcel Service, Inc. ("UPS, Inc."), pursuant to the Consent Decree entered on _____, 2018, in connection with the resolution of *EEOC v. United Parcel Service, Inc.*, No. 1:15-cv-04141-MKB-CLP (E.D.N.Y.), and in connection with my individual EEOC Charge No. _____ and _____ [lawsuit], I hereby waive my right to recover for any claims of religious discrimination related to the UPS Uniform and Personal Appearance Guidelines, including failure to accommodate, failure to promote or transfer, failure to hire, and segregation, arising under Title VII of the Civil Rights Act of 1964 that I had against UPS, Inc. and its successors and assigns prior to the date on which I sign this Release and that were included in the claims alleged in the EEOC's complaint in *EEOC v. United Parcel Service, Inc.*, No. 1:15-cv-04141-MKB-CLP (E.D.N.Y.). I understand that this resolves my individual charge with the EEOC (Charge No. _____) and all dually filed charges with the state and local anti-discrimination agencies in which I asserted federal, state and/or local claims of religious discrimination related to the UPS Uniform and Personal Appearance Guidelines, including failure to accommodate, failure to promote or transfer, failure to hire, and segregation.

$_____ of the Consideration, less all applicable withholdings and payroll taxes, will be paid to me in full satisfaction of any and all claims I may have for economic damages, including but not limited to lost wages, front pay, and benefits. An IRS Form W-2 will be issued to me in connection with this portion of the Consideration.

$_____ of the Consideration will be paid to me in full satisfaction of any and all claims that I may have for non-economic damages, including but not limited to any

emotional distress, mental anguish, pain and suffering, embarrassment and humiliation.  An IRS Form 1099 will be issued to me in connection with this portion of the Consideration.

I acknowledge that the Consideration is above and beyond anything that I am otherwise entitled to receive and constitutes sufficient and adequate consideration for the release of my claims.

*[I agree to maintain in confidence and not to discuss or disclose the amount of my Consideration to any employee of UPS, Inc.]*[1]

I acknowledge that I had sufficient time to review and consider this Release before signing and returning it.

<br>

_____
Signature

<br>

_____
Name [Please Print]

<br>

_____
Date

<br><br>

---

[1] This language will appear only in releases executed by current employees of UPS.

# EXHIBIT F

# RELEASE

In consideration for the gross sum of $_____ ("Consideration)" paid to me by Defendant, United Parcel Service, Inc. ("UPS, Inc."), pursuant to the Consent Decree entered on _____, 2018, in connection with the resolution of *EEOC v. United Parcel Service, Inc.*, No. 1:15-cv-04141-MKB-CLP (E.D.N.Y.), I hereby waive my right to recover for any claims of religious discrimination related to the UPS Uniform and Personal Appearance Guidelines, including failure to accommodate, failure to promote or transfer, failure to hire, and segregation arising under Title VII of the Civil Rights Act of 1964 that I had against UPS, Inc. and its successors and assigns prior to the date on which I sign this Release and that were included in the claims alleged in the EEOC's complaint in *EEOC v. United Parcel Service, Inc.*, No. 1:15-cv-04141-MKB-CLP (E.D.N.Y.).

$ _____ of the Consideration, less all applicable withholdings and payroll taxes, will be paid to me in full satisfaction of any and all claims I may have for economic damages, including but not limited to lost wages, front pay, and benefits.  An IRS Form W-2 will be issued to me in connection with this portion of the Consideration.

$ _____ of the Consideration will be paid to me in full satisfaction of any and all claims that I may have for non-economic damages, including but not limited to any emotional distress, mental anguish, pain and suffering, embarrassment and humiliation.  An IRS Form 1099 will be issued to me in connection with this portion of the Consideration.

*[I agree to maintain in confidence and not to discuss or disclose the amount of my Consideration to any employee of UPS, Inc.]* [1]

---

[1]  This language will appear only in releases executed by current employees of UPS.

I acknowledge that I had sufficient time to review and consider this Release before signing and returning it.

_____
Signature

_____
Name [Please Print]

_____
Date

# EXHIBIT G

**MEDICARE QUESTIONNAIRE**

**Please review this picture to determine if you have, or have ever had, a similar Medicare card, and answer the following questions:**



1. Are you now, or have you ever been, enrolled in Medicare Part A or Part B?

☐ YES ☐ NO

**\*\*\*If YES, proceed to Question 2. If NO, proceed to Acknowledgement.**

2. Have you ever received Medicare benefits for any condition or treatment that you believe was caused by the alleged discrimination for which EEOC is seeking relief on your behalf in this lawsuit, *EEOC v. United Parcel Service, Inc.*, No. 1:15-cv-04141-MKB-CLP (E.D.N.Y.)?

☐ YES ☐ NO

**\*\*\*If YES, proceed to Question 3. If NO, proceed to Acknowledgement.**

3. Are you aware of any Medicare liens on any settlement amount you will or may receive in connection with the condition or treatment referenced in Question 2 above?

☐ YES ☐ NO

## ACKNOWLEDGEMENT

I understand that the information requested is to assist UPS, Inc. in accurately meeting its mandatory reporting obligations under the Medicare Law.

I further understand that if I am a Medicare beneficiary and I do not provide truthful responses, I may be violating obligations as a beneficiary to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

I also understand that if I am a Medicare beneficiary and have received Medicare benefits for any condition or treatment that I believe was caused by the alleged discrimination for which the EEOC is seeking relief on my behalf, the settlement payment may be delayed or reduced in whole or in part by Medicare claims.

**I have read the foregoing statements, which are true and correct to the best of my current knowledge.**

_____
Signature


_____
Name [Please Print]


_____
Date

# EXHIBIT H
# (Filed Under Seal)

**To be filed at a later date pursuant to Section 302(D) of the Decree**